UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY K. JONES, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> PFIZER, INC., HANK McKINNELL, JEFFREY B. KINDLER, FRANK D'AMELIO, DAVID SHEDLARZ, ALAN G. LEVIN and IAN READ, <br><br> Defendants. | Civil Action No. 10-CIV-3864 <br><br> "ECF" Case <br><br> MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF MARTIN MEISTER, PAUL MEISTER, AND CAROL MEISTER AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF COUNSEL |

Movants, Martin Meister, Paul Meister, and Carol Meister (the "Meister Group"), by its counsel, respectfully submit this memorandum in support of its motion for the appointment of Meister Group as lead plaintiff in this action and approval of their selection of lead and local counsel.

Pursuant to Section 21D(a)(3)(B)(i) and (ii) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(e)(B), Meister Group moves to be appointed lead plaintiff of the purported class within 60 days of publication of a notice advising class members of the pendency of a securities class action.

Section 21D(a)(3)(B) of the Exchange act provides that the Court shall consider any motion by a purported class member to be appointed lead plaintiff "not later than 90 days after the date on which the notice is published," or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims, and that the Court "shall appoint as lead plaintiff the member or members of the purported class that

the court determines to be most capable of adequately representing the interests of class members..." 15 U.S.C. § 78u-4(a)(3)(B).

## I. INTRODUCTION AND FACTUAL BACKGROUND

Pfizer is a pharmaceutical company engaged in the discovery, development, manufacture, and marketing of prescription medicines for humans and animals worldwide. The Company is also involved in contract manufacturing and bulk pharmaceutical chemicals businesses, serving doctors, nurse practitioners, physician assistants, pharmacists, hospitals, pharmacy benefit managers, managed care organizations, and government agencies.

At various times during the Class Period, Pfizer manufactured, marketed, and sold many types of drugs, including Bextra, an anti-inflammatory, Geodon, an anti-psychotic, Zyvox, an antibiotic, and Lyrica, an anti-epileptic drug. Defendants misled investors by failing to disclose that they were engaged in an ongoing course of conduct designed to illegally promote the sale of Pfizer drugs. By doing so, Pfizer caused hundreds of millions of dollars in false or fraudulent claims to be submitted to several federal health care programs, thus exposing the Company to untold legal liability. Specifically, defendants failed to disclose the following materially adverse facts:

(a) From February 1, 2002, though April 30, 2005, Pfizer illegally promoted the sales and use of Bextra for conditions (including acute pain and various types of surgical pain) and at dosages other than those for which its use was approved by the FDA. Pfizer also offered and paid illegal kickbacks to healthcare professionals to induce them to promote and prescribe Bextra. As a result of this conduct, Pfizer knowingly caused false or fraudulent claims for Bextra to be submitted to, or caused purchases by, Medicaid and other federal health care programs.

(b)     From February 1, 2001, though December 31, 2007, Pfizer illegally promoted the sales and use of Geodon for conditions (including depression, bipolar maintenance, mood disorder, anxiety, aggression, dementia, attention deficit hyperactivity disorder, obsessive compulsive disorder, autism, and post-traumatic stress disorder) and at dosages other than those for which its use was approved by the FDA.  Pfizer also offered and paid illegal kickbacks to healthcare professionals to induce them to promote and prescribe Geodon.  As a result of this conduct, Pfizer knowingly caused false or fraudulent claims for Geodon to be submitted to, or caused purchases by, Medicaid and other federal health care programs.

(c)     From February 1, 2001, though February 28, 2008, Pfizer illegally promoted the sales and use of Zyvox for conditions (including infections caused by methicillin-resistant Staphylococcus aureus ("MRSA") generally, rather than only those types of MRSA for which Zyvox was FDA-approved) and at dosages other than those for which its use was approved by the FDA.  Pfizer also offered and paid illegal kickbacks to healthcare professionals to induce them to promote and prescribe Zyvox.  As a result of this conduct, Pfizer knowingly caused false or fraudulent claims for Zyvox to be submitted to, or caused purchases by, Medicaid and other federal health care programs.

