UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

MARY K. JONES, Individually and on Behalf :    Civil Action No. 1:10-cv-03864-AKH
of All Others Similarly Situated,                :
                                         :    CLASS ACTION
                 Plaintiff     :
                                         :    MEMORANDUM OF LAW IN SUPPORT
    vs.                                   :    OF MOTION FOR CLASS CERTIFICATION
                                         :
PFIZER INC., et al.,                    :    RETURN DATE:  February 2, 2012
                                         :
                Defendants.    :    ORAL ARGUMENT REQUESTED
                                         :

---------------------------------------------------------------- x

674942_1
674942_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................1

II.    STATEMENT OF FACTS ...................................................................2

III.   THE PROPOSED CLASS REPRESENTATIVES .............................4

IV.   ARGUMENT .......................................................................................5

      A.     Class Action Treatment Is Appropriate for Securities Cases.................5

      B.     Class Certification Legal Standards.......................................6

      C.     The Proposed Class Satisfies Rule 23(a) ................................7

             1.     The Proposed Class Is so Numerous that Joinder Is Impracticable ............7

             2.     There Are Questions of Law and Fact Common to the Class.....................8

             3.     Plaintiffs' Claims Are Typical of the Proposed Class ...............................10

             4.     Stichting and Jones Will Fairly and Adequately Protect the Interests of the Class ...........................................................11

      D.     The Proposed Class Satisfies Rule 23(b)(3) .........................13

             1.     Common Questions of Law or Fact Predominate....................13

             2.     A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Matter.........................................18

V.     CONCLUSION....................................................................................20

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997)..................................................................................13

*Ansoumana v. Gristede's Operating Corp.,*
  201 F.R.D. 81 (S.D.N.Y. 2001) ..................................................8, 10, 13, 17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000)........................................................................11

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988)..............................................................................14, 15

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ....................................................................14

*Cammer v. Bloom,*
  711 F. Supp. 1264 (D.N.J. 1989) ..........................................................15, 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*
  *Managed Care, L.L.C.,*
  504 F.3d 229 (2d Cir. 2007).......................................................................7

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995)..........................................................................7

*Darquea v. Jarden Corp.,*
  No. 06-Civ-722 (CLB), 2008 WL 622811
  (S.D.N.Y. Mar. 6, 2008) ...................................................8, 12, 14, 18

*Dietrich v. Bauer,*
  192 F.R.D. 119 (S.D.N.Y. 2000) .................................................................6

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)....................................................................................6

*Eisenberg v. Gagnon,*
  766 F.2d 770 (3d Cir. 1985)........................................................................7

*Ellenburg v. JA Solar Holdings Co.,*
  262 F.R.D. 262 (S.D.N.Y. 2009) ...............................................................13

- ii -

**Page**

*Epstein v. Moore,*
  No. 87-2984 (AET), 1988 WL 62213
  (D.N.J. June 13, 1988) ..............................................................................10

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  _ U.S. _, 131 S. Ct. 2179 (2011).............................................................15

*Escott v. Barchris Constr. Corp.,*
  340 F.2d 731 (2d Cir. 1965)......................................................................5, 6

*Gen. Tel. Co. of the Sw. v. Falcon,*
  457 U.S. 147 (1982)....................................................................................10

*Gerber v. Computer Assoc. Int'l, Inc.,*
  No. 91-CV-3610 (SJ), 1995 WL 228388
  (S.D.N.Y. Apr. 7, 1995)..............................................................................10

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968).............................................................1, 5, 19

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981)........................................................................................5

*In re Alstom S.A. Sec. Litig.,*
  253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................7, 8, 13

*In re Baldwin-United Corp. Litig.,*
  122 F.R.D. 424 (S.D.N.Y. 1986) ..............................................................10

*In re Blech Sec. Litig.,*
  187 F.R.D. 97 (S.D.N.Y. 1999) ...........................................................18, 19

*In re Deutsche Telekom AG Sec. Litig.,*
  229 F. Supp. 2d 277 (S.D.N.Y. 2002).......................................................1, 8

*In re Enron Corp. Sec. Litig.,*
  586 F. Supp. 2d 732 (S.D. Tex. 2008) .......................................................12

*In re Enron Corp. Sec. Litig.,*
  No. H-01-3624 (MH) (S.D. Tex.) ...............................................................12

*In re Globalstar Sec. Litig.,*
  No. 01 Civ. 1748(PKC), 2004 WL 2754674
  (S.D.N.Y. Dec. 1, 2004)................................................................................8

- iii -

**Page**

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................15

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)...............................................................6

