UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
MARY K. JONES, Individually and on Behalf :    Civil Action No. 1:10-cv-03864-AKH
of All Others Similarly Situated,              :
                                 :    CLASS ACTION
               Plaintiff  :
                                   :    PLAINTIFFS' REPLY MEMORANDUM IN
     vs.                          :    SUPPORT OF CLASS CERTIFICATION
                                   :
PFIZER INC., et al.,                 :    DATE:  March 26, 2012
                                   :    TIME:  4:00 p.m.
                     Defendants.  :    COURTROOM:  14D
———————————————————— x    Honorable Alvin K. Hellerstein

685009_1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................................1

II.  PHILIPS AND JONES HAVE MET THEIR BURDEN UNDER RULE 23 ....................4

     A.   Jones Satisfies the Typicality and Adequacy Requirements of Rule 23(a) .............5

     B.   Philips Satisfies the Typicality and Adequacy Requirements of Rule 23(a) .........10

     C.   The Proposed Class Satisfies Rule 23(b)(3) ..........................................19

     D.   Defendants Are Not Entitled to a Redo of Their Motion to Dismiss....................26

III. THE PROPOSED CLASS DEFINITION .......................................................................28

IV.  CONCLUSION......................................................................................................30

685009_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Baffa v. Donaldson,*
222 F.3d 52 (2d Cir. 2000)..................................................................................5, 14

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988).......................................................................................3, 10, 12

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) ...................................................................................10

*Bynum v. District of Columbia,*
214 F.R.D. 27 (D.D.C. 2003)......................................................................................8

*Cammer v. Bloom,*
711 F. Supp. 1264 (D.N.J. 1989) ......................................................................*passim*

*Carpenters Health & Welfare Fund v. Coca-Cola Co.,*
No. 1:00-CV-2838-WBH, 2008 WL 4737173
(N.D. Ga. Mar. 14, 2008)...........................................................................................23

*CE Design Ltd. v. Cy's Crabhouse North, Inc.,*
259 F.R.D. 135 (N.D. Ill. 2009)................................................................................17

*Cosmas v. DelGiorno,*
No. CV-94-1974, 1995 U.S. Dist. LEXIS 21146
(E.D.N.Y. Feb. 6, 1995)..............................................................................................11

*Cross v. 21st Century Holding Co.,*
No. 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283
(S.D.N.Y. Feb. 18, 2004) ...........................................................................................11

*CSX Transp. Co. v. Novolog Bucks Cnty.,*
No. 04-4018, 2008 U.S. Dist. LEXIS 83512
(E.D. Pa. Oct. 16, 2008) .............................................................................................18

*Ct. Ret. Plans & Trust Funds v. Amgen Inc.,*
660 F.3d 1170 (9th Cir. 2011) ...................................................................................28

*Darquea v. Jarden Corp.,*
No. 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747
(S.D.N.Y. Mar. 6, 2008) .............................................................................................10

Page

*DeMarco v. Robertson Stephens Inc.*,
    228 F.R.D. 468 (S.D.N.Y. 2005) ...........................................................................27

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ............................................................................11

*Dolan v. Axis Capital Holdings Ltd.*,
    No. 04 Civ. 8564 (RJH), 2005 WL 883008
    (S.D.N.Y. Apr. 13, 2005) ........................................................................................9

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*,
    657 F.2d 890 (7th Cir. 1981) ...................................................................................2

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...............................................................................................18

*Finkelstein v. Liberty Digital, Inc.*,
    No. Civ. A 19598, 2005 WL 1074364
    (Del. Ch. Apr. 25, 2005) ..................................................................................23, 24

*Fisher v. Ciba Specialty Chems. Corp.*,
    238 F.R.D. 273 (S.D. Ala. 2006) ...........................................................................18

*Fogarazzo v. Lehman Bros., Inc.*,
    263 F.R.D. 90 (S.D.N.Y. 2009) .............................................................................20

*Ganino v. Citizens Util. Co.*,
    228 F.3d 154 (2d. Cir. 2000) .................................................................................27

*In re Adobe Sys. Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991) ...........................................................................10

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) .................................................................7, 20, 28

*In re Am. Italian Pasta Co. Sec. Litig.*,
    No. 05-0725-cv-W-ODS, 2007 U.S. Dist. LEXIS 21365
    (W.D. Mo. Mar. 26, 2007) ................................................................................3, 14

*In re Amaranth Natural Gas Commodities Litig.*,
    269 F.R.D. 366 (S.D.N.Y. 2010) ...........................................................................25

*In re American Int'l Grp., Inc. Sec. Litig.*,
    265 F.R.D. 157 (S.D.N.Y. 2011) ...........................................................................26

**Page**

*In re Apollo Group, Inc. Sec. Litig.,*
    509 F. Supp. 2d 837 (D. Ariz. 2007) ...............................................................23

*In re Apollo Grp., Inc. Sec. Litig.,*
    527 F. Supp. 2d 957 (D. Ariz. 2007) ...............................................................23

*In re Ashanti Goldfields Sec. Litig.,*
    No. CV 00-0717 (DGT), 2004 WL 626810
    (E.D.N.Y. Mar. 30, 2004) ...................................................................................9

*In re Baldwin-United Corp. Litig.,*
    122 F.R.D. 424 (S.D.N.Y. 1986) .................................................................4, 8

*In re Credit Suisse-AOL Sec. Litig.,*
    253 F.R.D. 17 (D. Mass 2008)..........................................................................12

*In re Dynex Capital, Inc. Sec. Litig.,*
    05 CIV. 1897 HB, 2011 WL 781215
    (S.D.N.Y. Mar. 7, 2011) ...................................................................................21

*In re Hartford Sales Practices Litig.,*
    192 F.R.D. 592 (D. Minn. 1999)......................................................................18

*In re HealthSouth Corp. Sec. Litig.,*
    257 F.R.D. 260 (N.D. Ala. 2009).....................................................................26

*In re Initial Pub. Offering Sec. Litig.,*
    260 F.R.D. 81 (S.D.N.Y. 2009) .......................................................................20

*In re Initial Pub. Offering Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006).........................................................................15, 27

*In re Initial Public Offering Sec. Litig.,*
    544 F. Supp. 2d 277 (S.D.N.Y. 2008)..............................................................20

*In re Lilco Sec. Litig.,*
    111 F.R.D. 663 (E.D.N.Y. 1986) .....................................................................26

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
    No. 04 Civ. 8144 (CM), 2009 WL 5178546
    (S.D.N.Y. Dec. 23, 2009)...................................................................................8

*In re Oxford Health Plans, Inc.,*
    191 F.R.D. 369 (S.D.N.Y. 2000) .......................................................................8

**Page**

*In re PolyMedica Corp. Sec. Litig.*,
    432 F.3d 1 (1st Cir. 2005) ...................................................................................20

*In re Red Hat, Inc. Sec. Litig.*,
    261 F.R.D. 83 (E.D.N.C. 2009) ...............................................................12, 13, 23

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ..................................................................4, 25

*In re Salomon Analyst Metromedia Litig.*,
    236 F.R.D. 208 (S.D.N.Y. 2006) ...........................................................................8

*In re Salomon Analyst Metromedia Litig.*,
    544 F.3d 474 (2d Cir. 2008) ....................................................................1, 3, 20

*In re Sepracor Inc.*,
    233 F.R.D. 52 (D. Mass. 2005) ............................................................................13

*In re SLM Corp. Sec. Litig.*,
    No. 08 Civ. 1029 (WHP), 2012 WL 209095
    (S.D.N.Y. Jan. 24, 2012) ......................................................................12, 13, 20, 25

*In re Tronox, Inc. Sec. Litig.*,
    No. 09 Civ. 6220 (SAS), 2010 WL 2835545
    (S.D.N.Y. June 28, 2010) ......................................................................................20

*In re Tyco Int'l, Ltd.*,
    236 F.R.D. 62 (D.N.H. 2006) ..............................................................................23

*In re UTStarcom Sec. Litig.*,
    No. C04 04908 JW, 2010 U.S. Dist. LEXIS 48122
    (N.D. Cal. May 12, 2010) ...............................................................................3, 15, 26

*In re Vecco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809
    (S.D.N.Y. Nov. 7, 2007) ........................................................................................23

*In re Veeco Instruments, Inc., Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ...........................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................................6

685009_1

**Page**

*In re Wash. Mut., Inc.*,
   No. 2:08-md-1919 MJP, 2010 U.S. Dist. LEXIS 142992
   (W.D. Wash. Oct. 12, 2010) ..................................................................11

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing &*
   *Securitization LLC*,
   616 F. Supp. 2d 461 (S.D.N.Y. 2009)........................................3, 14, 15

