UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————— x
MARY K. JONES, Individually and on Behalf :    Civil Action No. 1:10-cv-03864-AKH
of All Others Similarly Situated,           :
                                              :    <u>CLASS ACTION</u>
                      Plaintiff : 
                                                :    PLAINTIFFS' MEMORANDUM OF LAW
     vs.                                            :    IN SUPPORT OF MOTION FOR FINAL
                                                :    APPROVAL OF CLASS ACTION
PFIZER INC., et al.,                         :    SETTLEMENT AND PLAN OF
                                                :    ALLOCATION
                     Defendants. : 
                                                :
———————————————— x

1019378_1

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .......................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND.........................................2

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ..........3

    A.    Settlements Are Favored and Encouraged ...........................................3

    B.    The Settlement Is Presumptively Fair ..................................................4

    C.    The Settlement Meets the Second Circuit Requirements for Approval.................5

        1.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement ................................................................5

        2.    The Reaction of the Class to the Settlement .................................8

        3.    The Stage of the Proceedings and Discovery Completed............................8

        4.    The Risk of Establishing Liability ............................................10

        5.    The Risk of Establishing Damages ...........................................13

        6.    The Risks of Maintaining the Class Action Through Trial.......................15

        7.    The Ability of the Defendants to Withstand a Greater Judgment..............15

        8.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................16

IV.    THE NOTICE OF PROPOSED SETTLEMENT SATISFIES DUE PROCESS REQUIREMENTS AND IS REASONABLE ...................................................17

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................19

VI.    CONCLUSION..................................................................................20

1019378_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)................................................................19

*by Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)...................................................................4

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................4, 9

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................ *passim*

*Dura Pharms, Inc. v. Broudo*,
    544 U.S. 336 (2005)......................................................................11, 12

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................17

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
    343 F.3d 189 (2d Cir. 2003)...............................................................12

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)..................16

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................19

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................17

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................10

*In re Giant Interactive Grp., Inc.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................10

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................5, 8

**Page**

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417
(S.D.N.Y. Dec. 19, 2014) ................................................................................13

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................6, 11

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) .............................................................3, 4, 8, 19

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 46 (S.D.N.Y. 1993) ......................................................................10

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...................... *passim*

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 Civ. 5173 (RPP), 2008 WL 1956267
(S.D.N.Y. May 1, 2008) .................................................................................16

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 0165 (CM), 2007 WL 4115809
(S.D.N.Y. Nov. 7, 2007) .............................................................................10, 15

*In re Wachovia Equity Sec. Litig.*,
No. 08 Civ. 6171(RJS), 2012 WL 2774969
(S.D.N.Y. June 12, 2012) ...............................................................................16

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)............................................................................16

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35
(2d Cir. 1986) ...............................................................................................15

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ......................................................................11

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ...................................................................5

**Page**

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)..................................................................................4, 16, 17

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................................6

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814 (MP), 2004 WL 1087261
  (S.D.N.Y. May 14, 2004)..................................................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)......................................................................................3, 4, 18

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)..................................................................................................3

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) ........................................................................................................................2

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................................................1
  Rule 23(c)(2)...............................................................................................................17, 18
  Rule 23(e)...........................................................................................................................18

## SECONDARY AUTHORITIES

4 Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions* §11.45 (4th ed. 2002)...................................................................8

1019378_1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Stichting Philips Pensioenfonds and additional Class Representative Mary K. Jones ("Plaintiffs") respectfully move this Court for an order approving both the proposed settlement (the "Settlement") of this class action (the "Litigation") and the proposed Plan of Allocation of settlement proceeds.[1]

## I.      PRELIMINARY STATEMENT

On March 26, 2015, Pfizer Inc. ("Pfizer" or the "Company") paid $400,000,000 in cash into an interest-bearing escrow account maintained on behalf of the Class in accordance with the terms of the Stipulation.  This Settlement represents a tremendous recovery in a securities case in which no firm filed an action until almost 16 months after the end of the Class Period when Lead Counsel filed an action on behalf of Class Representative Mary K. Jones.  No doubt, the unusually high risks of not being able to establish loss causation and damages in this case, among others, discouraged other investors and their counsel from filing an action.  The reality is that if Lead Counsel had not stepped forward to pursue this action, charting a course of establishing liability and damages and thereafter devoting the necessary resources to litigate this case up to trial, Defendants' actions may very well have gone unchallenged and the Class would be receiving nothing.  However, after four and a half years of hard-fought litigation, the case settled a week before trial.  At that point, Plaintiffs knew the case inside-out, including all of its strengths and weaknesses.  Defendants would have contested every key element of the asserted claim at trial: falsity, materiality, scienter, loss causation and damages.  The significant risks facing Plaintiffs at trial and on appeal (if Plaintiffs won), when measured against the certainty and immediacy of the $400,000,000 settlement justify this Court's approval of the Settlement.