From September 1, 2005 through October 31, 2008, Pfizer illegally promoted the sales and use of Lyrica for conditions (including chronic pain, certain types of neuropathic pain, peri-operative pain, and migraine) and at dosages other than those for which its use was approved by the FDA.  Pfizer also offered and paid illegal kickbacks to healthcare professionals to induce them to promote and prescribe Lyrica.  As a result of this conduct, Pfizer knowingly caused false or fraudulent claims for Lyrica to be submitted to, or caused purchases by, Medicaid and other federal health care programs.

On January 26, 2009, Pfizer announced that it was paying $2.3 billion to resolve several ongoing investigations. These investigations included the improper promotion of and kickbacks involving Bextra, Geodon, Zyvox and Lyrica, as set forth above.

After the cost of resolving these investigations became public, the price of Pfizer common stock declined from $17.45 on the previous trading day's close to $15.65 on January 26, 2009, as artificial inflation caused by defendants' false and misleading statements came out of the stock price.

Meister Group now seeks to appoint itself as lead plaintiff, and for approval of its selection of counsel for the putative class of all purchasers of Pfeizer securities between July 20, 2005 and January 23, 2009 (the "Class Period"). Meister Group has a substantial financial interest in the vigorous prosecution of this action, having purchased 47,828 shares of Pfeizer stock for a cost of $1,035,461.05. *See* Exhibit 1 to Declaration of Leigh R. Lasky ("Lasky Declaration"). At the close of the class period, the Meister Group held 17,228 outstanding shares of Pfeizer. Meister Group is unaware of any other individual or entity seeking appointment as lead plaintiff representing a larger financial interest in the relief sought by the class.

As set forth below, the PSLRA requires that the Court adopt the presumption that the most adequate plaintiff is the shareholder that has either filed a complaint or moved for lead plaintiff, has the largest financial interest in the relief sought by the class, and otherwise satisfies the requirements of Rule 23. Meister Group submits that it satisfies each of these requirements, timely sought to be appointed as lead plaintiff through the instant motion, have the largest financial interest of any other proposed lead plaintiff in the case, and otherwise satisfy the requirements of Rule 23.

## II. LEGAL ARGUMENT

### A. Meister Group is the Most Adequate Plaintiff Under § 21D of the Exchange Act and Should Therefore be Appointed Lead Plaintiff

Section 21D(a)(3)(B)(iii) of the Securities Exchange Act establishes a rebuttal presumption that the "most adequate plaintiff" for the purposes of appointment as lead plaintiff is the person or persons that:

>   (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (a)(i);
>   (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>   (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 197 (S.D.N.Y. 2006).

Meister Group meets all three of these criteria. Thus, the group is the proper presumptive lead plaintiff for the Pfizer Corporation class action.

### B. Meister Group Makes This Motion Within 60 Days of Publication of Notice

Plaintiff x published its Notice on May 11, 2010. Meister Group brings this motion pursuant to 15 U.S.C. § 78u-4 (a)(3)(A)(i) within 60 days of such publication.

### C. Meister Group Has the Largest Financial Interest in the Relief Sought

In analyzing financial interest, a broad body of case law in the Second Circuit establishes four key factors should guide the Court's determination. These factors include: (1) the number of shares of the subject securities purchased; (2) the net number of securities purchased (offsetting the total number purchased by the total number sold); (3) the net funds expended by the movant to acquire those securities; and (4) the approximate losses suffered by the movant. *See In re Veeco Instr. Inc. Sec. Litig.*, 233 F.R.D. 330, 332 (S.D.N.Y. 2005). Based on these

factors, Meister Group believes that they have the largest financial interest of any lead plaintiff movant before this Court.

During the Class Period, Meister Group is reflected in the fact that they purchased 47,828 shares of Pfeizer stock for a cost of $1,035,461.05. *See* Exhibit 2 to Declaration of Leigh R. Lasky ("Lasky Declaration"). At the close of the class period, the Meister Group held 17,228 outstanding shares of Pfeizer. It is evident that Meister Group sustained losses, calculated under the PSLRA as a result of Defendants' misconduct and the subsequent market correction of prices of Pfizer stock. In light of this large financial interest, Meister Group believes they are entitled to the statutory presumption as the most adequate plaintiff and should be appointed Lead Plaintiff in this Action.