*In re Interpublic Sec. Litig.*,
  No. 02-Civ-6527 (DLC), 2003 WL 22509414
  (S.D.N.Y. Nov. 6, 2003) ...................................................................9

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................18

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ................................................ *passim*

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................10

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .................................5, 11, 12, 18

*In re Salomon Analyst Metromedia Litig.*,
  544 F.3d 474 (2d Cir. 2008).........................................................6, 15

*In re Scor Holding (Switz.) AG Litig.*,
  537 F. Supp. 2d 556 (S.D.N.Y. 2008).............................................16

*In re Sumitomo Copper Litig.*,
  194 F.R.D. 480 (S.D.N.Y. 2000) .......................................................8

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ......................................................17

*In re Vivendi Universal S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................7

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ......................................................17

*Kelleher v. ADVO, Inc.*,
  No. 3:06-cv-1422 (AVC), 2009 WL 2413362
  (D. Conn. Mar. 30, 2009).................................................................13

674942_1

**Page**

*Kennedy v. Tallant,*
710 F.2d 711 (11th Cir. 1983) .................................................................6

*King v. Kansas City S. Indus., Inc.,*
519 F.2d 20 (7th Cir. 1975) .....................................................................1

*Korn v. Franchard Corp.,*
456 F.2d 1206 (2d Cir. 1972)...................................................................7

*Lapin v. Goldman Sachs & Co.,*
254 F.R.D. 168 (S.D.N.Y. 2008) ................................................1, 15, 18

*Moore v. PaineWebber, Inc.,*
306 F.3d 1247 (2d Cir. 2002)..................................................................13

*Robinson v. Metro-North Commuter R.R.,*
267 F.3d 147 (2d Cir. 2001)...............................................................10, 11

*Schleicher v.Wendt,*
618 F.3d 679 (7th Cir. 2010) .................................................................15

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
552 U.S. 148 (2008)................................................................................15

*Teachers Ret. Sys. of La. v. ACLN Ltd.,*
No. 1 Civ. 11814 (LAP), 2004 WL 2997957
(S.D.N.Y. Dec. 27, 2004)..........................................................................7

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,*
No. 05 Civ 1898 (SAS), 2006 WL 21611887
(S.D.N.Y. Aug. 1, 2006) ..........................................................................17

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,*
No. 05-CV-1898 (SAS), 2006 WL 2161887
(S.D.N.Y. Aug. 1, 2006), *aff'd* 546 F.3d 196 (2d Cir. 2008)..................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007)..................................................................................5

*Unger v. Amedisys Inc.,§*
401 F.3d 316 (5th Cir. 2005) .............................................................15, 17

*Wal-Mart Stores, Inc. v. Dukes,*
_U.S._, 131 S. Ct. 2541 (2011)...............................................................10

674942_1

**Page**

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure

    Rule 23 ................................................................................................5, 6, 7, 19

    Rule 23(a)....................................................................................................*passim*

    Rule 23(a)(1)........................................................................................................7

    Rule 23(a)(2).................................................................................................8, 13

    Rule 23(a)(3)........................................................................................................9

    Rule 23(a)(4)...............................................................................................11, 13

    Rule 23(b)...................................................................................................6, 13

    Rule 23(b)(3)...............................................................................................*passim*

15 U.S.C.

    §78j(b).................................................................................................................14

674942_1

Lead plaintiff Stichting Philips Pensioenfonds ("Stichting") and named plaintiff Mary K. Jones, individually and as trustee of the Mary K. Jones Revocable Trust (collectively, "Jones") (together with Stichting, "plaintiffs" or "Class Representatives") move the Court for an order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class defined as: all persons who purchased Pfizer Inc. ("Pfizer" or the "Company") securities between 1/19/06 and 1/23/09 (the "Class Period"), excluding defendants and their families, directors and officers of Pfizer and their families and affiliates.[1]  ¶¶1, 143.  Plaintiffs also seek an order appointing them as class representatives and the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as class counsel.

## I.   INTRODUCTION

Class certification in securities fraud cases such as this one is consistent with long-established Second Circuit precedent.  *See, e.g., Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968).  Indeed, "'[c]lass certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market.'"  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (quoting *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280-81 (S.D.N.Y. 2002)); *see also King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975) (the "policy is to favor maintenance of class actions . . . in cases where securities fraud is charged"); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) ("'Courts have

---

[1]     All "¶" and "¶¶" references are to the First Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed on 04/15/11 ("Complaint") throughout, unless otherwise noted.