*Janus Capital Grp, Inc. v. First Derivative Traders*,
   _U.S._, 131 S. Ct. 2296 (2011)............................................................28

*Katz v. Image Innovations Holdings, Inc.*,
   No. 06 Civ. 3707 (JGK), 2010 U.S. Dist. LEXIS 73929
   (S.D.N.Y. July 22, 2010) .......................................................................5

*Kline v. Wolf*,
   702 F.2d 400 (2d Cir. 1983)..................................................................1

*Koch v. Dwyer*,
   No. 98 Civ. 5519 (RPP), 2001 WL 289972
   (S.D.N.Y. Mar. 23, 2001) ....................................................................26

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   No. 1:08-cv-7281 (JFK), 2008 U.S. Dist. LEXIS 95506
   (S.D.N.Y. Nov. 24, 2008) ...............................................................12, 13

*McClendon v. Challenge Fin. Investors Corp.*,
   No. 1:08 cv1189, 2009 U.S. Dist. LEXIS 17908
   (N.D. Ohio Mar. 9, 2009) ....................................................................18

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)............................................................21

*Morrison v. Nat'l Australia Bank Ltd.*,
   _U.S._, 130 S. Ct. 2869 (2010)........................................................28, 29

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597,
   (S.D.N.Y. Aug. 16, 2011) ......................................................................7

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   272 F.R.D. 160 (S.D.N.Y. 2011) ...........................................................6

**Page**

*Pennsylvania Ave. Funds v. Inyx Inc.*,
   No. 08 Civ. 6857 PKC, 2011 WL 2732544
   (S.D.N.Y. July 5, 2011) ............................................................................20, 25

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*,
   C01-20418 JW, 2004 U.S. Dist LEXIS 27008
   (N.D. Cal. May 27, 2004) ...........................................................................15

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ...........................................................3, 15, 25

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001).........................................................................4

*Rockey v. Courtesy Motors, Inc.*,
   199 F.R.D. 578 (W.D. Mich. 2001 ) ............................................................18

*Schlanger v. Four-Phase Systems Inc.*,
   555 F. Supp 535 (S.D.N.Y. 1982) ...............................................................12

*Schleicher v. Wendt*,
   No. 1:02-CV-1332-DFH-TAB, 2009 WL 761157
   (S.D. Ind. Mar. 20, 2009),
   *aff'd*, 618 F.3d 679 (2010) ...................................................................22, 23

*Silverman v. Motorola, Inc.*,
   259 F.R.D. 163 (N.D. Ill. 2009)..............................................................3, 15

*Spanski Enterprises Inc. v. Telewizja Polaska, S.A.*,
   No. 07 CV 930, 2009 WL 3270794 (S.D.N.Y. Oct. 13, 2009)..........................12

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008).....................................................................................3

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   No. 05 Civ. 1898 (SAS) 2006 WL 2161887
   (S.D.N.Y. Aug. 1, 2006),
   *aff'd* 546 F.3d 196 (2d Cir. 2008) ...............................................................20

*Unger v. Amedisys, Inc.*,
   401 F.3d 316 (5th Cir. 2005) ..............................................................4, 19, 20

*United States v. Bowers*,
   920 F.2d 220 (4th Cir. 1990) .....................................................................17

- vii -

**Page**

*United States v. Catabran,*
    836 F.2d 453 (9th Cir. 1988) ........................................................................18

*United States v. Huete-Sandoval,*
    681 F. Supp. 2d 136 (D.P.R. 2010)................................................................17

*United States v. Moon,*
    513 F.3d 527 (6th Cir. 2008) ........................................................................18

*United States v. Weinstock,*
    153 F.3d 272 (6th Cir. 1998) ........................................................................18

*Wagner v. Barrick Gold Corp.,*
    251 F.R.D. 112 (S.D.N.Y. 2008) ..................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
    _U.S._, 131 S. Ct. 2541 (2011)......................................................................4

*Werner v. Satterlee, Stephens, Burke & Burke,*
    797 F. Supp. 1196 (S.D.N.Y. 1992)................................................................8

*Zemel Family Trust v. Philips Int'l Realty Corp.*
    205 F.R.D. 434 (S.D.N.Y. 2002) ...................................................................9

**STATUTES, RULES AND REGULATIONS**

Ark. Code Ann.
    §28-73-303 (West 2012) .................................................................................7

**RULES**

Federal Rule of Civil Procedure
    Rule 17...........................................................................................................2
    Rule 17(a).......................................................................................................7
    Rule 23 ................................................................................................. *passim*
    Rule 23(a)................................................................................................5, 10
    Rule 23(a).......................................................................................................1
    Rule 23(b)(3)............................................................................................1, 19
    Rule 30(b)(6)................................................................................................12

**Page**

Federal Rule of Evidence
    Rule 803(6) ................................................................................................................18
    Rule 901(a)...............................................................................................................17

17 C.F.R.
    §240.10b-5 ...........................................................................................................2, 28
    §§243.100-243.103).................................................................................................11

15 U.S.C.
    §78(e) ........................................................................................................................9

685009_1

Lead Plaintiff Stichting Philips Pensioenfonds ("Philips" or "Lead Plaintiff") and named plaintiff Mary K. Jones, individually and as trustee of the Mary K. Jones Revocable Trust (collectively, "Jones") (together with Philips, "plaintiffs" or "Class Representatives") hereby submit this reply in further support of plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Mem.") (Dkt. No. 105), and in response to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Opposition" or "Opp.").

## I.    INTRODUCTION

Defendants' Opposition presents no basis to preclude a class from being certified in this action.  Class Representatives have satisfied the prerequisites for class certification under Rule 23(a) and Rule 23(b)(3) – numerosity, commonality, typicality, adequacy, predominance and superiority. *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir. 2008).[1]  Defendants do not challenge numerosity, commonality and superiority, thereby conceding that these requirements have been met.  Defendants' attacks on typicality, adequacy, and predominance are based on a misrepresentation of the record and a misapplication of the law.  In certain instances, the attacks constitute nothing more than arguments already rejected by this Court at the motion to dismiss stage.

Regarding typicality, "a court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation." *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983).  As the Seventh Circuit has cautioned:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified.  When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," . . .

---

[1]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

> it is a bit like permitting the fox, although with a pious countenance, to take charge of
> the chicken house.

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

The analogy is apt here; it logically follows from defendants' overwrought objections that they

would find fault with any proposed class representative.

Defendants quibble that Ms. Jones brought her initial action in her name as opposed to that of

her revocable trust (ignoring that Fed R. Civ. P. 17 permits her to do so); is an individual investor

(like tens of thousands of other investors); and cannot adequately represent the class because she

████████████████ (which in no way interfere with her ability to adequately represent the class).

None of these complaints render Ms. Jones or her trust inadequate.

Likewise, defendants allege that institutional investor Philips, which relied on third-party

investment advisor BlackRock (one of the world's largest fund managers) to buy and sell its Pfizer

Inc. ("Pfizer") stock, is inadequate because of a banking entry "error" by Philips' custodian bank

State Street.  When Mr. Theo Kamps, testifying for Philips, became aware of the error while

preparing for his deposition, he corrected it immediately.  Despite the banking "error," Philips

continues to have the largest losses of any plaintiff who has expressed interest in this case, $19.6

million, and has demonstrated its commitment to adequately representing class members by

defeating defendants' motion to dismiss, producing thousands of pages of documents and preparing

and offering a representative for deposition in this action.

Further, the Court should reject defendants' suggestion that Philips' adequacy is tarnished

because it has not produced a third-party investment manager for deposition.  Tellingly, defendants

have not sought permission of the Court to depose third-party BlackRock by motion or subpoena, or

explained the relevance of BlackRock's testimony to class certification.  The claims asserted under

§10(b) and Rule 10b-5 rely on the fraud-on-the-market doctrine, which presumes reliance, and

plaintiffs are not required to prove awareness of any particular misstatement or omission. *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988); *see also Salomon Analyst*, 544 F.3d at 481 (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 158-59 (2008)). Thus, BlackRock's deposition testimony is irrelevant to class certification.