---

[1]   Unless otherwise noted, all capitalized terms used herein are defined in the Stipulation of Settlement ("Stipulation"), dated as of February 8, 2015.  Dkt. No. 468.

- 1 -

## II.      PROCEDURAL AND FACTUAL BACKGROUND

On March 16, 2015, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice (Dkt. No. 479) ("Preliminary Approval Order"), which directed that a hearing be held on July 30, 2015 to determine the fairness, reasonableness and adequacy of the Settlement. In accordance with the Preliminary Approval Order, on April 1, 2015, the Claims Administrator began mailing the Notice of Proposed Settlement of Class Action (the "Notice") to potential Class Members.  As of April 7, 2015, the Notice had been mailed to over 2.7 million potential Class Members.  *See* Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting ("Sylvester Decl."), ¶3.

Also, the Notice, the Proof of Claim and Release form, the Stipulation and its Exhibits, the Preliminary Approval Order, and the operative complaint were posted on the Claims Administrator's website, and pursuant to the Preliminary Approval Order, a Summary Notice was published in *Investor's Business Daily* and transmitted over the *Business Wire* on April 14, 2015.  *See* Sylvester Decl., ¶¶12-13.  Lead Counsel also created a website (www.pfizersecuritiessettlement.com) for use by Class Members.  In addition to the materials available on the Claims Administrator's website, Lead Counsel's Pfizer website also includes a description of the claims and gives Class Members access to pleadings, orders and other documents filed in this case.

The Court is respectfully referred to the accompanying Declaration of Henry Rosen in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for Award of Attorneys' Fees and Expenses and Reimbursement of the Plaintiffs' Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) ("Lead Counsel Decl.") for a full discussion of the factual background and procedural history of the Litigation, the extensive litigation efforts of

- 2 -

Lead Counsel, a discussion of the negotiations leading to this Settlement, and the reasons why the Settlement and Plan of Allocation are fair and reasonable and should be approved.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    Settlements Are Favored and Encouraged

The court may approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).[2]  The evaluation of a proposed settlement requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Id.*  While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Id.* at 117 (noting "'strong judicial policy in favor of settlements, particularly in the class action context.'")  Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.

---

[2]    Citations are omitted throughout, unless otherwise indicated.

1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d

Cir. 2000).  As stated by the Second Circuit in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or
> other class action is a delicate one. . . . [W]e recognized that since "'the very purpose
> of a compromise is to avoid the trial of sharply disputed issues and to dispense with
> wasteful litigation', the court must not turn the settlement hearing 'into a trial or a
> rehearsal of the trial'."

*Id.* at 691-92.

### B.    The Settlement Is Presumptively Fair

A "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery.'"  *Wal-Mart Stores*, 396 F.3d at 116.  In addition, great weight is accorded to the

recommendations of counsel, who are most closely acquainted with the facts of the underlying

litigation.  *Luxottica Grp.*, 233 F.R.D. at 315; *see also In re PaineWebber Ltd. P'ships Litig.*, 171

F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("So long as the integrity of the

arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to

the proposed settlement.").  A court may find the negotiating process is fair where, as here, "the

settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the

experience and ability, and have engaged in the discovery, necessary to effective representation of

the class's interests.'"  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

This initial presumption of fairness and adequacy applies in this case because the Settlement

was reached by experienced, fully-informed counsel after arm's-length negotiations with the

assistance of a highly experienced mediator, the Honorable Layn R. Phillips (Ret.).  Lead Counsel

Decl., ¶¶132-138.  In addition, Lead Counsel was unquestionably fully informed of the merits and

weaknesses of the case at the time the Settlement was reached.  Lead Counsel was fully prepared to

- 4 -

try this case.  Plaintiffs' counsel had reviewed in excess of 23 million pages of documents, taken or

defended over 60 depositions, retained more than a dozen experts and consultants, briefed eight

motions for summary judgment and briefed over 20 motions *in limine*.  *See* Lead Counsel Decl.,

¶¶50, 62, 87, 102-108.  Moreover, this Court had already conducted a pre-trial conference where the

parties advanced their most important legal and factual positions.  Thus, this Settlement is entitled to

the presumption of procedural fairness dictated by Second Circuit law.