### D. Meister Group Otherwise Satisfies the Requirements of Rule 23

Section 21(D)(a)(3)(B)(iii)(cc) of the Exchange Act further provides that the lead plaintiff or plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. § 23(a).

Movant satisfies the requirements of the Exchange Act and the Federal Rules of Civil Procedure and as a result should be appointed lead plaintiff. Common questions of law and fact exist as to all members of the Class and predominate over any questions affection solely individual members of the Class. Further, all members of the Class sustained damages as a result of Defendants' wrongful conduct. Meister Group damages are typical of the claims of the

members of the Class, and as lead plaintiff, Meister Group will fairly and adequately protect the interests of the members of the Class. Additionally, Movant has retained counsel competent and experienced in class action securities litigation. *See* Lasky Declaration, Exhibits 4 and 5. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this class action.

These allegations satisfy Meister Group's burden of a prima facie showing that the Rule 23 requirements of numerosity, commonality, typicality, adequacy of representation, and superiority of a class action are satisfied. *See* F.R.C.P. 23(a). Moreover, of four prerequisites of class certification under Rule 23(a), only two – adequacy of representation and typicality – directly address the personal characteristics of the class representative/lead plaintiff, and are the only Rule 23 prerequisites, if any, the Court should focus on in appointing a lead plaintiff. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *In re Cell Pathways, Inc. Sec. Litig.*, 203 F.R.D. 189, 191 (E.D. Pa. 2001).

### E. Adequacy of Representation

Under Section 21D(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class. Meister Group has selected and retained the law firm of Kendall Law Group, LLP as Lead Counsel and Lasky & Rifkind, Ltd. as Local Counsel. Kendall Law Group and Lasky Rifkind have extensive experience in successfully prosecuting complex securities actions, and are qualified to represent the class. *See* Lasky Declaration, Exhibits 4 and 5.

### F. Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when a plaintiff has: 1) suffered the same or similar injuries as the absent class members; 2) the injuries result from the same course of conduct by defendant's and 3) the claims are based on the same legal theories. Meister Group satisfies the typicality requirement, since they purchased Pfizer common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions. *See Glauser v. EVCI Career Colleges Holdings Corp.*, 236 F.R.D. at 189.

### G. The Presumption in Favor of Meister Group Has Not Been Rebutted

The presumption in favor of appointed Meister Group as lead plaintiff may be rebutted only upon proof "by a member of the purported plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interests of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Section 21(D)(a)(3)(B)(iii)(II); 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

There has been no showing by any other purported lead plaintiff that Pfizer Shareholder Group will not adequately protect the interests of the Class or that he is subject to unique defense that render it incapable of representing the Class. Thus, Meister Group should be appointed lead plaintiff in this matter.

### III. CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court appoint Meister Group as lead plaintiff in these actions and any subsequently-filed related actions and approve

their selection of the law firm of Kendall Law Group, LLP as lead counsel and Lasky & Rifkind, Ltd. as Local Counsel for the class.

Dated: April 6, 2010                              Respectfully Submitted,

/s/ Leigh Lasky

Leigh Lasky
LASKY & RIFKIND, LTD.
140 Broadway, 23rd Floor
New York, New York 10005
Telephone: 212-907-0800
Facsimile: 212-684-6083

-and-

Joe Kendall
Jamie J. McKey
KENDALL LAW GROUP, LLP
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: 214-744-3000
Facsimile: 214-744-3015

**Attorneys for Meister Group**

## CERTIFICATE OF SERVICE

I, Leigh Lasky, hereby certify that on July 12, 2010, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. All counsel of record were served via the ECF system with a Notice of Filing Pursuant to the local rules on electronic filing.

/s/ Leigh Lasky

Leigh Lasky