Defendants include: Pfizer, Jeffrey B. Kindler, Henry A. McKinnell, Frank D'Amelio, David L. Shedlarz, Alan G. Levin, Ian C. Read, Joseph Feczko, Karen Katen, Allen Waxman, and J. Patrick Kelly.  ¶1 n.1.

long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws.'").[2]

Class certification is appropriate here.  This action readily satisfies the prerequisites of Rule 23(a): (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims of plaintiffs are typical of the claims of the class; and (iv) the Class Representatives will fairly and adequately protect the interests of the class.  Additionally, the action satisfies the Rule 23(b)(3) requirements: (i) questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) a class action is superior to other methods for the fair and efficient adjudication of this action.

## II.    STATEMENT OF FACTS

This is a securities class action against Pfizer and certain current and former officers of the Company for violating the federal securities laws.  The Complaint alleges that senior executives of Pfizer engaged in a scheme to defraud investors by deliberately concealing the Company's illegal promotion of its drugs in violation of U.S. Federal Drug Administration ("FDA") requirements and the material risks to Pfizer as a result.  *E.g.*, ¶¶13-18.

In 2004, Pfizer paid $430 million to settle civil and criminal charges relating to the illegal promotion of Neurontin.  ¶5.  In the settlement, Pfizer promised that the Company would cease illegal off-label marketing and assured the government that defendants would strictly monitor compliance with the law.  *Id.*  Throughout the Class Period, defendants falsely assured investors that Pfizer was in compliance with the FDA's marketing rules and Pfizer's financials accurately depicted the financial condition and operations of the Company.  *E.g.*, ¶¶59, 62, 77-79.

---

[2]     Citations are omitted and emphasis added throughout unless otherwise indicated.

Even before the ink was dry on the 2004 settlement, Pfizer had reneged on its promises. ¶6. Indeed, senior Pfizer executives defrauded investors by deliberately concealing the exposure resulting form the Company's off-label promotion of the drugs Bextra, Lyrica, Geodon, and Zyvox, and for paying illegal kickbacks related to the sale of a host of drugs. *E.g.*, ¶¶1, 68, 77, 79, 83.

During the Class Period, defendants falsely reassured investors that Pfizer complied with the laws governing the marketing of drugs and maintained adequate controls to ensure compliance with those laws (¶¶58-64); misled investors by inadequately disclosing federal government investigations related to off-label marketing in public documents filed with the Securities and Exchange Commission ("SEC") (¶¶68-77); misled investors by issuing statements touting the performance and efficacy of Geodon, Lyrica, and Zyvox, while omitting that Pfizer was promoting them illegally (¶¶84-94); falsely assured investors that Pfizer would continue to pay a dividend at current levels (¶¶81-83); failed to sufficiently account for or disclose the probable loss contingencies of Pfizer's illegal off-label marketing in Class Period financial statements, as required by Generally Accepted Accounting Principles (¶¶78-80); and falsely attested to the adequacy of Pfizer's internal controls over financial accounting (¶¶65-67).

Ultimately, Pfizer's illegal marketing and promotion of its drugs resulted in a settlement consisting of $2.3 billion in criminal and civil fines and penalties, comprising the then-largest criminal fine in U.S. history and the largest civil fraud settlement against a pharmaceutical company. ¶¶1, 19. In connection with the fines and penalties, a Pfizer shell subsidiary pled guilty to the off-label promotion of Bextra. ¶¶47, 50, 100. In addition, Pfizer admitted as "true and accurate" accusations that it marketed Zyvox off-label in violation of specific FDA warnings to cease that practice. ¶¶54-55.

On January 26, 2009, Pfizer disclosed the fines and Pfizer's stock price fell from a closing price of $17.45 on January 23, 2009, to $15.65 at market close on the next trading day, January 26, 2009. ¶134. The single-day loss to Pfizer's market capitalization was more than $12 billion. *Id.* Plaintiffs brought suit to recoup the losses due to defendants' fraudulent scheme suffered by persons who purchased Pfizer securities during the Class Period.

## III.   THE PROPOSED CLASS REPRESENTATIVES

Stichting, the Court-appointed lead plaintiff, is one of the oldest and largest existing corporate pension funds in the Netherlands. During the Class Period, Stichting purchased 2,143,769 shares of Pfizer stock. Declaration of Willow E. Radcliffe in Support of Plaintiffs' Motion for Class Certification ("Radcliffe Decl."), Ex. 4.

Stichting was established by Koninklijke Philips Electronics N.V. ("Philips") in 1913. Stichting is governed by a Board of Trustees, consisting of representatives of Philips, Philips employees, and Philips retirees. Radcliffe Decl., Ex. 5 at 13:18-23. The Board of Trustees is responsible for approving investment guidelines of the pension fund and Stichting is obligated to provide retirees with a pension under the Pension Act of the Netherlands. *Id.* at 20:5-25; 50:10-14. As of the end of December 2011, Stichting's investments totaled approximately 13.8 billion Euros. *Id.* at 18:5-10.