This Court should also reject defendants' assertion that Philips' monitoring agreement with lead counsel renders Philips inadequate. It does not. Numerous courts have rejected the argument defendants raise here regarding the adequacy of proposed class representative institutions with monitoring agreements. *E.g.*, *Plumbers, Pipefitters and Apprentices Local No. 112 Pension Fund v. CIT Group Inc.*, No. 08 CV 6613 (BSJ), Order at 5 (S.D.N.Y. May 22, 2009) (appointing institutional investor as lead plaintiff and approving selection of Coughlin Stoia, now known as Robbins Geller, as lead counsel)[2]; *In re UTStarcom Sec. Litig.*, No. C04 04908 JW, 2010 U.S. Dist. LEXIS 48122, at *28 (N.D. Cal. May 12, 2010); *Silverman v. Motorola, Inc.*, 259 F.R.D. 163 (N.D. Ill. 2009); *In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-cv-W-ODS, 2007 U.S. Dist. LEXIS 21365 (W.D. Mo. Mar. 26, 2007). In any event, Judge Rakoff's observations regarding monitoring agreements when determining the appointment of a lead plaintiff, cited by defendants (Opp. at 11), are not convincing. He subsequently appointed as lead plaintiff an institution that had a monitoring agreement, *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization LLC*, 616 F. Supp. 2d 461, 466 (S.D.N.Y. 2009), and later certified that lead plaintiff as a class representative. *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 110 (S.D.N.Y. 2011).

---

[2]   Declaration of Willow E. Radcliffe in Support of Plaintiffs' Reply Memorandum in Support of Class Certification ("Radcliffe Reply Decl."), Ex. 9.

685009_1

Finally, defendants concede that 7 of 8 factors typically used to determine market efficiency, enumerated in the cases *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), and *Unger v. Amedisys, Inc.*, 401 F.3d 316 (5th Cir. 2005), have been met. Mem. at 15-17. Regarding the one "contested" factor, defendants do not proffer an expert to contradict the conclusions of plaintiffs' expert, Dr. Feinstein, regarding empirical evidence of market efficiency, and their efforts to discredit his expert opinion fall flat as his event study methodology and opinion are sound. This Court should therefore ignore defendants' unsupported hypotheses regarding the bankruptcies and the federal bailouts of *other* companies, and the length of the Class Period (1/19/06–1/23/09). As Judge Scheindlin recently noted: "For the third time in as many months, the Court finds itself presented with the defense: 'don't blame me, blame the financial crisis.' For the same reasons I rejected this argument in prior cases, I reject it once again." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 317 (S.D.N.Y. 2010). This Court should do the same.

In sum, the Court should certify this matter as a class action.

## II.     PHILIPS AND JONES HAVE MET THEIR BURDEN UNDER RULE 23

Contrary to defendants' assertions, Philips and Jones have provided adequate evidence that they meet the Fed. R. Civ. P. 23 requirements. The claims of the class members here are all based on the same materially false and misleading statements on which all class members may be presumed to have relied. There is no dispute that Jones' and Philips' claims "arise[] from the same course of events," *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds*, *Wal-Mart Stores, Inc. v. Dukes*, _U.S._, 131 S. Ct. 2541 (2011), nor that Jones and Philips were "the victim[s] of the same material omissions and the same consistent course of conduct." *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986). Proof

that defendants materially misled investors with the requisite scienter will be the same for all class members.

**A.      Jones Satisfies the Typicality and Adequacy Requirements of Rule 23(a)**

In determining the adequacy of a class representative, courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000); *see also Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707 (JGK), 2010 U.S. Dist. LEXIS 73929, at *13 (S.D.N.Y. July 22, 2010).  Here, defendants do not claim that Jones or Philips has any interest that are antagonistic to the interests of other class members.  Nor do they contend that Lead Counsel is unqualified or unable to conduct the litigation.

As an initial matter, Jones seeks to be a class representative in her individual capacity and as the trustee of the Mary K. Jones Revocable Trust.  While defendants attempt to create inadequacies where none exist, it is clear that Ms. Jones and her trust are the beneficiaries of her September 18, 2007 Pfizer common stock purchase.  *See* Mem. at 4-5.  Defendants' claims otherwise (Opp. at 16) are without merit.

Defendants' innuendo regarding Ms. Jones' age and their disparaging remarks about her sworn testimony that ███████████████████████████ (Radcliffe Decl.,[3] Ex. 6 at 12:21-13:3) are specious.  Ms. Jones has clearly demonstrated her willingness and ability to be a class representative in this matter by her active participation in the case and deposition testimony.  Ms. Jones testified about her consultation with her attorneys

_____

[3]      "Radcliffe Decl." refers to the Declaration of Willow E. Radcliffe in Support of Plaintiffs' Motion for Class Certification, filed January 13, 2012.

685009_1

regarding the allegations in this action, her familiarity with those allegations and review of complaints, the fact that she made her own investment decisions in Pfizer stock and that her investment strategy was to make money.[4]  Radcliffe Decl., Ex. 6 at 34:14-35:22; 36:18-22; Radcliffe Reply Decl., Ex. 10 at 25:20-25.

Specifically, Ms. Jones testified regarding the "steps [she took] to research Pfizer prior to purchasing" 500 shares on September 18, 2007:

> I – I had seen an article.  I don't recall if it was a magazine or my local newspaper or anything.  But it said that Pfizer was one of the four[] largest pharmaceutical companies in the world, that they had several new blockbuster drugs and really gave them a good report.  And Standard & Poor's at that time said the – basically the same thing.  And I didn't see anything negative in the Standard & Poor's report, so that's why I bought it.

Radcliffe Decl., Ex. 6 at 28:16-17; 28:22-29:7.  She also testified as to her familiarity with the allegations in this action:

> What – I have read from the complaint, Pfizer was engaging in off – off use of certain drugs, off-label use of certain drugs and pushing them quite heavily, pushing the sale of them quite heavily.  And this was, I understand, against FDA rules.  And I – that, and there – there may be some question about the pricing on these drugs.  I think that's the basic complaint.  And they didn't disclose all these facts to the investors.

*Id.* at 35:5-14.

A class representative need only have "general knowledge" of the facts and claims at issue. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 164 (S.D.N.Y. 2011); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 88 (S.D.N.Y. 2007) (adequacy prerequisite met even though representative could not recall the year the complaint was filed, the dates of the class period, how he decided to become a class representative, the details of his

---

[4]     Ms. Jones did not testify that she did not authorize the filing of the complaints in this action as defendants "question."  Opp. at 14.

- 6 -

purchases and sales of Vivendi securities, etc.).    Jones has demonstrated more than "general knowledge."

Likewise, defendants' trumped-up allegation regarding the veracity of Jones' original certification not only fails to render her inadequate but is also premised on a misunderstanding of fact and law.  As the trustee of her revocable trust, Ms. Jones may sue in her own name.  *See* Fed. R. Civ. P. 17(a) (a "trustee of an express trust . . . may sue in their own name[]").[5]  Further, the trust explicitly provides Ms. Jones with "Securities Rights," including the power to "buy, own, sell, pledge and otherwise exercise all rights, options, and privileges pertaining to securities" for her benefit.  Radcliffe Decl., Ex. 7 at 10.  She referenced that power in her deposition testimony; her trades in securities were for her and "the trust doesn't actually hold any money for me.  I have complete control of it."  *Id.*, Ex. 6 at 26:22-23.

Defendants also claim that Jones, who purchased Pfizer securities only in September 2007, is inadequate and atypical because the class includes purchasers of Pfizer securities after that date. The same argument was recently rejected by Judge Crotty.  *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597, at *11 (S.D.N.Y. Aug. 16, 2011) (noting that "[a]ny potential conflicts between proposed class members are speculative and, therefore, do not defeat typicality"); *see also In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 277 (S.D.N.Y. 2008) (intra-class conflicts relating to timing of purchases "do not warrant denial of class

_____

[5]    Under Arkansas law, which governs the trust at issue, Ms. Jones "may represent and bind the beneficiaries of the trust."  Ark. Code Ann. §28-73-303 (West 2012).  In other words, she may represent herself as the Grantor of her revocable trust while she is living.  Radcliffe Decl., Ex. 7 at 1, 3-4.

certification"); *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1215 (S.D.N.Y. 1992) ("the timing of their purchase do not disqualify the plaintiffs as class representatives").

"As a general rule, a plaintiff's claim meets the typicality requirement if it arises from the same events or course of conduct that gives rise to the claims of other class members and if it is based on evidence and legal theories consistent with the other members' claims." *Baldwin-United*, 122 F.R.D. at 428; *see also In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (quoting *Baldwin United*, 122 F.R.D. at 428; *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) (citing *Baldwin-United*, 122 F.R.D. at 428, for typicality analysis). Jones' losses are typical of those suffered by the class. The false and misleading statements that caused her purchase of Pfizer securities are part of defendants' common course of conduct to defraud investors through false and misleading statements relating to Pfizer's risks for systemic violations of off-label marketing laws.