### C.    The Settlement Meets the Second Circuit Requirements for Approval

There are nine factors the Second Circuit has identified to determine whether to approve a

proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light
> of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  All nine factors need not be satisfied.  Rather, the Court should look at

the totality of these factors in light of the specific circumstances involved.  *In re Global Crossing*

*Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below and in the Lead Counsel Declaration, the Settlement meets each of

the relevant criteria set forth above.  As such, the Settlement warrants this Court's final approval.

### 1.    The Complexity, Expense, and Likely Duration of the
### Litigation Justifies the Settlement

Courts have long recognized that the expense and possible duration of the litigation should be

considered in evaluating the reasonableness of a settlement.  *Milstein v. Huck*, 600 F. Supp. 254, 267

(E.D.N.Y. 1984).  Securities class actions are notoriously complex, difficult to prosecute and

expensive.  More importantly, there is no guarantee that the outcome will favor class members.  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (holding that securities class action litigation is "'notably difficult and notoriously uncertain'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (noting that continued litigation in a securities case would be complex, lengthy and expensive, with no guarantee of recovery by the class members).  This case was complex, expensive and, even if Plaintiffs prevailed at trial, likely to go on for many years.

There can be no question that this was a complex case.  Initially, the parties briefed motions to dismiss the complaint that raised a host of complicated legal issues.  Lead Counsel Decl., ¶¶22-31.  Over the next four years, the parties were forced to approach this Court with respect to over a dozen discovery disputes.  *Id.*, ¶¶40, 56.  Many of these disputes arose out of disagreements regarding Defendants' reliance on counsel and reliance on auditors defenses, which forced the parties to address complicated legal and factual issues.  There were eight separate motions for summary judgment, over 20 motions *in limine* and the parties anticipated calling well over 40 witnesses and introducing over 1,000 exhibits at trial.  More importantly, the case arose out of a complex set of facts, rules and regulations.  At trial, Plaintiffs would have needed to explain to the jurors, among other things, the new drug approval process at the U.S. Food and Drug Administration, concepts such as approved "indications" for the four drugs at issue, off-label marketing, Generally Accepted Accounting Principles ("GAAP"), accounting for contingent liabilities, loss causation, the disaggregation of company-specific non-fraud related information and damages.  It is hard to imagine a more complex case.

Similarly, there is no question that this case was expensive to litigate and would have resulted in an even higher expenditure of money, time and judicial resources had it not settled.  Plaintiffs' Counsel had invested approximately $60,000,000 in attorney and paraprofessional time

and in excess of $7,000,000 in in-house charges and expenses at the time of the Settlement. Plaintiffs would have spent millions more on expert testimony, consultants and other costs at trial. Assuming Plaintiffs won at trial, the Class would have incurred additional millions in fees and costs for what would have been a hotly-contested claims process, including post-trial disputes over the reliance of absent Class Members. Defendants would have incurred similar charges. Moreover, one of the critical benefits of the Settlement is that the Court's time is no longer impacted by the case. In all likelihood, this case would have taken at least a month to try. Thereafter, there would have been extensive post-trial motions. Assuming Plaintiffs won, the Court would have had to oversee the claims process, including any objections that Defendants had to particular claims. Finally, after all of those judicial resources had been committed by this Court, Defendants would have appealed any judgment. And, at that point, the Second Circuit's resources and time would have been impacted by the proceedings on appeal.

Finally, the likely duration of the case also weighs in favor of approving the Settlement. This case was litigated for four and a half years and, although it settled a week before trial, there was no end in sight, especially if Plaintiffs won. There would have been post-trial motions, a lengthy contested claims process and ultimately an appeal. It would have been years before finality was obtained. For example, Lead Counsel tried the *Household International* securities class action case, obtaining a verdict for the class in May 2009. The combination of post-trial motions, claims administration and defendants' efforts to challenge individual claims delayed the entry of judgment for another four years. After four years, a partial judgment was entered in favor of approximately 11,000 class members in October 2013. And thousands of other class members' claims are still being litigated in the trial court. The *Household International* case is currently on appeal – six years after a verdict in favor of the class was returned. If the parties had not reached a settlement the Class

- 7 -

might have been waiting for many years for a recovery – even if Plaintiffs won at every stage of the proceedings.