As lead plaintiff in this matter, Stichting has expended considerable time and effort in informing itself about the case and working with counsel to prosecute this action on behalf of the Class. Additionally, through its counsel, Stichting conducted an extensive investigation into defendants' fraudulent schemes and continues to spearhead the prosecution of this case.

Jones is an 85-year-old woman who conducts her trades in securities for the Mary K. Jones Revocable Trust (the "Trust") for her own benefit. Radcliffe Decl., Ex. 6 at 8:8; 13:23-14:5; *see also*

Radcliffe Decl., Ex. 7 at 1 (establishing that Jones is the grantor and trustee of the Trust). Jones testified that she monitored her investment in Pfizer by reviewing the price of the Company's stock and its income statements. Radcliffe Decl., Ex. 6 at 40:18-41:1. Jones further testified that she is familiar with the allegations in the Complaint. *Id.* at 35:5-14; 36:19-23.

Stichting and Jones are committed to actively directing this litigation and, through their counsel, have already embarked on a discovery plan. To date, defendants have produced millions of pages of documents.

## IV.   ARGUMENT

### A.   Class Action Treatment Is Appropriate for Securities Cases

"Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981), and have been recognized as an indispensible tool for enforcing the federal securities laws. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 320-21 (2007) (noting that the Court has "long recognized" the essential supplement provided by private securities actions to government actions and discussing the procedures for appointing class representatives and counsel in securities class actions). Class action treatment is appropriate here.

The Second Circuit "has explicitly noted its preference for class certification in securities cases and the importance of class certification for small securities holders throughout the country." *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995). "[A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green*, 406 F.2d at 296; *see Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965) ("The Advisory Committee's Note on the proposed amendment to Rule 23 suggested that

- 5 -

the kind of situation we have here, 'a fraud perpetuated (perpetrated) on numerous persons by the use of similar misrepresentations,' is an 'appealing situation for a class action.'").[3]

Moreover, even if many or all members of the proposed class were interested in bringing claims, a class action affords an indispensible mechanism for the conservation of judicial resources, because class action treatment enables the litigation of the same or similar claims in a single forum. *See, e.g.*, *Escott*, 340 F.2d at 733 ("The obvious desirability of avoiding a multiplicity of actions turns us toward favoring the representative suit and encouraging its use."); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.").

## B.    Class Certification Legal Standards

"Class certification is warranted under Rule 23 where the proposed class representative meets the standards of Rule 23(a) – numerosity, commonality, typicality and adequacy – and the proposed class action meets the requirements of one of the subsections of Rule 23(b)." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir. 2008); *see also* Fed. R. Civ. P. 23(a).

In the context of a class certification motion, a court's focus is limited to whether the prerequisites of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). "[A] district judge," therefore, "should not assess any aspect of the merits unrelated to a Rule 23 requirement" and "has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  Moreover, courts

---

[3]    *See also NYSE Specialists*, 260 F.R.D. at 80-81; *Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000).

must apply Rule 23 liberally. *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972); *In re Alstom S.A. Sec. Litig.*, 253 F.R.D. 266, 274-75 (S.D.N.Y. 2008). If a court is doubtful about the merits of certification, it should certify the class. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *Alstom*, 253 F.R.D. at 275.

For the reasons explained below, this action and the proposed Class Representatives satisfy the Rule 23(a) prerequisites and Rule 23(b)(3) requirements. Accordingly, class certification is appropriate and the Court should grant this motion.

### C.   The Proposed Class Satisfies Rule 23(a)

#### 1.   The Proposed Class Is so Numerous that Joinder Is Impracticable

The Rule 23(a)(1) requirement that the class be "so numerous that joinder is impracticable" is met here. "The numerosity requirement of Rule 23(a)(1) does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed where a class consists of 40 or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

In securities class actions "'relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (quoting *Teachers Ret. Sys. of La. v. ACLN Ltd.*, No. 1 Civ. 11814

674942_1

(LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004)).[4]  Pfizer is a publicly owned and nationally listed company.  ¶¶23, 142, 144.  Pfizer had more than seven billion shares of stock outstanding, owned by thousands, if not millions, of investors, during the Class Period.  ¶144.  Approximately 42 million shares of Pfizer stock were traded daily during the Class Period.  ¶134 (the January 26, 2009 volume of 210 million shares was 500% of the normal daily volume).  As such, the numerosity requirement is more than satisfied here.