Further, contrary to defendants' insinuation, the amount of losses Jones suffered as an individual investor does not detract from her adequacy to represent class members, including institutional investors. Jones purchased 500 shares of Pfizer stock at the inflated price of $23.99 per share. Radcliffe Decl., Ex. 8. "[T]here is no requirement in Rule 23 concerning the amount of loss either in gross or compared with the losses of others, necessary to qualify as a class representative." *Oxford Health Plans*, 191 F.R.D. at 375; *see also Bynum v. District of Columbia*, 214 F.R.D. 27, 36 (D.D.C. 2003) ("[T]he size of a named plaintiff's financial stake in the action is not the determinative issue; rather, the issue is whether the named plaintiffs will adequately protect the interests of the class."). Moreover, an investor's "'sophistication and the particulars of his investment strategy do not suffice to render him inadequate or atypical of the class.'" *In re Salomon*

685009_1

*Analyst Metromedia Litig.*, 236 F.R.D. 208, 215 (S.D.N.Y. 2006); *see also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006).

The authority defendants rely on for their claim that Jones is inadequate to represent institutional investors does not support their claim. In *Zemel Family Trust v. Philips Int'l Realty Corp.*, the court found that the individual investor was an inadequate class representative because he had initiated hundreds of mini-tender offers at below market prices, leading to an SEC cease-and-desist order for violations of §14(e) of the Exchange Act. 205 F.R.D. 434, 436 (S.D.N.Y. 2002). The proposed class representative also misrepresented facts during his deposition. *Id.* "[H]is significant involvement with tender offers . . . makes him uniquely susceptible to defenses that may not be asserted against other class members." *Id.*; *see also id.* at 437. While the court mentioned that the fact that the proposed class representative was an individual investor, made him "less than ideal" as a class representative, that observation was less important to the court's holding than the unique defenses available to defendants against him. *Id.* A class representative need not be "ideal." *Id.*[6] *Dolan v. Axis Capital Holdings Ltd.*, No. 04 Civ. 8564 (RJH), 2005 WL 883008 (S.D.N.Y. Apr. 13, 2005), also cited by defendants, does not support their position. While the *Dolan* court stated its concern that neither of the two proposed class representatives had a large financial interest in the case, it appointed them as co-class representatives anyway. *Id.* at *5.

---

[6]     *See also In re Ashanti Goldfields Sec. Litig.*, No. CV 00-0717 (DGT), 2004 WL 626810, at *14 n.5 (E.D.N.Y. Mar. 30, 2004) (the *Zimmel* court determined that the proposed class representative was atypical because his " lack of honesty and trustworthiness regarding his status in entities engaged in mini-tender offers that have been the subject of SEC sanctions shows that he does not meet the standards of a fiduciary who will fairly and adequately protect the interests of the class he seeks to represent").

685009_1

In sum, the law provides no support for defendants' claim that Jones is inadequate or atypical due to a small financial stake in the case or the fact that she is an individual investor. She is committed to seeking the best recovery in this action for all class members, as demonstrated by her actions to date – seeking out counsel to pursue this action, monitoring the plaintiffs' filings in this action, producing documents requested by defendants and sitting for deposition.

**B.      Philips Satisfies the Typicality and Adequacy Requirements of Rule 23(a)**

While Jones is purportedly inadequate to represent class members because she is an individual investor, Philips is inadequate, according to defendants, for the opposite reason – because it is an institutional investor that relied on an investment manager and has agreed to have its stock portfolio monitored by counsel. Neither of these purported flaws preclude class certification.

First, the Supreme Court has held that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *See Basic*, 485 U.S. at 247. Thus, defendants are wrong that Philips was required to contact its investment managers to see whether they held a subjective belief that they had been misled or produce their outside investment managers for deposition. *See also Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1975) ("proof of subjective reliance on particular misrepresentations is unnecessary"); *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747, at *12 (S.D.N.Y. Mar. 6, 2008) (even where lead investment advisors testified that the misstatements at issue were not crucial to their recommendation to purchase the, "[t]here is no reason to believe that the defense will draw any extraordinary attention or divert the trial from the main issues"); *In re Adobe Sys. Inc. Sec. Litig.*,

139 F.R.D. 150, 155 (N.D. Cal. 1991) (argument of non-reliance is "'virtually meaningless . . . in an open market situation'").[7]

Despite demanding BlackRock's testimony, defendants fail to provide any reason why it is relevant. There is no evidence, nor any grounds to believe that evidence exists, that Philips' investment managers may have been privy to inside information and therefore knew of the concealed information at the time they purchased Pfizer stock on behalf of their client. *See Cosmas v. DelGiorno*, No. CV-94-1974, 1995 U.S. Dist. LEXIS 21146, at *7 (E.D.N.Y. Feb. 6, 1995) (rejecting an attack on typicality where proposed class representative spoke with officers of the company personally and received information from his broker because all of the information was in the public domain); *Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283 (S.D.N.Y. Feb. 18, 2004) (class representative typical over objections of defendants that he spoke to officers and director defendants); *Dietrich v. Bauer*, 192 F.R.D. 119, 125 (S.D.N.Y. 2000); *In re Wash. Mut., Inc.*, No. 2:08-md-1919 MJP, 2010 U.S. Dist. LEXIS 142992, at *41-*42 (W.D. Wash. Oct. 12, 2010) (rejecting defendants' argument that the proposed class representative must demonstrate that its investment manager relied on Washington Mutual's registration statement). Indeed, defendants do not claim that they were providing BlackRock material non-public information, in violation of Regulation Fair Disclosure (17 C.F.R. §§243.100-243.103) and insider trading laws. Moreover, had BlackRock been privy to the negative material information alleged by plaintiffs to have been concealed from investors, it is unlikely that BlackRock would have

---

[7]     Indeed, a professional manager may be reluctant to admit to its client that it made an investment in a company whose share price had been inflated by fraud, lest the client decide to take its investment business elsewhere.

purchased Pfizer stock for its clients at fraudulently inflated prices.[8] Tellingly, defendants have not sought permission of the Court to depose BlackRock.

Plaintiff is under no obligation to produce or compel the testimony of a BlackRock representative. There is nothing in Philips' Rule 30(b)(6) deposition to indicate that Philips had control of BlackRock.[9] To the contrary, Philips has no control over the production of BlackRock for deposition, just as Pfizer has no control over its financial advisors and accountants who plaintiffs have subpoenaed in this action for documents.

Second, the fact that Philips submitted a corrected certification does not render it inadequate. Mistakes in certifications are not dispositive absent evidence of bad faith or intent to deceive. *In re SLM Corp. Sec. Litig.*, No. 08 Civ. 1029 (WHP), 2012 WL 209095, at *8-*9 (S.D.N.Y. Jan. 24, 2012).[10] The mistake here was neither significant nor intentional. Philips' initial certification of its losses in Pfizer stock during the Class Period contained, as Philips' Rule 30(b)(6) designee explained during his deposition, a simple entry error by Philips' custodial bank, State Street. This error was

---

[8]     As the Supreme Court has stated in quoting the late Judge Brieant, "it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" *Basic*, 485 U.S. at 245 (quoting *Schlanger v. Four-Phase Systems Inc.*, 555 F. Supp 535, 538 (S.D.N.Y. 1982)).

[9]     Defendants' citation to *Spanski Enterprises Inc. v. Telewizja Polaska, S.A.*, No. 07 CV 930, 2009 WL 3270794 (S.D.N.Y. Oct. 13, 2009) is unavailing. The case did not involve the production of a third-party for deposition. In fact, it involved two company representatives that were uneducated about matters known by other company employees. *Id.* at *3.

[10]     *See also Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-cv-7281 (JFK), 2008 U.S. Dist. LEXIS 95506, at *25-*26 (S.D.N.Y. Nov. 24, 2008) (Despite an error in its original certification, Central States was appointed lead plaintiff because the error was corrected and "not very significant."); *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 88-89 (E.D.N.C. 2009) (the court found the class representative was adequate where the inconsistencies in his certifications were not intentional); *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23-25 (D. Mass 2008) ("While plaintiff's late correction of its original certification is less than ideal, it does not, as defendants argue, wholly undermine the adequacy of the Fund to represent the class.").

discovered while the designee was preparing for his deposition and was corrected as soon as possible after it was discovered. *See* Radcliffe Reply Decl., Ex. 11 at 104:8-19. "While preparing for the deposition, I ran through document and . . . noticed that one account was being used for Stichting Philips Pensionefond, which was incorrect . . . ." *Id*. at 104:8-13. Any inference by defendants that there was a nefarious motive behind the mistake is simply not true. *Id.* Indeed, "it is clear" that the inconsistencies in the certifications are "not the result of any intentional misrepresentation on the part of [Philips]." *Red Hat*, 261 F.R.D. at 89. An amended certification was sent to defendants on January 10, 2012, as soon as the issue was detected and an amended certification could be created, verified and signed. *See Kuriakose*, 2008 U.S. Dist. LEXIS 95506, at *26 ("Moreover, Central States submitted an amended certificate correcting the defect promptly after it was discovered.").