The $400,000,000 Settlement, at this juncture results in an immediate and substantial recovery, without the considerable risk, expense and delay of a trial and subsequent appeal. Therefore, Plaintiffs submit that this factor weighs heavily in favor of the proposed Settlement.

### 2. The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126; *see also Luxottica Grp.*, 233 F.R.D. at 311-12. Notices describing the nature of the Litigation and the terms of the Settlement, were distributed to over 2,700,000 potential Class Members. Sylvester Decl., ¶3. As of the date this motion was filed, no objections to the Settlement have been received and no institutional investors have opted out of the proposed Settlement. However, the Court-ordered deadline set for objections is May 21, 2015. Accordingly, if Lead Counsel receive any objections to the Settlement or Plan of Allocation, they will be addressed in Plaintiffs' reply brief scheduled to be filed on June 5, 2015.

### 3. The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002). Courts have approved settlements reached even before the parties engage in formal discovery. *Global Crossing*, 225 F.R.D. at 458 ("[f]ormal discovery is not a prerequisite; the

- 8 -

question is whether the parties had adequate information about their claims"); *D'Amato*, 236 F.3d at 87 (affirming district court's approval of settlement and holding that "the 'stage of the proceedings' factor also weighed in favor of settlement" despite the fact that "no formal discovery had taken place" because there had been an extensive exchange of documents and other information).  In stark contrast, in this case discovery was complete and the parties were prepared to pick a jury.

Here, there is no question that Lead Counsel had the ability to reliably assess the value of this case.  This was not a case that settled early.  It settled after four and a half years of litigation and within one week of the trial date.  At the time the Settlement was reached, Lead Counsel had: (i) successfully opposed Defendants' two comprehensive motions to dismiss; (ii) obtained class certification over Defendants' aggressive opposition; (iii) conducted extensive discovery, including the review and analysis of over 23.3 million pages of documents produced by Defendants and third parties; (iv) conducted or oversaw detailed investigative interviews of many witnesses, including former Pfizer employees; (v) obtained key documents through requests made pursuant to the Freedom of Information Act ("FOIA"); (vi) took or defended the depositions of 44 fact witnesses; (vii) responded to discovery propounded by Defendants, including document requests and deposition notices; (viii) filed numerous complex discovery-related motions, most of which were decided by this Court after being fully briefed and argued; (ix) completed expert discovery involving 18 testifying experts in the areas of off-label promotion strategies and practices, sales driven by off-label promotion, compliance with federal healthcare laws, bio-statistics, financial reporting, disclosures, disclosure processes, accounting, internal controls over financial reporting, loss causation and damages, which included working with the Plaintiffs' ten experts as they drafted and finalized their reports and taking or defending the depositions of the parties' 16 experts; (x) fully briefed 23 *Daubert* and motions *in limine* in anticipation of trial, some of which were decided by this

Court after oral argument, including the denial of Defendants' *Daubert* motion to exclude Plaintiffs'

loss causation and damages expert; (xi) fully briefed seven motions for summary judgment filed by

Defendants and one filed by Plaintiffs; and (xii) comprehensively prepared for trial, including

selecting the exhibits to be used and the witnesses to be called at trial, designating deposition

testimony, building trial witness files, creating trial demonstratives, drafting *voir dire* questions, jury

instructions and the joint pretrial order.  Lead Counsel Decl., ¶3.

Thus, this Litigation had advanced to a stage where the parties certainly "'have a clear view

of the strengths and weaknesses of their cases.'"  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-

CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Giant*

*Interactive Grp., Inc.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) (this factor supported settlement where

the action had proceeded through substantial document production, five depositions, "a round of

mediation submissions and sessions, and expert consultations on damages and causation," and, thus,

"the parties were able to make an intelligent appraisal of the value of the case").  Therefore, the

Court should find that this factor further supports approval of the Settlement.

### 4.     The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class,

including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See*

*Grinnell*, 495 F.2d at 463; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007

WL 4115809, at *8 (S.D.N.Y. Nov. 7, 2007); *In re Austrian & German Bank Holocaust Litig.*, 80 F.

Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.

2001).  While Plaintiffs believe they would have prevailed at trial, they recognize that ultimate

success is not assured, and further believe that this substantial Settlement, when viewed in light of

the risks of proving liability, is fair, adequate, and reasonable.  *See In re Michael Milken & Assocs.*

*Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *IMAX*, 283 F.R.D. at 189 (noting securities class actions are "'notably difficult and notoriously uncertain'" to litigate).