### 2.    There Are Questions of Law and Fact Common to the Class

Rule 23(a)(2) is also satisfied here because "there are questions of law or fact common to the class."  Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and documents disseminated to the investing public, press releases and statements provided to the investment community, and statements made on media and investor conference calls.  *E.g.*, *Darquea v. Jarden Corp.*, No. 06-Civ-722 (CLB), 2008 WL 622811, at *2 (S.D.N.Y. Mar. 6, 2008); *In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482-83 (S.D.N.Y. 2000).  The requirement is a "low hurdle," *Alstom*, 253 F.R.D. at 275, for "'[a] single common question may be sufficient to satisfy this rule.'"  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

Among the questions of fact or law common to members of the Class are:

---

[4]    *See also, e.g.*, *In re Globalstar Sec. Litig.*, No. 01 Civ. 1748(PKC), 2004 WL 2754674, at *3-*4 (S.D.N.Y. Dec. 1, 2004) ("[I]t is not unusual for district courts to certify plaintiff classes in securities actions based on the volume of outstanding shares."); *Deutsche Telekom*, 229 F. Supp. 2d at 280 ("Class certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market.").

674942_1

(a)     Whether the [Securities Exchange Act of 1934 ("1934 Act")] was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the prices of Pfizer securities were artificially inflated; and

(f)     The extent of damage sustained by class members and the appropriate measure of damages.

¶145.

The claims alleged in the Complaint are the same type that courts routinely find to satisfy the commonality requirement. *See, e.g.*, *In re Interpublic Sec. Litig.*, No. 02-Civ-6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003) (commonality satisfied where common questions of law or fact include whether defendants' "public filings and statements contained material misstatements, whether defendants acted knowingly or with reckless disregard for the truth in misrepresenting material facts in [defendants'] public filings and press releases, and whether the damages to investors were caused by defendants' misstatements").

In denying defendants' motion to dismiss, the Court necessarily held that the Complaint adequately alleged the elements of a securities fraud claim under §10(b) of the 1934 Act, including that defendants made materially false or misleading statements with scienter.  Proof of these allegations forms the basis of plaintiffs' claims, and is necessarily common to all members of the proposed Class.  Thus, plaintiffs satisfy the commonality requirement.

### 3.   Plaintiffs' Claims Are Typical of the Proposed Class

Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" is also met here.  The typicality requirement is satisfied where "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds*, *Wal-Mart Stores, Inc. v. Dukes*, _U.S._, 131 S. Ct. 2541 (2011); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998).  "The claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'"  *Gerber v. Computer Assoc. Int'l, Inc.*, No. 91-CV-3610 (SJ), 1995 WL 228388, at *3 (S.D.N.Y. Apr. 7, 1995) (quoting *Epstein v. Moore*, No. 87-2984 (AET), 1988 WL 62213, at *6 (D.N.J. June 13, 1988)).  Moreover,

> Because [the typicality] inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if the each class member was the victim of the same material omissions and the same consistent course of conduct.

*In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986).  "'A difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality.'"  *Ansoumana*, 201 F.R.D. at 87.

Here, the claims arise from defendants' uniform course of conduct and each class member makes similar legal arguments to prove each defendant's liability.[5]  Like the proposed class members, Stichting and Jones purchased shares of Pfizer securities at artificially inflated prices

---

[5]      "The commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Thus, typicality is established for many of the same reasons discussed above in §IV.C.2.

during the Class Period. Radcliffe Decl., Ex. 4; Ex. 6 at 27:18-28:15; Ex. 8. Like the proposed class members, Stichting and Jones seek to prove that defendants' made false and misleading statements with scienter during the Class Period. As such, plaintiffs and the other members of the proposed Class allege that they have been injured by the same course of conduct by defendants. "'[I]t would be folly to force each [investor] to prove the nucleus of the alleged fraud again and again.'" *Prudential*, 163 F.R.D. at 207.

Additionally, the damages that all members of the proposed Class seek arise from the purchase of Pfizer securities at prices that were artificially inflated as a result of defendants' alleged false and misleading statements and omissions, and the subsequent decline in the price of the stock when the fraud was revealed. ¶¶155-157. Plaintiffs therefore stand in precisely the same position as other purchasers of Pfizer stock during the Class Period. Accordingly, typicality is satisfied. *Robinson*, 267 F.3d at 155.

### 4. Stichting and Jones Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement is met where (1) the representative plaintiff lacks interests that are antagonistic to those of the class and (2) the representative plaintiff's chosen counsel is qualified, experienced, and able to conduct the litigation. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs satisfy both prongs.