Defendants' assertion that the mistake was material and may somehow affect the litigation or Philips' ability to represent the class misses the mark. At least one court has rejected a virtually identical assertion to that raised by the defendants, describing defendants' credibility claim as a "considerable exaggeration." *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005). Philips has demonstrated its willingness and ability to represent the class in this action by monitoring the drafting of complaints, defeating defendants' motion to dismiss, producing thousands of pages of documents and coming to New York to sit for deposition. This is the definition of adequacy. *E.g., SLM*, 2012 WL 209095, at *8.

As to the differences in the amended certification, Philips continues to have $19.6 million in losses. Radcliffe Decl., Ex. 4. These losses remain greater than the next largest loss by any lead plaintiff movant. *See* Radcliffe Reply Decl., Ex. 12 at 20:7-8. Despite defendants' best efforts to create a dehabilitating deficiency where none exists, this Court already dismissed the differences in

loss between Philips and another lead plaintiff candidate with smaller losses as irrelevant. *Id.* at 22:3-4 ("At this point whether it is a million or two million more or less is not material.").

Third, the existence of a monitoring agreement does not render Philips inadequate. Notably, defendants do not allege that Philips, a multi-billion dollar fund, failed to make an informed decision about participating in this action or lacks general knowledge regarding the litigation or its claims. To the contrary, Theo Kamps testified as to Philips' decision-making process. Radcliffe Reply Decl., Ex. 11 at 93:13-25. Philips, a sophisticated investor, is governed by a board of trustees and receives advice from an internal lawyer. *Id.* at 13:18-23; 15:17-25; 27:15-28:4. This is the first action in which Philips has served as lead plaintiff, *id.* at 100:1-15, and its board of trustees approved the filing of this action. Further, ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████. Radcliffe Reply Decl., Ex. 20 at 2 and Ex. A attached thereto. Despite defendants' knowledge of the monitoring agreement prior to and during Mr. Kamps' deposition, defendants asked no questions and elicited no testimony suggesting that a conflict exists between Philips and the interests of the class. That is the proper inquiry at class certification. *Baffa*, 222 F.3d at 60.

Defendants ignore that Judge Rakoff's observations stand alone. A vast majority of courts have rejected defendants' contention that institutions like Philips are inadequate because "Class Counsel monitors Lead Plaintiff's investments and advises it of any litigation that may affect them." *Am. Italian Pasta*, 2007 U.S. Dist. LEXIS 21365, at *22. As Chief Judge James Ware of the Northern District of California observed:

685009_1

> The record indicates, however, that prior to this lawsuit, Carpenters had an ongoing relationship with Plaintiff's counsel to monitor its investment portfolio for fraud. In accordance with the monitoring agreement, Plaintiff's counsel advised Carpenters of Cisco's alleged fraud and the option of initiating suit. Thereafter, Carpenters apparently elected to pursue suit as lead plaintiff with Milberg Weiss acting as counsel. ***Nothing about these circumstances renders Carpenters inadequate as a class representative***.

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, C01-20418 JW, 2004 U.S. Dist. LEXIS 27008, at *12-*13 (N.D. Cal. May 27, 2004); *see also UTStarcom*, 2010 U.S. Dist. LEXIS 48122, at *28.

In this District, Judge Barbara S. Jones held there is "no reason why this monitoring system would cause any issues or impediments to the firm's representation of [the lead plaintiff] or the class, generally." Radcliffe Reply Decl., Ex. 9 at 5. And Judge Amy St. Eve of the Northern District of Illinois specifically rejected the same attack defendants raise here: "[a]lthough *Iron Workers* expressed concern over the monitoring agreements used by plaintiffs in that case, the court eventually appointed as lead plaintiff a state pension system that participated in numerous such monitoring agreements." *Motorola*, 259 F.R.D. 163, 173.

Moreover, as discussed above, Judge Rakoff's observations at a lead plaintiff hearing regarding monitoring agreements without the benefit of briefing on the topic are not a barrier to class certification. Indeed, in that case Judge Rakoff appointed a lead plaintiff with a monitoring agreement, *Iron Workers*, 616 F. Supp. 2d at 466, and certified that same lead plaintiff as a class representative over defendants' objections. *Pub. Emps. Ret. Sys. of Miss.*, 277 F.R.D. at 110.

And fourth, the Court should reject defendants' assertion that there is no proof that Philips purchased Pfizer stock as nothing more than a "pretext for a partial trial of the merits." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Mr. Kamps testified as to Philips' Pfizer

- 15 -

stock purchases during Class Period and authenticated the business records underlying those purchases:

> Q. I'd like to mark Philips Exhibit 4 PFE-PPF0000069 through PFE-PPF0000096. (Defendant's Philips Exhibit 4, document bearing Bates numbers . . . PFE-PPF0000069 through '096, marked for identification, as of this date.)[11]
>
> A. Yes.
>
> Q. Do you recognize this document?
>
> A. Yes.
>
> Q. Can you explain to me what it is?
>
> A. It is [a] report I download[ed] from the State Street system about all purchase and sales of Pfizer in the class period. Not in the class period. Yeah, I'm not sure because I download several, but, yes. Yes, it is. Yes.
>
> *       *       *
>
> Q. Does this accurately summarize the Pensionefond's investment in Pfizer Securities during the periods indicated on the top of the report dates?
>
> A. Yes.

Radcliffe Reply Decl., Ex. 11 at 79:22-80:13; 80:25-81:5.

Mr. Kamps further testified:

> Q. Are you able to take any steps to verify that that – that this certification is now the correct and accurate certification?
>
> A. The second one?
>
> Q. Yes, sir.
>
> A. This is correct.

---

[11]     Philips' Exhibit 4 to the Kamps' deposition is attached to the Radcliffe Reply Decl. at Ex. 13. The Exhibit reflects Philips' transactions in Pfizer's stock on the New York Stock Exchange (as reflected by the Committee on Uniform Securities Identification Procedures ("CUSIP") identifier for Pfizer) and the dates as well as the prices of the transactions.

685009_1

*Id.* at 105:7-12.  Defendants' questioning of the reliability of these business records is baseless.

Federal Rule of Evidence 901(a) provides that evidence is authenticated if there is "evidence sufficient to support a finding that the item is what the proponent claims it is." Here, Mr. Kamps authenticated that the data that is what it is claimed to be – Philips' trades in Pfizer's securities during the Class Period.  Radcliffe Reply Decl., Ex. 11 at 79:22-80:13; 80:25-81:5.  He also testified as to his responsibilities at Philips that gave rise to his personal knowledge, including ensuring figures were correct.  *Id.* at 8:10-17; 9:4-15.[12]

Indeed, the fact that Mr. Kamps noticed the error in the records in preparation for his deposition, demonstrates the reliability of the data used to prepare the amended certification – the error was identifiable and corrected.  In fact, the Dutch National Bank relies on State Street's records of transactions verified by Philips (including Pfizer securities) as part of the regulatory oversight of Philips, adding an additional layer of reliability.  Radcliffe Reply Decl., Ex. 11 at 22:23-23:6; 24:3-24:18; 25:9-23.

Contrary to defendants' claims, printouts of a database that are used in the normal course of business are not hearsay.  *See United States v. Huete-Sandoval*, 681 F. Supp. 2d 136, 140 (D.P.R. 2010) (printout of information from a database that was prepared in the normal course of business "fits within either the business record exception or the public record exception to hearsay").  Indeed,

---

[12]     *See also CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (testimony of the custodian of the company's database was sufficient to authenticate the records under Fed. R. Evid. 901(a) and to establish admissibility under the business records exception to the hearsay rule under Fed. R. Evid. 803(6)) (citing *United States v. Bowers*, 920 F.2d 220, 223 (4th Cir. 1990) ("So long as the sponsoring witness has full access and authority to search the [entity's] computer data, conducts the search diligently, and is available for cross-examination about his access, authority, and diligence, the concern for trustworthiness embedded in the rules of evidence is satisfied.")).