Despite the strengths of Plaintiffs' case, they faced numerous hurdles to establishing liability. This Litigation involved claims for relief under the federal securities laws and, to prevail, Plaintiffs had to demonstrate: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

Defendants have maintained throughout the Litigation that the evidence would demonstrate that they did not make any misleading statements or omissions and that they did not act with the requisite state of mind.  At trial, Defendants would have argued that the accounting and disclosure rules applicable to the contingent losses associated with the U.S. Department of Justice's ("DOJ") investigation into Pfizer's off-label promotion of Bextra, Geodon, Zyvox and Lyrica ("DOJ's Off-Label Promotion Investigation") during the Class Period were subject to varying interpretations. Defendants contended that their disclosure of, and accounting for, the DOJ's Off-Label Promotion Investigation was not materially misleading, did not violate GAAP and, in any case, was not made with scienter.  In addition, they argued that their statements regarding off-label promotion were not material or misleading.  Further, Defendants claimed that they relied in "good faith" on the accounting and disclosure processes at Pfizer and, specifically, on in-house and outside disclosure counsel and auditors.  Although Plaintiffs challenged Defendants' reliance defenses with a series of motions, the Court's pretrial rulings were subject to varying interpretations.  Depending on developments at trial, it was conceivable that the Individual Defendants would have been allowed to

testify that they relied on counsel, potentially negating their scienter.  Plaintiffs believe that ultimately this Court would not have permitted Defendants to use the attorney-client privilege as a sword and a shield – a strategy that Defendants pursued throughout this Litigation – but there was a real risk that Defendants could sway some jurors with their arguments.

Even if Defendants' defenses could be overcome, Plaintiffs would have to prevail on the element of loss causation.  *See, e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 196-97 (2d Cir. 2003) (plaintiffs required to plead and prove loss causation and proximate causation).  Plaintiffs faced a significant hurdle to prove loss causation, *i.e.*, that Defendants' fraud caused Plaintiffs and the Class to suffer economic loss.  *Dura Pharms.*, 544 U.S. at 338 (a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss").

The issue of loss causation was hotly contested throughout this case from the motions to dismiss through the final pretrial conference.  The issue would have also been the keystone defense for Defendants at trial.  Defendants would have taken the position, supported by expert testimony, that none of the drop in Pfizer's stock price could be attributed to the $2.3 billion settlement announcement, and therefore Class Members had suffered no legal damages at all.  Defendants would have contended that non-fraud related information disclosed on January 26, 2009, including a 50% cut in Pfizer's dividend, disappointing earnings guidance by the Company, and the announcement of the proposed acquisition of Wyeth by Pfizer, actually caused the share price to decline.  While Plaintiffs disputed these contentions, there was a substantial risk of recovering limited or no damages if the jury agreed with Defendants' loss causation arguments.  Compounding these factors was a risk that the Court would reopen and grant, in whole or in part, Defendants' motion to exclude the opinion and testimony of Plaintiffs' loss causation and damages expert during

trial.  Although this motion was denied during the final pretrial conference on January 6, 2015, the Court denied the motion without prejudice leaving Defendants free to reassert it during trial.

By the time the parties agreed on the proposed Settlement, Lead Counsel had come to the conclusion that certain defenses described above might resonate with jurors, and would render the inherently difficult burden of proving the elements of Plaintiffs' claims as to all of the Defendants even more difficult.  While Plaintiffs remained confident in their ability to ultimately prove their claims and to counter any asserted affirmative defenses, the risk of losing at trial or on appeal, when weighed against the immediate and substantial benefits of settlement, certainly supports a finding that the Settlement is in the best interest of the Class.

### 5.    The Risk of Establishing Damages

Plaintiffs also faced substantial risk in proving damages.  *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *9 (S.D.N.Y. Dec. 19, 2014) (discussing difficulty of proving damages in securities cases and consequent "very real risk of no recovery").  In order to prevail on its §10(b) claims, Lead Counsel would be required to prove that the Defendants' misleading statements and omissions inflated the price of Pfizer stock, and would also be required to prove the amount of the artificial inflation.  Lead Counsel, with the assistance of their economics and damages expert, calculated the artificial inflation in the market price of Pfizer stock, that, in his opinion, was attributable to the alleged wrongdoing.  This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable.  As such, its viability as an actual calculation for damages could be affected at trial by Defendants' rebuttals and defenses to Plaintiffs' damage calculations and expert testimony.