First, neither Stichting nor Jones have any interests that are antagonistic to the proposed Class. Both Stichting and Jones have already successfully represented the interests of the proposed Class and demonstrated their adequacy by, among other things, filing the comprehensive Complaint, defeating defendants' motion to dismiss, and sitting for deposition in this action. Additionally, all

members of the Class allege claims arising from the same wrongful conduct and based on the same legal theories as Stichting's and Jones's claims.

"'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Ansoumana*, 201 F.R.D at 87. "'As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.'" *Prudential*, 163 F.R.D. at 208. Here, there is no conflict and plaintiffs assert that defendants committed the same wrongful acts in the same manner against all proposed class members. As such, plaintiffs will fairly and adequately protect the interests of the Class. *Darquea*, 2008 WL 622811, at *3.

Second, Stichting and Jones have retained counsel with "substantial experience in securities class action litigation." *NYSE Specialists*, 260 F.R.D. at 74.[6] Stichting and Jones have retained Robbins Geller as lead counsel to represent them and the proposed Class in this matter. Among other noteworthy cases, Robbins Geller, then known as Coughlin Stoia Geller Rudman & Robbins LLP, served as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (MH) (S.D. Tex.), in which it secured for investors the largest recovery ever obtained in a shareholder class action. The *Enron* court lauded counsel's "clearly superlative litigating and negotiating skills" and the firm's "outstanding reputation, experience, and success in securities litigation nationwide"; "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the

---

[6]    *See* Robbins Geller's firm's resume previously submitted to the Court on July 12, 2010. Dkt No. 17 (Declaration of David A. Rosenfeld in Support of Stichting Philips Pensioenfonds's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel, Ex. 4).

- 12 -

most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 789-90, 797 (S.D. Tex. 2008).

Courts within this Circuit have repeatedly found Robbins Geller to be adequate and well qualified for the purposes of litigating class action lawsuits. *See NYSE Specialists*, 260 F.R.D. at 74 ("Given [Robbins Geller's] substantial experience in securities class action litigation . . . [the] element of adequacy has also been satisfied."); *see also, e.g.*, *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 267-68 (S.D.N.Y. 2009); *Kelleher v. ADVO, Inc.*, No. 3:06-cv-1422 (AVC), 2009 WL 2413362, at *3-*4 (D. Conn. Mar. 30, 2009); *Alstom*, 253 F.R.D. at 278. Robbins Geller is qualified to represent the Class and, along with plaintiffs, will vigorously protect the Class's interests. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### D.      The Proposed Class Satisfies Rule 23(b)(3)

A class action must not only meet the requirements of Rule 23(a), but must also satisfy one of the three conditions imposed by Rule 23(b). Here, plaintiffs move for class certification under Rule 23(b)(3), which authorizes certification where "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This action satisfies Rule 23(b)(3).

### 1.      Common Questions of Law or Fact Predominate

Here, questions of law or fact predominate over any questions affecting only individual class members. Indeed, the predominance requirement "'is a test readily met in certain cases alleging . . . securities fraud.'" *NYSE Specialists*, 260 F.R.D. at 75 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).

- 13 -

"The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana*, 201 F.R.D. at 89.  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).   Courts commonly find that, where an action alleges that materially false representations were made to large groups of investors, common issues of law and fact predominate. *See, e.g., Darquea*, 2008 WL 622811, at *5 ("a scheme to release material misrepresentations and omitting important investor information, resulting in artificially inflated prices . . . constitutes a 'common course of conduct'").

Thus, where a complaint alleges that defendants have made material misstatements, the issues of law and fact that flow from that allegation predominate over any individual issues, rendering class treatment appropriate.

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Defendants' liability arises from their dissemination of materially false and misleading statements during the Class Period.  The issues that predominate are whether defendants' statements were materially false or misleading, and, if so, whether defendants made them with knowledge or reckless disregard for the truth.  Individual claimants would have to prove the same elements. *See Darquea*, 2008 WL 622811, at *5 ("each class member, if they were to bring individual actions,

would be required to prove the existence of the alleged activities of the Defendants in order to prove liability").

Additionally, the Class here is entitled to the fraud-on-the-market presumption of reliance, which is subject to class-wide proof. The claims asserted under §10(b) and Rule 10b-5 rely on the fraud-on-the-market doctrine, which presumes reliance, and plaintiffs are not required to prove awareness of any particular misstatement or omission. *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988); *see also Salomon Analyst*, 544 F.3d at 481 (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 158-59 (2008)). Courts in the Second Circuit apply the fraud-on-the-market presumption of reliance where the defendant company's securities traded in an efficient market. *E.g., Lapin*, 254 F.R.D. at 182. Plaintiffs are not required to "establish loss causation at the certification stage to 'trigger the fraud-on-the-market presumption.'" *Erica P. John Fund, Inc. v. Halliburton Co.*, __ U.S. __, 131 S. Ct. 2179, 2185-86 (2011); *see also Salomon Analyst*, 544 F.3d at 483 ("[P]laintiffs do not bear the burden of showing an impact on price. The point of *Basic* is that an effect on market price is presumed based on the materiality of information and a well-developed market's ability to readily incorporate that information into the price of securities.").