685009_1

where the database reflects "downloaded financial information directly from banks" and is core to a company's business, there is every reason to believe the information is accurate and the business records exception to Fed. R. Evid. 803(6) applies. *McClendon v. Challenge Fin. Investors Corp.*, No. 1:08 cv1189, 2009 U.S. Dist. LEXIS 17908, at *13 (N.D. Ohio Mar. 9, 2009). More than one circuit court has rejected the issues defendants try to raise here. *See United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008) (a "statistical run" from a computer database is a "business record"); *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) (a computer database is a business record when the data is entered in the regular course of business); *United States v. Catabran*, 836 F.2d 453 (9th Cir. 1988) (a computer generated business ledger is a business record under Rule 803(6)). Even where the information is entered by outsiders, the business record exception can apply. *CSX Transp. Co. v. Novolog Bucks Cnty.*, No. 04-4018, 2008 U.S. Dist. LEXIS 83512, at *19-*20 (E.D. Pa. Oct. 16, 2008) (also noting that the electronic information was generated contemporaneously even if the waybills reflecting that information were not generated until later).

At the class certification stage, plaintiffs present more than enough evidence – Philip's testimony, its amended certification and records reflecting Philips trades in securities – to conclude that Philips purchased Pfizer securities during the Class Period.[13]

---

[13]     At the class certification stage, "the evidentiary rules are not strictly applied and a court may consider evidence that may not be admissible at trial. *See Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 582 (W.D. Mich. 2001 ); *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 597 (D. Minn. 1999) (same); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (the court's determination of class certification is based on "tentative findings, made in the absence of established safeguards" and class certification is a procedure "of necessity . . . not accompanied by the traditional rules and procedures applicable to civil trials"); *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 279 n.7 (S.D. Ala. 2006) (noting that "a Rule 23 hearing is not a trial on the merits. . . .The only question is whether plaintiffs have made a sufficient showing to warrant invoking the Rule 23 procedural device in litigating their claims. In that context, the Federal Rules

C.      **The Proposed Class Satisfies Rule 23(b)(3)**

Defendants also mistakenly claim that plaintiffs fail to satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3).  Opp. at 24-29.  Specifically, defendants allege that plaintiffs' evidence – particularly the Declaration of Steven P. Feinstein ("Feinstein Decl.") (Dkt. No. 106) – is insufficient to support a finding that Pfizer traded on an efficient market.  *Id.*  But defendants are wrong; their analysis of the Feinstein Decl., bereft of expert or legal support, is factually incorrect.  More importantly, defendants fail to contest plaintiffs' application of the *Cammer* or *Unger* factors, which are commonly used to determine whether a security traded on an efficient market, to Pfizer's securities.

Rule 23(b)(3) authorizes certification where predominance and superiority exist.  Defendants claim that plaintiffs fail to satisfy the predominance requirement and only contest plaintiffs' empirical evidence of market efficiency, one of the five *Cammer* factors.[14]  *See Cammer*, 711 F. Supp. at 1285-86.  In other words, defendants do not contest that Pfizer securities met four of five *Cammer* factors during the Class Period: (i) Pfizer securities traded at a high weekly volume (Mem. at 16); (ii) securities analysts followed and reported on Pfizer securities (*id*. at 16-17); (iii) Pfizer securities had market makers and arbitrageurs (*id*. at 17); and (iv) that Pfizer is eligible to file an SEC registration Form S-3.  *Id.* at 17 n.7.  Nor do defendants contest that the three additional factors in *Unger* are satisfied: (i) Pfizer had a large market capitalization; (ii) a low bid-ask spread for stock

---

of Evidence take on a substantially reduced significance, as compared to a typical evidentiary hearing or trial.").

[14]     Defendants do not discuss, and therefore concede, that plaintiffs meet Rule 23(b)(3)'s superiority requirement.  *Compare* Mem. at 18-19 (establishing that plaintiffs' meet the superiority requirement), *with* Opp. (never mentioning the words "superior" or "superiority," let alone contesting plaintiffs' argument).

- 19 -

sales, and (iii) a high ratio of float to outstanding shares, each of which indicates market efficiency for Pfizer stock. *Id.* In fact, despite the widespread acceptance of the *Cammer* and *Unger* factors to determine whether a market for a security is efficient, defendants do not mention *Cammer* or *Unger* in their Opposition.[15]

The existence of these seven uncontested factors establishes that plaintiffs are entitled to the fraud-on-the-market theory of reliance. *Cf. Cammer*, 711 F. Supp. at 1285-86. (satisfying any one of the *Cammer* factors can establish market efficiency). "As the Second Circuit has explained, the '[fraud on the market] presumption was not justified by scientific certainty, but by consideration of fairness, probability, judicial economy, congressional policy, and common sense.'" *SLM*, 2012 WL 209095, at *5 (quoting *Salomon Analyst*, 544 F.3d at 483).

Defendants claim only that plaintiffs fail to meet the fifth *Cammer* factor – empirical evidence of market efficiency. But defendants neither proffer an expert who challenges Dr. Feinstein's methodology, calculations, or conclusions, nor cite to any support suggesting a basis for disregarding Dr. Feinstein's testimony. Nor do they contradict Dr. Feinstein's testimony that this

---

[15]     For example, a partial list of opinions issued by courts in this vicinage during the last four years that have used the *Cammer* factors to determine whether a market for a security is efficient includes: *Pennsylvania Ave. Funds v. Inyx Inc.*, No. 08 Civ. 6857 PKC, 2011 WL 2732544, at *9 (S.D.N.Y. July 5, 2011); *In re Tronox, Inc. Sec. Litig.*, No. 09 Civ. 6220 (SAS), 2010 WL 2835545, at *12 (S.D.N.Y. June 28, 2010); *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 102 n.83 (S.D.N.Y. 2009); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 94-96 (S.D.N.Y. 2009); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 279-80 (S.D.N.Y. 2008); *In re Initial Public Offering Sec. Litig.*, 544 F. Supp. 2d 277, 296 n.132 (S.D.N.Y. 2008); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898 (SAS) 2006 WL 2161887, at *5-*7 (S.D.N.Y. Aug. 1, 2006), *aff'd* 546 F.3d 196, 200 (2d Cir. 2008) ("the district court properly used the *Cammer* factors as an 'analytical tool'"); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 119 (S.D.N.Y. 2008). Put simply, the use of the *Cammer* factors to determine, for purposes of class certification, whether a market is efficient is "widely-accepted." *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 4 (1st Cir. 2005).

685009_1

factor is "really icing on the cake." Radcliffe Reply Decl., Ex. 14 at 106:7-22. Instead, defendants claim that Dr. Feinstein – a finance professor at Babson College and the President and Senior Expert at Crowninshield Financial Research, who holds M.A., M.Phil., and Ph.D. degrees in economics from Yale University (Feinstein Decl., Ex. 1), and who has provided testimony or analysis in approximately 60 cases (Radcliffe Reply Decl., Ex. 14 at 51:16-17) – provided a declaration lacking "any meaningful analysis." But Dr. Feinstein conducted an event study to correlate the disclosures of unanticipated, material information about Pfizer securities during the Class Period, a methodology widely accepted as providing *prima facie* evidence of market efficiency. *E.g.*, *In re Dynex Capital, Inc. Sec. Litig.*, 05 CIV. 1897 HB, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 97 (D. Conn. 2010). Defendants wishful thinking does not preclude class certification.

First, defendants attack Dr. Feinstein's event study on the ground that he only considered nine days during the Class Period. That attack is factually incorrect. Dr. Feinstein testified under oath that defendants insistence that he only analyzed 9 of the 759 trading days in the Class Period was wrong. "I looked at *every single day in the class period* to determine which dates of the roughly 750 days were the appropriate eligible candidates for inclusion in an event study to test market efficiency." Radcliffe Reply Decl., Ex. 14 at 57:9-13. Dr. Feinstein then narrowed the event study to a selection of nine dates that were the best dates for testing market efficiency of Pfizer's common stock. *Id.* at 57:7-22.[16]

---

[16]     When asked by defense counsel whether his selection of those dates was "a reflection of [his] subjective professional judgment," Dr. Feinstein responded: "Absolutely not. In fact, the reason why these are the best nine dates is it's a purely objective screen for identifying them that involves just very little, if any, subjective analysis." *Id.* at 58:11-16. Dr. Feinstein reiterated the same point later: "[Y]ou keep trying to say that I didn't look at the other days. And *I want to make very clear for the*

Notably, then-District (now Circuit) Judge David F. Hamilton addressed and disregarded objections identical to those asserted here by defendants to Dr. Feinstein's market efficiency analysis:

> Dr. Feinstein has presented a comprehensive event study whose mathematical outputs defendants do not contest. He has the specialized education and experience to provide admissible expert opinions. Defendants have offered no expert and no evidence to show that [Dr. Feinstein's] calculations or conclusions are incorrect. They go so far as to argue, ***without any support***, that Dr. Feinstein's findings of nine statistically significant movements in eleven days do not support the conclusion that Conseco was traded in an efficient market.