The proof of damages is a complex matter that would require the presentation of expert testimony.  At trial, Plaintiffs would have faced a "battle of experts" – a battle in which no party is

- 13 -

ever assured to prevail.  While Lead Counsel believe that their expert was convincing, there was a long way to go both at trial and on appeal.  First, as discussed above, although this Court denied Defendants' *Daubert* motion as to Plaintiffs' damages expert, it did so without prejudice and noted that Defendants could raise the issue again at trial.  Second, although Plaintiffs believe that their damages expert's analysis was reliable and convincing, Defendants would have contested it at trial.  On January 26, 2009, when the alleged fraud was revealed, Pfizer's stock dropped from $17.45 per share to $15.65 per share.  Both parties' experts agreed that Pfizer stock suffered a company-specific residual decline of approximately $1.90 on that day.  Plaintiffs attributed $1.26 of this $1.90 decline to the alleged fraud.  However, Defendants argued that Plaintiffs could not disaggregate the non-fraud factors for this decline from the fraud-related causes.  As to damages, Defendants argued that Plaintiffs' expert's attempts to calculate the amount of damages were simply wrong.  In particular, Defendants attacked Plaintiffs' expert's opinion that $0.92 of the $1.26 reflected damages arising from harm to Pfizer's reputation.  Plaintiffs believe that they would have prevailed on this issue, but there is no question that the trial with respect to damages would have been a dogfight.  For example, if Defendants prevailed on the reputational argument alone, damages would have been reduced by over 73% (from $1.26 per share to $0.34 per share).

Defendants would have asserted other damages-related arguments at trial and on appeal.  For example, Plaintiffs' damages expert opined that the Class was entitled to a constant inflation ribbon of $1.26 regardless of when they purchased shares during the Class Period.  Defendants were prepared to argue at trial that Dr. Feinstein's constant inflation ribbon was not appropriate in this case because Defendants' disclosures regarding the DOJ Off-Label Promotion Investigation evolved over time as that investigation progressed.  Defendants also asserted that the investigation became more serious for Defendants as the Company received subpoenas for documents regarding Geodon,

Zyvox and Lyrica during the Class Period.  For this reason, Defendants would have attempted at trial to rebut Plaintiffs' constant inflation ribbon.

In short, it is possible that, in the unavoidable "battle of experts," a jury might disagree with Plaintiffs' expert, or find Defendants' expert more persuasive.[3]  The jury could have awarded no damages and certainly could have awarded far less in damages than Plaintiffs were seeking at trial.  As a result, the risk of proving damages also weighs in favor of the Settlement.

### 6.      The Risks of Maintaining the Class Action Through Trial

The Court certified the Class on March 29, 2012, over Defendants' opposition.  Plaintiffs believe that this case would have been tried as a class action.  Therefore, this factor had no impact on Plaintiffs' approach to settlement negotiations.  Nevertheless, courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  To the extent that there was any uncertainty at all, the Settlement leaves no doubt with respect to this issue.  And, in any event, the fact that the Class was already certified should not have any effect on the Court's decision to approve the Settlement.  *Veeco*, 2007 WL 4115809, at *10.

### 7.      The Ability of the Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in a settlement can be relevant to whether a settlement is fair.  *Grinnell*, 495 F.2d at 463.  The fact, however, that a

---

[3]      *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

defendant is able to pay more than it offers in settlement, does not, standing alone, indicate that the settlement is unreasonable or inadequate. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate"); *In re Wachovia Equity Sec. Litig.*, No. 08 Civ. 6171(RJS), 2012 WL 2774969, at *5 (S.D.N.Y. June 12, 2012) (same).

While it is apparent that Pfizer has sufficient resources to pay a sum larger than the Settlement Amount, as a practical matter the prospects of recovering a substantially greater sum would have been offset by the inevitable post-trial motions and appeals Defendants would likely pursue following any judgment. Additionally, settlement eliminates any risk of collection. In fact, the Settlement Amount is already earning interest for the Class.

### 8. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last two factors are satisfied here. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130; *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (The determination of a reasonable settlement "'is not susceptible of

- 16 -

a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'") (citing *Newman*, 464 F.2d at 693).  In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  There are numerous risks involved in litigation – especially litigation that involves the complex issues inherent in securities class actions.  In light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial, and the appellate process that would most likely follow, the fairness of a substantial settlement is clearly apparent.  Here, the Settlement of $400,000,000 in cash represents an excellent recovery for the Class, given the risks of proceeding further in this matter.