Here, because Pfizer stock traded on the NYSE, plaintiffs are entitled to the presumption of market efficiency. "At the class certification stage, the securities' trading record may create certain rebuttable legal presumptions about market efficiency. If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient." *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05-CV-1898 (SAS), 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006), *aff'd* 546 F.3d 196 (2d Cir. 2008). "[W]here heavily-traded or well known stocks are the target of suits, market efficiency will not even be an issue." *Unger v. Amedisys Inc.*, 401 F.3d 316, 322 (5th Cir. 2005). Where a company's stock

- 15 -

traded in an efficient market, as Pfizer's was here, "common questions predominate and class certification is routine." *Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010).

In addition to the baseline determination of whether a stock traded on a national market, courts have adopted the factors enumerated in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), to evaluate market efficiency. *See In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 94 (S.D.N.Y. 2009) (noting that the *Cammer* factors "are frequently used to determine whether a market is efficient"); *In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 574 (S.D.N.Y. 2008) ("To determine whether a market for a security is efficient, courts often look to the five factors described in *Cammer*.").

The *Cammer* factors are whether: (1) the stock trades at a high weekly volume; (2) securities analysts follow and report on the stock; (3) the stock has market makers and arbitrageurs; (4) the company is eligible to file an SEC registration Form S-3; and (5) there are empirical facts showing a cause-and-effect relationship between unexpected events or financial releases and an immediate response in the stock price. *Cammer*, 711 F. Supp. at 1286-87. These factors are satisfied here. *See* Declaration of Steven P. Feinstein, Ph.D., CFA in Support of Plaintiffs' Motion for Class Certification ("Feinstein Decl."), ¶¶6-22, 27-35.

First, Pfizer's stock traded at a high volume during the Class Period, with an average of 201 million shares changing hands weekly. *See* Feinstein Decl., ¶9 (noting daily Class Period average of 40.2 million shares). Moreover, the average weekly trading volume was 2.9% of shares outstanding (*id.*), greater than the 2% threshold that "justif[ies] a strong presumption that the market for a security was an efficient one." *Cammer*, 711 F. Supp. at 1293. Second, securities analysts followed and reported on the stock. *See* Feinstein Decl., ¶¶11-12 (describing coverage by at least 28 different firms during the Class Period). Furthermore, institutional investors held, on average, 81.6% of

- 16 -

Pfizer's total shares outstanding during the Class Period. *Id.*, ¶13. Third, Pfizer stock traded on the NYSE and under the supervision of a lead market maker known as a specialist. *Id.*, ¶¶15-17. Fourth, Pfizer was eligible to file an SEC registration Form S-3 during the Class Period and, in fact, filed a Form S-3 on February 28, 2007. *Id.*, ¶¶19-21. Finally, facts demonstrate that there was a cause-and-effect relationship between unexpected events or financial releases and an immediate response in Pfizer's stock price during the Class Period. *See id.*, ¶¶27-32 (demonstrating cause-and-effect relationship via an empirical study). These factors demonstrate that Pfizer's stock traded on an efficient market during the relevant period.[7] Thus, reliance may be presumed.

The only individual issues likely to be raised here relate to the amount of damages sustained by each member of the Class. Courts have uniformly held, however, that potential issues raised by differences in damages do not preclude class certification. *E.g.*, *NYSE Specialists*, 260 F.R.D. at 74 ("Conflicts over damages, at this early stage in the litigation, need not defeat a motion for certification."); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 302 (S.D.N.Y. 2003) ("When liability can be determined on a class-wide basis, individualized damage issues are not ordinarily a bar to class certification."); *Ansoumana*, 201 F.R.D. at 86 ("'It is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit.'").

---

[7]     In addition, the three additional factors set forth by the Fifth Circuit in *Unger* are also satisfied. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ 1898 (SAS), 2006 WL 21611887, at *5 (S.D.N.Y. Aug. 1, 2006) (setting forth additional *Unger* factors). Throughout the Class Period, Pfizer had a large market capitalization, a low bid-ask spread for stock sales, and a high ratio of float to outstanding shares, each of which indicates market efficiency for Pfizer stock. Feinstein Decl., ¶¶23-26.