> Dr. Feinstein's study adequately shows that Conseco common stock was traded in an efficient market during the period in question. Since Conseco does not question the other *Cammer* factors as presented by Dr. Feinstein, plaintiffs have made an adequate showing to proceed under a fraud on the market approach to reliance.

*Schleicher v. Wendt*, No. 1:02-CV-1332-DFH-TAB, 2009 WL 761157, at *8 (S.D. Ind. Mar. 20, 2009), *aff'd*, 618 F.3d 679 (2010) (emphasis in original).[17] The same conclusion is compelled here.

Second, defendants attack Dr. Feinstein's qualifications, yet cannot cite to a single decision taking issue with Dr. Feinstein's efficiency analysis. Opp. at 26. Defendants are correct that "Dr. Feinstein is known to the Courts." *Id.* But defendants mention only one of approximately 60 cases

---

***record that I did look at the other days***, that's what an event study does. It compares the days on which there was large impactful news with typical days to see if the news days differ from the non-news day." *Id.* at 148:17-23. Dr. Feinstein's conclusion was unequivocal: based on the event study Pfizer's securities "absolutely definitively do differ which establishes market efficiency." *Id.* at 148:24-25.

[17]    Defendants erroneously claim that because Dr. Feinstein's declaration is not an expert report, it should not be considered by the Court. Dr. Feinstein offered an expert opinion in a declaration under the penalty of perjury, and provided all of the data supporting his event study, his determination of the number of market makers, his methodology for assessing the number of analysts covering Pfizer and more. He also sat for deposition with less than a week's notice. He is a qualified expert and his declaration is properly before the Court setting forth his expert opinion on market efficiency.

- 22 -

that Dr. Feinstein has participated in as an expert.  *Id.*; Radcliffe Reply Decl., Ex. 14 at 51:16-21.

They fail to mention that Dr. Feinstein has provided evidence of market efficiency that has been

accepted by federal courts in securities cases.  *E.g.*, *Red Hat*, 261 F.R.D. 83; *Schleicher*, 2009 WL

761157; *In re Tyco Int'l, Ltd.*, 236 F.R.D. 62 (D.N.H. 2006).  They also fail to mention that Dr.

Feinstein's analysis has been favorably cited by numerous federal courts in other contexts.  *E.g.*,

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 4737173

(N.D. Ga. Mar. 14, 2008) (denying motion to exclude Dr. Feinstein's report concerning loss

causation and damages); *In re Apollo Grp., Inc. Sec. Litig.*, 527 F. Supp. 2d 957 (D. Ariz. 2007)

(denying defendants' motion in limine to exclude the testimony of Dr. Feinstein under *Daubert*); *In*

*re Vecco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov.

7, 2007) (approving as fair and reasonable Dr. Feinstein's allocation of damages); *In re Apollo*

*Group*, *Inc. Sec. Litig.*, 509 F. Supp. 2d 837 (D. Ariz. 2007) (finding that Dr. Feinstein's expert

analysis regarding market efficiency created an issue of material fact, thereby precluding summary

judgment).

The single case defendants highlight, *Finkelstein v. Liberty Digital, Inc.*, No. Civ. A 19598,

2005 WL 1074364 (Del. Ch. Apr. 25, 2005), is inapplicable to an assessment of his expert market

efficiency opinion here.  Defendants fail to inform the Court that in *Liberty Digital*, Dr. Feinstein

analyzed the fair value of shares of a company involved in a merger in the context of an appraisal

hearing, ***not whether a security traded on an efficient market***.  Radcliffe Reply Decl., Ex. 14 at

51:18-21.  Nor do defendants inform the Court that when asked about the case during his deposition,

Dr. Feinstein testified that his analysis concerned a company that "[was] not [a] standard going

concern[] with revenue, with a track record of revenue and earnings the way Pfizer is, but rather [a

high tech start-up]" that required him to rely predominantly, if not wholly, on analyst reports.  *Id.* at

- 23 -

52:8-23.  Nor do defendants inform the Court that Dr. Feinstein testified that "[t]he principles of valuation under Delaware chancery law" at issue in that analysis "are different from generally accepted valuation principles accepted by practitioners and academics." *Id.* at 53:10-13.  Nor do defendants inform the Court that Dr. Feinstein testified that he believes his analysis in that case was correct and that the court criticized in hindsight not only his analysis but that of the analysts following the company. *Id.* at 53:3-7.  Simply put, Dr. Feinstein's analysis in *Liberty Digital* does not render questionable his analysis here.

Defendants also attempt to impugn Dr. Feinstein's analysis on the ground that he did not spend sufficient time on it.  Opp. at 28.  Dr. Feinstein testified that he "devoted the appropriate amount of time for this report" and that the time he spent "was sufficient time to do the analysis." Radcliffe Reply Decl., Ex. 14 at 150:25-151:5.  There is nothing to suggest that Dr. Feinstein incorrectly analyzed or presented factors evidencing an indicia of market efficiency that supported his conclusion of market efficiency.[18]  In fact, Dr. Feinstein testified that he had time to conduct two other tests that provided results supporting market efficiency – the F-Test and Ansari-Bradley Test – but did not find it necessary to include those results in his report.  Radcliffe Reply Decl., Ex. 14 at 89:10-90:19.  Tellingly, defendants have the results of those tests but do not challenge Dr. Feinstein's results.[19]

---

[18]    *See* Declaration of Steven P. Feinstein, Ph.D., CFA in Support of Plaintiffs' Motion for Class Certification, filed on January 13, 2012 at 2-7 (discussing evidence of market efficiency: (1) trading volume; (2) Coverage by Securities Analysts; (3) Number of Market Makers; (4) Eligibility for S-3 Registration; (5) Pfizer's Market Capitalization; (6) Pfizer's stock float; (7) Pfizer's Typical Bid-Ask Spread; and (8) Empirical Evidence that the Security Price Reacts to New Material Information).

[19]    Defendants also criticize Dr. Feinstein for not knowing whether he worked 13 or 15 hours. This is easily explained.  The document indicates Dr. Feinstein worked 15 hours but only billed for 13 hours.

- 24 -

Third, defendants allege that Dr. Feinstein's "[d]eclaration is insufficient to show . . . that Pfizer securities traded in an efficient market on each day over a more than three-year Class Period that is unlike any other three year period in recent history." Opp. at 28; *see also id.* at 4. This allegation is unsupported by expert declaration or case law. It does not make sense to preclude class certification in this action against Pfizer because there was public information regarding the financial collapse of other companies. Pfizer's stock price would have reflected any publicly available information that impacted Pfizer because the market for Pfizer's stock was efficient based not only on empirical evidence (as demonstrated by Dr. Feinstein's event study) but also by seven other factors that courts rely on in assessing market efficiency. Under defendants' theory, no class should ever be certified in a securities action as a class action because of bankruptcies and bailouts of other companies.[20]

Federal courts have certified class periods overlapping the financial crisis. *E.g.*, *SLM*, 2012 WL 209095 (certifying a class with a class period from January 18, 2007 to January 23, 2008); *Pub. Emps. Ret. Sys. of Miss.*, 277 F.R.D. 97 (certifying a class with a class period from February 2006 to September 2007); *Pennsylvania Ave. Funds*, 2011 WL 2732544 (certifying a class with a class period from April 1, 2005 to July 2, 2007); *In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366 (S.D.N.Y. 2010) (certifying a class with a class period from February 16, 2006 to September 28, 2006); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298 (S.D.N.Y. 2010) (certifying a

---

[20] While defendants cite the observations of the Senate Permanent Subcommittee on Investigations (Opp. at 4), the central focus of that report is high risk lending mortgage practices, bank industry abuses and the lack of oversight. It has no bearing on the market efficiency for Pfizer's stock.

- 25 -

class with a class period from April 30, 2008 to September 26, 2008); *UTStarcom*, 2010 U.S. Dist. LEXIS, at *41 (certifying a class period from February 21, 2003 to July 23, 2007).