Considering the risk that the Class might not have been able to succeed on liability, the possibility that damages awarded by a jury could have been lower than those demanded by the Class (or no recovery at all), and, assuming Plaintiffs prevailed at trial, the delays and further risks raised by the appellate process, this Settlement is an excellent recovery.

In sum, the *Grinnell* factors, individually and collectively, weigh strongly in favor of the Settlement being approved.

## IV.    THE NOTICE OF PROPOSED SETTLEMENT SATISFIES DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974) (class notice is designed to fulfill due process

- 17 -

requirements).  The standard for measuring the adequacy of a class action settlement notice is reasonableness.  *Wal-Mart*, 396 F.3d at 114.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Id*.  "Notice is 'adequate if it may be understood by the average class member.'"  *Id*.

Here, in accordance with the Court's Preliminary Approval Order, starting on April 1, 2015, Gilardi caused the Notice and Proof of Claim and Release form packets, as approved by the Court, to be mailed by first class mail to potential Class Members.  Sylvester Decl., ¶3.  The Notice contains a thorough description of the Settlement, the Plan of Allocation and Class Members' rights to participate in and object to the Settlement, or exclude themselves from the Class.  Dkt. No. 476-2. On April 14, 2015, the approved Summary Notice was published in *Investor's Business Daily* and transmitted over the *Business Wire*.  Sylvester Decl., ¶13 & Ex. D thereto.  Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim and Release form, was also posted on a website devoted solely to the administration of the Settlement (www.pfizersecuritieslitigation.com), as well as on a website created by Lead Counsel for the case (www.pfizersecuritiessettlement.com).  Sylvester Decl., ¶12; Lead Counsel Decl., ¶136.

The notice program, which combined an individual, mailed Notice and Proof of Claim and Release form packet to all potential Class Members who could be reasonably identified, as well as to custodian holders, and a Summary Notice published in one of the pre-eminent national business publications and over the internet, contained all of the information required by §21D(a)(7) of the Private Securities Litigation Reform Act of 1995, and is adequate to meet the due process and Rule 23(c)(2) and (e) requirements for providing notice to the Class.

## V.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

If the Court approves the proposed Settlement, upon completion of the claims filing process, the Net Settlement Fund will be distributed to Members of the Class according to the Plan of Allocation set forth in the Notice.  "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133; *Luxottica Grp.*, 233 F.R.D. at 316-17.  As with the Settlement, the opinion of experienced and informed counsel carries considerable weight.  *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *Id*. at 429-30.  District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

Here, the Plan of Allocation was formulated by Lead Counsel and Plaintiffs' damages expert. The Plan of Allocation calculates individual Class Member's claims precisely as they would have been calculated if Plaintiffs prevailed at trial; *i.e.*, based on damages of $1.26 per share.  Under the Plan of Allocation, each Authorized Claimant will receive a pro rata share of the Net Settlement Fund, with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.  Notice, §XII.

Accordingly, the Plan of Allocation is fair, reasonable, and adequate to the Class as a whole. The Plan of Allocation should be approved by the Court.

- 19 -

## VI.     CONCLUSION

The $400,000,000 Settlement reached in this Litigation is an excellent result that provides an immediate and substantial benefit for the Class.  For the reasons set forth herein and in the Lead Counsel Declaration, Plaintiffs and Lead Counsel respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and respectfully request the Court grant approval of the Settlement and Plan of Allocation.

DATED:  May 6, 2015                          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
MICHAEL J. DOWD
HENRY ROSEN
TRIG R. SMITH
JASON A. FORGE
RYAN A. LLORENS
IVY T. NGO


                  s/ MICHAEL J. DOWD
                MICHAEL J. DOWD

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
miked@rgrdlaw.com
henryr@rgrdlaw.com
trigs@rgrdlaw.com
jforge@rgrdlaw.com
ryanl@rgrdlaw.com
ingo@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

- 20 -

1019378_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
WILLOW E. RADCLIFFE
DANIEL J. PFEFFERBAUM
MATTHEW S. MELAMED
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
mmelamed@rgrdlaw.com

Lead Counsel for Plaintiffs

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 6, 2015.