Plaintiffs satisfy Rule 23(b)(3)'s predominance requirement.

> **2.      A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Matter**

"'Courts have long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws.'" *NYSE Specialists*, 260 F.R.D. at 80 (quoting *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006)).  Rule 23(b)(3) establishes four factors to be evaluated by a court when considering the superiority of a class action:

> (A)      the class members' interest in individually controlling the prosecution . . . of separate actions;
>
> (B)      the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C)      the desirability . . . of concentrating the litigation of the claims in the particular forum; and
>
> (D)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  These factors militate in favor of certifying the Class here.

Securities actions satisfy the superiority requirement because: (i) absent a class action, defendants and the Court face the potential of thousands of individual lawsuits, each arising out of the same set of operative facts; (ii) the resolution of common issues alleged in one class action will result in efficient use of judicial resources and a single outcome that is binding on all defendants and class members; (iii) any administrative difficulties in handling potential individual issues that may arise in this litigation are less burdensome than the problems that likely would arise in administering hundreds or thousands of separate actions; and (iv) due to the prohibitive expense of prosecuting individual actions, denial of class certification would effectively prevent numerous individuals from asserting their claims against defendants and severely weaken the protections provided to investors by the federal securities laws. *E.g.*, *Lapin*, 254 F.R.D. at 187; *In re Merrill Lynch Tyco Research*

*Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008); *Darquea*, 2008 WL 622811, at *5; *In re Blech*

*Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999).

A class action is therefore not only superior, but is perhaps the only feasible way to litigate the claims alleged here. "[C]onsideration of judicial economy and sheer access to justice underscores the superiority of the class action in this case." *Prudential*, 163 F.R.D. at 208-09. As the Second Circuit has explained:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Green*, 406 F.2d at 296.

Defendants' violations of the federal securities laws caused economic injury to thousands of geographically dispersed investors. The cost of pursuing individual claims against Pfizer is unfeasible. On the other hand, the litigation of this case as a class action will adequately protect the interests of each class member. The "alternative" – thousands of separate individual actions – offers no practical recourse for most class members and would burden the judicial system. For those reasons, "securities cases 'easily satisfy the superiority requirement of Rule 23.'" *NYSE Specialists*, 260 F.R.D. at 80 (quoting *Blech*, 187 F.R.D. at 107).

## V.      CONCLUSION

For the reasons set forth above, plaintiffs request that the Court certify the Class defined

herein, designate Stichting and Jones as Class Representatives, and appoint Robbins Geller as Class

Counsel.

DATED:  January 13, 2012                    Respectfully Submitted,

                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                            WILLOW E. RADCLIFFE
                                            DANIEL J. PFEFFERBAUM
                                            MATTHEW S. MELAMED


                                                      s/Willow E. Radcliffe
                                            _____
                                                WILLOW E. RADCLIFFE

                                            Post Montgomery Center
                                            One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
                                            Telephone:  415/288-4545
                                            415/288-4534 (fax)
                                            willowr@rgrdlaw.com
                                            dpfefferbaum@rgrdlaw.com
                                            mmelamed@rgrdlaw.com

- 20 -

674942_1

ROBBINS GELLER RUDMAN
   & DOWD LLP
HENRY ROSEN
TRIG R. SMITH
RYAN A. LLORENS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
henryr@rgrdlaw.com
trigs@rgrdlaw.com
ryanl@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Lead Counsel for Plaintiffs

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 13, 2012.

/s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:willowr@rgrdlaw.com

674942_1
674942_1

# Mailing Information for a Case 1:10-cv-03864-AKH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Charles Alan Gilman**
  cgilman@cahill.com
- **James M. Hughes**
  jhughes@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com
- **David George Januszewski**
  djanuszewski@cahill.com
- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com,hlindley@kendalllawgroup.com
- **Leigh R. Lasky**
  lasky@laskyrifkind.com
- **Hamilton Philip Lindley**
  hlindley@goldfarbbranham.com
- **Ryan A. Llorens**
  ryanl@rgrdlaw.com
- **Matthew Melamed**
  mmelamed@rgrdlaw.com
- **Donald Alan Migliori**
  dmigliori@motleyrice.com
- **Danielle S. Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **William H. Narwold**
  bnarwold@motleyrice.com,imoll@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com
- **Willow E. Radcliffe**
  willowr@rgrdlaw.com
- **Joseph F. Rice**
  jrice@motleyrice.com
- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com
- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com
- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,danim@rgrdlaw.com
- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,nhorstman@rgrdlaw.com
- **Mitchell M.Z. Twersky**
  mtwersky@aftlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Catherine J. Kowalewski**
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

**David C. Walton**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301