Federal courts have also certified classes in securities actions with long class periods, similar to or longer than to the duration of the Class Period here. *E.g.*, *In re American Int'l Grp., Inc. Sec. Litig.*, 265 F.R.D. 157, 189 (S.D.N.Y. 2011) (certifying a class period from October 28, 1999 to April 1, 2005); *UTStarcom*, 2010 U.S. Dist. LEXIS, at *41 (certifying a class period from February 21, 2003 to July 23, 2007); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 285 (N.D. Ala. 2009) (certifying a class period from September 20, 2000 to March 18, 2003); *Koch v. Dwyer*, No. 98 Civ. 5519 (RPP), 2001 WL 289972, at *2 (S.D.N.Y. Mar. 23, 2001) (certifying a class period from May 1, 1991 to December 15, 1994); *In re Lilco Sec. Litig.*, 111 F.R.D. 663, 666 (E.D.N.Y. 1986) (certifying a class period from 1975 to 1983). Simply put, "class certification should not be denied merely because the class period is lengthy." *Lilco*, 111 F.R.D. at 669 (citing cases in this vicinage with six- and four-year class periods).

In sum, the proposed class meets the predominance requirement.

**D.     Defendants Are Not Entitled to a Redo of Their Motion to Dismiss**

Defendants also claim that the "evolution" of their Class Period disclosures undercut Plaintiffs' claim that they were false and misleading. Opp. at 20-24. This claim is a second bite at the motion-to-dismiss apple. This very claim was at the heart of defendants' briefing and was repeated vociferously at oral argument, where the Court held that plaintiffs had alleged sufficiently that the disclosures were insufficient. Radcliffe Reply Decl., Ex. 15 at 24:14-25:13.

"[C]lass certification 'is emphatically not an opportunity for a second round of review, at a higher standard no less, of the substantive merits of plaintiffs' underlying claims." *In re Bank of America Corp. Sec., Derivative, and ERISA Litig.*, No. 09 MD 2058, Memorandum and Order at 9

- 26 -

(S.D.N.Y. Feb. 6, 2012) (quoting *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 476 (S.D.N.Y. 2005) (Radcliffe Reply Decl., Ex. 16). "'The only question' at class certification 'is whether [plaintiffs] may pursue those claims on behalf of a class of similarly situated persons, or whether they must do so as individuals.'" *Id.* In other words, "[a] district judge should not asses any aspect of the merits unrelated to a Rule 23 requirement." *Initial Pub. Offering*, 471 F.3d at 41.

In any event, the limited evidence plaintiffs have reviewed to date already demonstrates material issues of disputed fact regarding the sufficiency of Pfizer's disclosures throughout the Class Period. *E.g.*, Radcliffe Reply Decl., Ex. 17 ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████; *id.*, Ex. 18 ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████; *id.*, Ex. 19 ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████. None of defendants' purported disclosures had the requisite "intensity and credibility" so as to not mislead shareholders regarding the material risks Pfizer faced, detailed in these exhibits, as a result of Pfizer's systemic off-label marketing. *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 167 (2d. Cir. 2000).

Regardless, under the fraud-on-the-market doctrine, the length of the Class Period and whether defendants' purported "disclosures" were false and misleading are issues common to the class. *E.g.*, *Alstom*, 253 F.R.D. at 279.[21] The Court has also already ruled on defendants' objections at the pleading stage as to who is properly a defendant in this action. Each of the named defendants made Class Period statements alleged by plaintiffs to be false and misleading.[22] Again, whether each of those statements was, in fact, false and misleading is an exemplar of a common question. Thus, these issues are not properly considered at this juncture.

## III.    THE PROPOSED CLASS DEFINITION

Defendants correctly state that, under *Morrison v. Nat'l Australia Bank Ltd.*, _U.S._, 130 S. Ct. 2869 (2010), actions brought pursuant to §10(b) and Rule 10b-5 do not reach transactions conducted outside the Untied States; however, defendants are incorrect in applying that rule here in an attempt to limit the proposed class. *Morrison* held that the Exchange Act reaches "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Id.* at 2884. Thus, the class not only includes "purchasers on an exchange based in the United States" (Opp. at

---

[21]     *See also Ct. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011) ("If the misrepresentations turn out to be material, then the fraud-on-the-market presumption makes the reliance issue common to the class, and class treatment is appropriate.    But if the misrepresentations turn out to be immaterial, then *every* plaintiff's claim fails on the merits (materiality being a standalone merits element), and there would be no need for a trial on each plaintiff's individual reliance. ***Either way, the plaintiffs' claims stand or fall together – the critical question in the Rule 23 inquiry***.").

[22]     Here, *Janus Capital Grp, Inc. v. First Derivative Traders*, _U.S._, 131 S. Ct. 2296 (2011), is not applicable as each of the individual Pfizer officer defendants spoke during the Class Period. *See, e.g.*, ¶¶ 26, 65, 77 (defendant Kindler); ¶¶27, 59, 65, 77 (defendant McKinnell); ¶¶28, 65, 77 (defendant D'Amelio); ¶29 (defendant Shedlarz); ¶30 (defendant Levin); ¶31 (defendant Read); ¶32 (defendant Kelly); ¶33 (defendant Feczko); ¶34 (defendant Katen); ¶¶35, 67 (defendant Waxman) (all "¶" or "¶¶" references are to the First Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws).

18), but also includes purchasers in the United States of Pfizer securities, regardless of where those securities are listed. The only purchasers who are excluded from the class by *Morrison* are purchasers who bought, in a foreign country, Pfizer securities that were listed on a foreign exchange. *Morrison*, 130 S.Ct. at 2884.

Similarly, defendants complain that in-and-out purchasers could be included as class members under plaintiffs' proposed definition. The claims brought necessarily require class members to be damaged. There is one alleged disclosure date in this action, January 26, 2009. ¶¶95-98. But, to alleviate defendants' concern, plaintiffs have modified the proposed class definition to include the language "were damaged thereby" as reflected below.

As to defendants' concern that there is only evidence of market efficiency as to common stock, this concern was addressed by Dr. Feinstein's testimony that "it's highly, highly, highly more likely than not" that all Pfizer securities traded on an efficient market based on the fact that Pfizer overwhelmingly satisfied that *Cammer* factors. Radcliffe Reply Decl., Ex. 14 at 38:24-39:4; 40:6-19; 131:24-133:8.

To alleviate defendants' concerns, however, plaintiffs propose that the class definition be modified as follows:

> All persons who purchased domestically or purchased on domestic exchanges Pfizer common stock or options between 1/19/06 and 1/23/09, inclusive, and were damaged thereby, excluding defendants and their families, directors and officers of Pfizer, and their families and affiliates. Plaintiffs also have simultaneously submitted a proposed order reflecting such language.

## IV.    CONCLUSION

For the reasons set forth above, a class should be certified in this action, Philips and Jones

should be appointed class representatives, and Robbins Geller should be appointed class counsel.

DATED: February 15, 2012                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            WILLOW E. RADCLIFFE
                                            DANIEL J. PFEFFERBAUM
                                            MATTHEW S. MELAMED


                                                    s/Willow E. Radcliffe
                                            WILLOW E. RADCLIFFE

                                            Post Montgomery Center
                                            One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
                                            Telephone:  415/288-4545
                                            415/288-4534 (fax)
                                            willowr@rgrdlaw.com
                                            dpfefferbaum@rgrdlaw.com
                                            mmelamed@rgrdlaw.com

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            srudman@rgrdlaw.com

685009_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
HENRY ROSEN
TRIG R. SMITH
RYAN A. LLORENS
IVY T. NGO
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
henryr@rgrdlaw.com
trigs@rgrdlaw.com
ryanl@rgrdlaw.com

Lead Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 15, 2012.

s/Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:willowr@rgrdlaw.com

685009_1

# Mailing Information for a Case 1:10-cv-03864-AKH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Charles Alan Gilman**
  cgilman@cahill.com
- **James M. Hughes**
  jhughes@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com
- **David George Januszewski**
  djanuszewski@cahill.com
- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com,hlindley@kendalll awgroup.com
- **Amy Desmond Lamberti**
  alamberti@cahill.com
- **Leigh R. Lasky**
  lasky@laskyrifkind.com
- **Hamilton Philip Lindley**
  hlindley@goldfarbbranham.com
- **Ryan A. Llorens**
  ryanl@rgrdlaw.com
- **Matthew Melamed**
  mmelamed@rgrdlaw.com
- **Donald Alan Migliori**
  dmigliori@motleyrice.com
- **Danielle S. Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **William H. Narwold**
  bnarwold@motleyrice.com,imoll@motleyrice.com,vlepine@motleyrice.com,ajanelle@m otleyrice.com
- **Willow E. Radcliffe**
  willowr@rgrdlaw.com
- **Joseph F. Rice**
  jrice@motleyrice.com
- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com
- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com
- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,danim@rgrdl aw.com
- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,nhorstman@rgrdlaw.com
- **Mitchell M.Z. Twersky**
  mtwersky@aftlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine J. Kowalewski
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

David C. Walton
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301
```