s/ MICHAEL J. DOWD
MICHAEL J. DOWD

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:MikeD@rgrdlaw.com

Case 1:10-cv-03864-AKH    Document 483    Filed 05/06/15    Page 28 of 30

# Mailing Information for a Case 1:10-cv-03864-AKH

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Scott Bailey**
  michael.bailey@skadden.com

- **Sidney Bashago**
  sidney.bashago@dpw.com,jennifer.kan@davispolk.com,ecf.ct.papers@davispolk.com

- **Sheila L. Birnbaum**
  sheilabirnbaum@quinnemanuel.com

- **George Anthony Borden**
  gborden@wc.com

- **Kevin Anthony Burke**
  kaburke@sidley.com,nyefiling@sidley.com,efilingnotice@sidley.com

- **Michael Barry Carlinsky**
  michaelcarlinsky@quinnemanuel.com,brantkuehn@quinnemanuel.com,jomairecrawford@quinnemanuel.com

- **Lauren Kristina Collogan**
  lcollogan@wc.com

- **Patrick Daniel Curran**
  patrickcurran@quinnemanuel.com,justinemanzano@quinnemanuel.com

- **Keir Nicholas Dougall**
  kdougall@dougallpc.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com

- **Alexander C Drylewski**
  alexander.drylewski@skadden.com

- **Charles S. Duggan**
  charles.duggan@dpw.com,ecf.ct.papers@davispolk.com

- **Steven M.. Farina**
  sfarina@wc.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Ross Bradley Galin**
  rgalin@omm.com,mochoa@omm.com,neverhart@omm.com,lisachen@omm.com

- **Gary John Hacker**
  ghacker@skadden.com

- **James R. Harper**
  coljamesrharper@me.com

- **Howard E. Heiss**
  hheiss@omm.com,#nymanagingattorney@omm.com

- **Paul T. Hourihan**
  phourihan@wc.com

- **James M. Hughes**
  jhughes@motleyrice.com,kweil@pacernotice.com,mgruetzmacher@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com,hlindley@kendalllawgroup.com

- **Brant Duncan Kuehn**
  brantkuehn@quinnemanuel.com

- **Leigh R. Lasky**
  lasky@laskyrifkind.com

- **Hamilton Philip Lindley**
  hlindley@deanslyons.com

- **Ryan A. Llorens**
  ryanl@rgrdlaw.com,nbear@rgrdlaw.com,kirstenb@rgrdlaw.com

- **Amanda M. MacDonald**
  amacdonald@wc.com

- **Lori McGill**
  lorialvinomcgill@quinnemanuel.com

- **Matthew Melamed**
  mmelamed@rgrdlaw.com

- **Donald Alan Migliori**
  dmigliori@motleyrice.com

- **Eugene Mikolajczyk**
  genem@rgrdlaw.com

- **Seema Mittal**
  smittal@wc.com

- **Cynthia Margaret Monaco**
  cmonaco@cynthiamonacolaw.com,cmmonaco@gmail.com

- **Juliana Newcomb Murray**
  juliana.murray@davispolk.com,lisa.hirakawa@davispolk.com,ecf.ct.papers@davispolk.com

- **Scott D. Musoff**
  smusoff@skadden.com,aviva.nusbaum@skadden.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com

- **William H. Narwold**
  bnarwold@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph G. Petrosinelli**
  jpetrosinelli@wc.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,ptiffith@rgrdlaw.com

- **Joseph F. Rice**
  jrice@motleyrice.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Daniel Prugh Roeser**
  droeser@goodwinprocter.com

- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Stuart Michael Sarnoff**
  ssarnoff@omm.com

- **William E. Schurmann**
  wschurmann@wc.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Jennifer Lynn Spaziano**
  jen.spaziano@skadden.com

- **Meghan K. Spillane**
  mspillane@goodwinprocter.com,sewald@goodwinprocter.com,ttam@goodwinprocter.com

- **Richard Mark Strassberg**
  rstrassberg@goodwinprocter.com,nymanagingclerk@goodwinprocter.com

- **Mitchell M.Z. Twersky**
  mtwersky@aftlaw.com

- **John K. Villa**
  jvilla@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Daniel          E. Hill
Kendall Law Group, LLP
3232 McKinney Avenue
Suite 700
Dallas, TX 75204

Catherine       J. Kowalewski
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

Jamie           J. McKey
Kendall Law Group, LLP
3232 McKinney Avenue
Suite 700
Dallas, TX 75204

David           C. Walton
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101
```