UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
MARY K. JONES, Individually and on Behalf :   Civil Action No. 1:10-cv-03864-AKH
of All Others Similarly Situated,             :
                                        :   CLASS ACTION
                  Plaintiff   :
                                        :   DECLARATION OF HENRY ROSEN
    vs.                             :   FILED ON BEHALF OF ROBBINS GELLER
                                        :   RUDMAN & DOWD LLP IN SUPPORT OF
PFIZER INC., et al.,                 :   APPLICATION FOR AWARD OF
                                        :   ATTORNEYS' FEES AND EXPENSES
              Defendants.   :
                                        :
——————————————————— x

I, HENRY ROSEN, declare as follows:

1.      I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller").  I am submitting this declaration in support of my firm's application for an award of attorneys' fees and expenses/charges ("expenses") in connection with services rendered in the above-entitled action.

2.      This firm is Lead Counsel of record for Lead Plaintiff Stichting Philips Pensioenfunds, Class Representative Mary K. Jones (collectively, "Plaintiffs") and the Class.

3.      The information in this declaration regarding the firm's time and expenses is taken from time and expense printouts prepared and maintained by the firm in the ordinary course of business.  I am the partner who oversaw and/or conducted the day-to-day activities in the litigation. This declaration and the supporting exhibits were prepared by, or with the assistance of, other lawyers and staff at the firm with knowledge of the matters reflected herein and reviewed in detail by me before signing.  I have been provided with access to all of the material information supporting the fee and expense requests that are the subject of this declaration, and have personally reviewed such materials to the extent I determined was necessary to confirm the accuracy of the information included herein.  Michael J. Dowd, a member of the firm's Executive Committee, also reviewed such materials to the extent he determined was necessary to confirm the accuracy of the information included herein.  As a result of these reviews, reductions were made to both time and expenses in the exercise of billing judgment.  Also as a result of these reviews and the adjustments made, we believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as set forth in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.  In addition, we believe that the expenses

- 1 -

are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

4.      After the reductions referred to above, the number of hours spent on this litigation by my firm is 120,056.70.  A breakdown of the lodestar is provided in Exhibit A.  The lodestar amount for attorney/paraprofessional time based on the firm's current rates is $48,372,586.90.  The hourly rates shown in Exhibit A are the rates set by the firm for each individual.

5.      My firm seeks an award of $7,654,440.02 in expenses and charges in connection with the prosecution of the litigation.  Those expenses and charges are summarized by category in Exhibit B.

6.      The following is additional information regarding certain of these expenses:

        (a)      Filing, Witness and Other Fees: $21,536.36.  These expenses have been paid to the Court and to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas, (ii) filed and served other documents with the Court, (iii) made hand deliveries, and (iv) obtained copies of court documents for Plaintiffs.  The vendors who were paid for these services are set forth in Exhibit C.

        (b)      Business Wire: $1,892.50.  This expense was necessary under the Private Securities Litigation Reform Act of 1995's "early notice" requirements, which provides, among other things, that "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).

1018659_3

(c)     Class Action Notices: $1,484,834.00.   These charges include the cost of mailing and publishing the Notice of Pendency of Class Action pursuant to the Stipulation and Order Directing Class Notice Procedures dated November 17, 2014 (Dkt. No. 291).

(d)     Transportation, Hotels & Meals: $966,073.68.   In connection with the prosecution of this case, the firm has paid for travel expenses to attend, among other things, court hearings, to meet with witnesses, mediators and opposing counsel and to take or defend depositions. The date, destination and purpose of each trip is set forth in Exhibit D.

(e)     Shredding Expenses: $181.00.  This amount represents the costs for shredding of documents at our trial office in Manhattan.

(f)     Court Hearing and Deposition Reporting, Transcripts and Related Video Recordings: $195,853.27.  The vendors who were paid for hearing and deposition transcripts are listed in Exhibit E.

(g)     Experts: $3,012,530.95.

(i)     Greylock McKinnon Associates ("GMA") and Dr. Meredith B. Rosenthal and Dr. Christopher F. Baum: $1,342,959.69.  GMA is a consulting firm in Boston, Massachusetts that among other services, offers a wide array of consulting services related to the illegal off-label promotion of drugs by pharmaceutical companies.  In particular, GMA has expertise in utilizing econometric models to calculate the impact off-label marketing has on drug revenues and profits.  These consulting services were extremely helpful to Lead Counsel in this litigation so that the materiality of Pfizer Inc.'s ("Pfizer" or the "Company") illegal promotion could be calculated on a drug-by-drug basis.  Dr. Rosenthal and her staff at GMA analyzed what impact Pfizer's illegal promotion had on Bextra, Geodon, Zyvox and Lyrica (the "Drugs") sales.  Dr. Baum performed the econometric modeling for Bextra, Geodon and Lyrica that Dr. Rosenthal incorporated into her

- 3 -

calculations as to how Pfizer generated increased sales and achieved greater profits by illegally promoting those drugs. Drs. Rosenthal and Baum and their staff at GMA spent hundreds of hours assisting Lead Counsel with reviewing complicated documents, spreadsheets and other files which contained information regarding the sales, marketing and profits for the drugs at issue in the case. In certain instances, in order to obtain the necessary data to complete their econometric modeling, Drs. Rosenthal and Baum and their GMA staff had to purchase data from companies that track the pharmaceutical industry. For example, Lead Counsel had to order data from IMS Health Inc. ("IMS") that cost $92,000.00. The data purchased from IMS was not available from Defendants in this action and contained information regarding what physician specialties were prescribing Bextra, Geodon, Zyvox and Lyrica and for what conditions the physicians were prescribing the drugs. Dr. Baum needed this data to complete the econometric modeling that Dr. Rosenthal used to complete her calculations as to what sales and profits were achieved through illegal promotion. Drs. Rosenthal and Baum and the GMA staff assisted Lead Counsel throughout fact and expert discovery, during discovery disputes with Defendants, while Lead Counsel was preparing to depose Defendants' experts, while the parties were briefing summary judgment, motions *in limine* and *Daubert* motions and while preparing for trial. In addition, both Drs. Rosenthal and Baum were designated as expert witnesses by Plaintiffs. Dr. Baum prepared a 13-page report detailing his opinions. Dr. Rosenthal prepared a 73-page report detailing her opinions. Defendants deposed Drs. Baum and Rosenthal in September 2014. Both Drs. Rosenthal and Baum were prepared to testify at trial.

(ii)     Berkeley Research Group, LLC ("BRG"), Kevin L. O'Brien and Edward J. Buthusiem: $664,579.54. Messrs O'Brien and Buthusiem from BRG were retained as experts to consult and provide expert testimony on the weaknesses in Pfizer's healthcare compliance

controls which impacted the Company's ability to control off-label promotion and on the processes in place at Pfizer to draft legal proceeding disclosures, respectively.  Mr. O'Brien has decades of experience consulting on the internal compliance and control systems for the pharmaceutical industry.  Mr. Buthusiem has extensive experience as in-house counsel for a large pharmaceutical company, including experience where he was responsible for drafting legal proceeding disclosures regarding U.S. Department of Justice ("DOJ") off-label marketing investigations.  Messrs. O'Brien and Buthusiem both provided expert reports, testified at deposition, helped prepare Lead Counsel for Defendants' experts' depositions and were prepared to testify at trial.

(iii)    Hemming Morse, LLP ("HM") and D. Paul Regan: $378,776.72  HM is one of the nation's leading and most respected accounting firms with a focus on litigation and forensic consulting services and financial and compliance auditing.  Mr. Regan of HM provided Lead Counsel accounting and disclosure opinions during the expert discovery stage and would have been Lead Counsel's trial expert regarding the disclosure of and accounting for the DOJ's investigation info Pfizer's off-label promotion of the Drugs ("DOJ's Off-Label Promotion Investigation").  HM also provided guidance to Lead Counsel when crafting the allegations regarding the violations of Generally Accepted Accounting Principles ("GAAP") and failure to adequately disclose the DOJ Off-Label Promotion Investigation contained in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws and then subsequently refined in Plaintiffs' First Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 71) (the "FACC").  HM also assisted Plaintiffs in reviewing documents and provided analyses, based on those documents, regarding Defendants' disclosures, contingency reserves, GAAP and Pfizer's internal controls.  Mr. Regan provided a 90-page report and a supplemental report detailing his opinions.  HM and Mr. Regan also assisted Plaintiffs in analyzing

- 5 -

Defendants' expert reports and in preparing to depose Defendants' experts at deposition.  Mr. Regan was deposed by Defendants on August 12, 2014.  Mr. Regan was also prepared to testify at trial.

(iv)  Crowninshield Financial Research, Inc. ("CFR") and Steven P. Feinstein, Ph.D., CFA: $280,870.00.  Dr. Feinstein and his staff at CFR were instrumental in assisting Lead Counsel throughout this litigation from drafting oppositions to the motions to dismiss, to class certification, throughout fact and expert discovery, while briefing motions for summary judgment, motions *in limine* and *Daubert* motions, as Plaintiffs prepared for and conducted mediations and in preparing for trial.  Dr. Feinstein prepared a report in support of Plaintiffs' motion for class certification, a second 94-page report detailing his opinions with respect to loss causation and damages, testified twice at deposition and was prepared to testify at trial.  Loss causation and damages were some of the largest risks Plaintiffs faced at trial and this settlement would not have been achieved but for the extraordinary effort by Dr. Feinstein and his staff at CFR.

(v)  Jerome Avorn & Associates, Inc.: $107,950.00.  Dr. Jerome Avorn is a Professor of Medicine at Harvard Medical School and Chief of the Division of Pharmacoepidemiology and Pharmacoeconomics in the Department of Medicine at the Brigham and Women's Hospital, one of Harvard's main teaching hospitals.  Plaintiffs designated Dr. Avorn as a pharmacoepidemiology and pharmacoeconomics expert on what impact pharmaceutical manufacturers' marketing has on physicians.  Dr. Avorn prepared a report and testified at his deposition regarding Pfizer's illegal promotion of Bextra, Geodon, Zyvox and Lyrica.  The illegal marketing examined and opined upon by Dr. Avorn included promoting the Drugs for indications and dosages not approved by the United States Food & Drug Administration ("FDA"), directing of promotional activities at unapproved patient populations, and asserting superiority claims for the Drugs above others in their class without adequate approval for such claims from the FDA.  Dr.

- 6 -

Avorn assisted Lead Counsel when preparing to depose Defendants' experts and was prepared to testify at trial. Given that the underlying conduct at issue in this case was off-label promotion, Dr. Avorn's expertise analyzing how physicians are affected by marketing was extremely useful to Plaintiffs in asserting their securities law violations.

(vi)     Robert A. Rosenheck, MD: $90,225.00. Dr. Rosenheck is a Professor of Psychiatry, Epidemiology and Public Health, and the Child Study Center, at the Yale Medical School and a Senior Investigator in Health Services Research at the Veterans Affairs New England Mental Illness, Research, Education and Clinical Center. Lead Counsel retained Dr. Rosenheck to evaluate Pfizer's claims that the Clinical Antipsychotic Trials of Intervention Effectiveness ("CATIE") demonstrated that Geodon was more effective than traditional antipsychotic medications. Dr. Rosenheck opined that Pfizer's claims for Geodon based on the results of the CATIE study were false and misleading. Dr. Rosenheck provided a detailed 67-page report describing complex concepts regarding the class of drugs to which Geodon belongs (second generation antipsychotics) and evaluating whether the CATIE study supported statements regarding Geodon made by Pfizer's senior executives, marketing personnel and sales representatives when communicating the core promotional messages for Geodon.

(vii)     Nicholas P. Jewell, Ph.D.: $28,600.00. Professor Jewell is an internationally recognized biostatistician and a Professor of Biostatistics and Statistics at the University of California, Berkeley. Lead Counsel consulted with Professor Jewell regarding the Pfizer sponsored studies that Pfizer used to advertise that the drug Zyvox was superior to vancomycin despite being warned by the FDA to cease making that claim. Professor Jewell also was retained to provide expert testimony in this action. He prepared an expert report, testified at deposition and was prepared to testify at trial. After Professor Jewell submitted his expert report in

- 7 -

this action, the Defendants withdrew their expert who they initially designated to counter Professor Jewell's opinions. Professor Jewell also assisted Lead Counsel with fact and expert discovery, with opposing Defendants' summary judgment motions, motions *in limine* and *Daubert* motions.

        (viii)    Sara S. Beale: $26,570.00. Professor Beale has been on the faculty at the Duke University School of Law since 1979, and has held the Charles L.B. Lowndes Chair since 2001. Professor Beale was retained to testify regarding the fundamental nature of corporate criminal liability under the *respondeat superior* doctrine and how a corporation is criminally liable for crimes committed by employees. Professor Beale provided a report opining on the misleading nature of Defendants' claims of "substantial defenses" to the DOJ Off-Label Promotion Investigation in light of the *respondeat superior* doctrine. Professor Beale's research assistants, Nicholas Brod, Taylor Crabtree and Ethan Carroll also performed research for her while she was preparing her report.

        (h)     Consultants: $398,735.29.

        (i)     Compass Lexecon, LLC ("Lexecon"): $157,873.51. Lexecon is an economic consulting firm that assists law firms, corporations and governmental clients with practice areas including securities litigation, class certification, valuation and financial analysis. Lexecon provided consulting work for Plaintiffs on the issues of loss causation. Lexecon's advice was extremely helpful to Lead Counsel in addressing the risks Plaintiffs faced on the issue of loss causation.

        (ii)    John Abramson, MD and Palko Goldman, LLC: $91,427.50 (Dr. Abramson) and $3,489.88 (Dr. Palko Goldman). Drs. Abramson and Goldman were retained to consult with Lead Counsel regarding Pfizer's promotion of Bextra, Geodon and Lyrica for non-FDA approved indications, dosages and patient populations. Drs. Abramson and Goldman have extensive experience evaluating pharmaceutical company's marketing practices and as consultants assisting

- 8 -

attorneys with large-scale and complicated document reviews. Drs. Abramson and Goldman spent substantial time reviewing documents and analyzing the strategies and techniques that Pfizer employed to promote Bextra, Geodon and Lyrica off-label, including presentations made during advisory boards, symposia, medical conferences and continuing medical education programs and as well as presentations made by physicians hired by Pfizer as key opinion leaders, Company-employed medical specialists and sales representatives. Drs. Abramson and Goldman were extremely helpful in assisting counsel to identify key documents demonstrating that Pfizer was illegally promoting Bextra, Geodon and Lyrica and thus allowed counsel to more efficiently identify key documents in the 23 million page production by Defendants and third parties in this action.

(iii)    Stefan P. Kruszewski, MD and Associates: $77,372.60.    Dr. Kruszewski, a board-certified psychiatrist and faculty member of Johns Hopkins University School of Medicine, was retained to consult with Lead Counsel regarding regulatory and compliance issues in the case. Specifically, Dr. Kruszewski was retained to provide consulting services regarding his experience with the illegal off-label promotion of Geodon. Dr. Kruszewski was able to direct Lead Counsel's investigation into the off-label promotion of Geodon by providing details about Pfizer's practices in marketing Geodon to physicians who primarily treated children, adolescents or the elderly, despite the fact that the FDA never approved Geodon for pediatric or geriatric indications. His work required the review and analysis of thousands of pages of documents culled from the millions of documents produced by Defendants in this action as well as documents from his own independent research.

(iv)    Financial Markets Analysis, LLC ("FMA"): $29,625.00.    Bjorn I. Steinholt of FMA was retained to consult with Lead Counsel regarding loss causation and damages issues early in the case when Lead Counsel was preparing the FACC and opposing Defendants'

motions to dismiss. Given that the loss causation issue was an enormous hurdle for Plaintiffs, Mr. Steinholt provided analysis of the issue to help counsel craft arguments to demonstrate that Plaintiffs had met their pleading burden to state a federal securities violation.

(v)     Steven G. Klotz, MD, PC: $24,062.50.  Dr. Klotz was retained by Lead Counsel to provide consulting services regarding Pfizer's off-label marketing of Geodon. Dr. Klotz was hired by Pfizer to be a member of the Company's speaker program based on his experience treating patients with Geodon. Dr. Klotz traveled to Lead Counsel's San Diego offices to consult with counsel and relate his experiences with Pfizer's Geodon marketing practices with respect to non-FDA approved symptoms and conditions such as depression, insomnia, anxiety, attention deficit disorder, lack of concentration and other mood, behavioral and conduct disorders.

(vi)    TransPerfect Translations International ("TransPerfect"): $14,884.30. TransPerfect is an internationally recognized translation company headquartered in New York City. TransPerfect was retained to interpret and translate Lead Plaintiff's investment statements, plan documents and other materials relating to its investments in Pfizer from Dutch to English. The parties split the translation costs evenly.

(i)     Investigators: $120,421.49.

(i)     L.R. Hodges & Associates, Ltd. ("LRH"): $110,258.99.  Over a combined 23-month period (October 2011 through May 2012, December 2012 through November 2013 and August, September and December 2014) LRH provided investigative services to Lead Counsel.  LRH expended 459 hours for combined fees of $95,445.00, and incurred related expenses of $14,813.99 for a total of $110,258.99 broken down as follows:  Leading to the FACC being upheld and throughout the formal discovery process, LRH's research staff expended 101.3 hours to research, identify and confirm the employment status of prospective witnesses, locating all key

- 10 -

targets, as well as maintaining and updating an evolving witness list to support other investigative team members. This also involved research, retrieval and analysis of relevant documents, including SEC filings, media articles, court filings, as well as other materials related to the case issues. The case manager and interviewing investigators expended a combined 357.7 hours to research, review and analyze materials in preparation for the investigation; contacting and conducting telephonic and in-person interviews with targeted third-party witnesses; and thereafter, to prepare comprehensive interview summaries and other case reports. In addition, these individuals were involved in analyzing key case issues, as well as establishing and executing the joint litigation-investigation team plan, and participating in numerous strategy sessions and investigation briefings with Lead Counsel.

(ii)     The Indago Group ("Indago"): $10,162.50. These charges are for investigative services provided in connection with discovery and witness location efforts in this matter. Indago expended 98 hours to identify and locate witnesses and other persons with knowledge of the DOJ Off-Label Promotion Investigation. Indago has extensive experience related to investigating off-label marketing allegations and locating witnesses and other persons with knowledge of the investigations.

(j)      Outside Counsel for Witnesses: $127,548.85.

(i)      James R. Harper III (Counsel for Alan Greensmith and Mark Brown): $99,064.41. After Lead Counsel's investigators at LRH located Messrs. Greensmith and Brown, they retained Mr. Harper to represent them at their depositions. Further, Mr. Harper represented Mr. Greensmith during a hearing where the Court resolved a discovery dispute between Mr. Greensmith and an attorney Pfizer hired to represent Mr. Greensmith during the DOJ Off-Label Promotion Investigation. Mr. Harper also represented Mr. Greensmith as he was preparing to testify at trial. In

- 11 -

January 2015, Messrs. Harper and Greensmith traveled to New York and met with Lead Counsel as the case was being prepared for trial.

    (ii)  Blank Rome LLP (Counsel for Mark Westlock): $28,484.44.  After Lead Counsel's investigator at LRH located witness Mr. Westlock, he retained W. Scott Simmer from Blank Rome LLP to represent him during his deposition.  Mr. Simmer traveled to St. Louis, Missouri to meet with Mr. Westlock and attend his deposition.

    (k)  Reproduction/Imaging: $404,135.29.  In connection with this case, the firm made 1,147,519 in-house photocopies.  Robbins Geller requests $0.25 per copy for a total of $286,879.75. Each time an in-house copy machine is used, our billing system requires that a case or administrative billing code be entered and that is how the 1,147,519 photocopies were identified as related to this case.  Robbins Geller also paid an outside vendor, Celerity Consulting, $628.82 for converting PDF documents to TIFF images and to fix the document breaks (*i.e.*, where the document started and stopped).  In addition, my firm also paid $116,626.72 to outside copy vendors.  A breakdown of these outside charges by date and vendor is set forth in Exhibit F.

    (l)  Online Legal, Scientific and Financial Research: $127,570.12.  These included vendors such as ALM Media Service, Courtlink, LexisNexis, Logic Link, Nexatechnol CA, Ovid LWW PPV Journal MA, Pacer, Premium News Service, Thomson Financial, Westlaw and Wiley Hoboken US.  These databases were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs.  These expenses were incurred by Robbins Geller for use of these services in connection with this litigation.  The charges for these vendors vary depending upon the type of services requested.  For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services.  When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case

being litigated.  At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.  As a result of the contracts negotiated by Robbins Geller with certain providers, the Class enjoys substantial savings in comparison with the "market-rate" for *a la carte* use of such services.  For example, we believe the "market rate" charged to others by Lexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(m)     Database Management Charges: $557,707.20.  Robbins Geller requests $557,707.20 for database management hosting charges related to this litigation.  Because of the number of components that are part of a database management system (*i.e.*, hardware, software, license/access fees, etc.) and the difficulty of allocating a portion of the cost of each component, some of which are multi-year costs, the amount requested is a discounted market rate estimate of what the database management services used in this action would have cost the Class if performed by a third-party, an estimate based on a review by Robbins Geller of what vendors charge for these services.  In the last ten years, electronic discovery has transformed litigation practices and enabled the preservation, collection, production and review of vast quantities of documents far more efficiently and cost-effectively than was previously possible.  Historically, Robbins Geller retained the services of third-party providers to assist with the storage, analysis, printing and review of electronic discovery.  However, in the last several years, Robbins Geller has undertaken much of this work in-house through the use of the Relativity platform.  Relativity is offered by over 130 vendors and is currently being used by all of the AmLaw100 law firms.  Robbins Geller's Relativity system consists of over 20 servers and currently consumes more than 50 Terabytes of storage all located in a SSAE 16 Type II data center.  Robbins Geller has another 50 Terabytes of storage which serves as

- 13 -

our back up in a separate location with automatic replication.  Robbins Geller's Relativity system allowed users to securely login, see, search, download, code and analyze documents produced in this litigation.  Using an in-house system allows Robbins Geller to prosecute actions more efficiently and has reduced the time and expense associated with maintaining electronic discovery databases.  The amount requested reflects charges for the management of the database of more than 23 million pages of documents produced by Defendants and non-parties in this action.  Robbins Geller charges $15 per Gigabyte per month for less than 1 Terabyte of data and $10 per Gigabyte per month for more than 1 Terabyte of data for maintaining, hosting and utilizing its Relativity system.  This rate was developed by Robbins Geller after a review of market rates charged for the same services performed by third-party vendors.  During this review, Robbins Geller found that these vendors were charging $15-$25 per Gigabyte per month for less than 1 Terabyte of data and $10-$18 per Gigabyte per month for over 1 Terabyte of data for the same services, in addition to user fees ranging from $70-$100 per user per month.  The rates set forth here by Robbins Geller reflect the lowest rate of any comparable service found by Robbins Geller during this review with the additional savings of no monthly user fees.  Again, these are in-house charges, not out-of-pocket expenses paid to outside vendors.

(n)     Database Analytics: $27,519.00.  Robbins Geller requests $27,519.00 for Relativity Analytics.  Relativity Analytics is an enhancement to the Relativity platform which analyzes the words in each document utilizing Latent Symantec Indexing algorithms.  This technology was implemented on a portion of the documents produced in this action and utilized by the attorneys during the electronic review of more than 23 million pages of documents.  Relativity Analytics allowed us to identify near-conceptual duplicates, prioritize the documents being reviewed and clusters similar documents together making for a more efficient and faster review.  kCura, the

- 14 -

developer of Relativity, charges Robbins Geller for these enhancements based on the amount of data analyzed.

        (o)     Mediation Fees (Phillips ADR Enterprises, P.C. and Irell & Manella LLP): $107,535.90.  Judge Layn R. Phillips (Ret.) assisted by Robert Fairbank, Esq. provided mediation services in connection with settlement negotiations, including mediation sessions and/or in-person meetings held on November 15, 2013, November 13 and 19, 2014, January 11, 2015 and January 18, 2015, and in numerous follow up communications resulting in the Stipulation of Settlement and Motion for Final Approval now before the Court.  Judge Phillips and Mr. Fairbank's efforts continued even as the parties fully briefed their motions for summary judgment and prepared the case for trial.

        7.     The expenses pertaining to this case are reflected in the books and records of this firm.  These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

        8.     The identification and background of my firm and its partners is attached hereto as Exhibit G.

        I declare under penalty of perjury that the foregoing is true and correct.  Executed this 6th day of May, 2015, at San Diego, California.

                                    s/ Henry Rosen
                                    HENRY ROSEN

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 6, 2015.

s/ Henry Rosen
HENRY ROSEN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:HenryR@rgrdlaw.com

# Mailing Information for a Case 1:10-cv-03864-AKH

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Scott Bailey**
  michael.bailey@skadden.com

- **Sidney Bashago**
  sidney.bashago@dpw.com,jennifer.kan@davispolk.com,ecf.ct.papers@davispolk.com

- **Sheila L. Birnbaum**
  sheilabirnbaum@quinnemanuel.com

- **George Anthony Borden**
  gborden@wc.com

- **Kevin Anthony Burke**
  kaburke@sidley.com,nyefiling@sidley.com,efilingnotice@sidley.com

- **Michael Barry Carlinsky**
  michaelcarlinsky@quinnemanuel.com,brantkuehn@quinnemanuel.com,jomairecrawford@quinnemanuel.com

- **Lauren Kristina Collogan**
  lcollogan@wc.com

- **Patrick Daniel Curran**
  patrickcurran@quinnemanuel.com,justinemanzano@quinnemanuel.com

- **Keir Nicholas Dougall**
  kdougall@dougallpc.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com

- **Alexander C Drylewski**
  alexander.drylewski@skadden.com

- **Charles S. Duggan**
  charles.duggan@dpw.com,ecf.ct.papers@davispolk.com

- **Steven M. Farina**
  sfarina@wc.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Ross Bradley Galin**
  rgalin@omm.com,mochoa@omm.com,neverhart@omm.com,lisachen@omm.com

- **Gary John Hacker**
  ghacker@skadden.com

- **James R. Harper**
  coljamesrharper@me.com

- **Howard E. Heiss**
  hheiss@omm.com,#nymanagingattorney@omm.com

- **Paul T. Hourihan**
  phourihan@wc.com

- **James M. Hughes**
  jhughes@motleyrice.com,kweil@pacernotice.com,mgruetzmacher@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com,hlindley@kendalllawgroup.com

- **Brant Duncan Kuehn**
  brantkuehn@quinnemanuel.com

- **Leigh R. Lasky**
  lasky@laskyrifkind.com

- **Hamilton Philip Lindley**
  hlindley@deanslyons.com

- **Ryan A. Llorens**
  ryanl@rgrdlaw.com,nbear@rgrdlaw.com,kirstenb@rgrdlaw.com

- **Amanda M. MacDonald**
  amacdonald@wc.com

- **Lori McGill**
  lorialvinomcgill@quinnemanuel.com

- **Matthew Melamed**
  mmelamed@rgrdlaw.com

- **Donald Alan Migliori**
  dmigliori@motleyrice.com

- **Eugene Mikolajczyk**
  genem@rgrdlaw.com

- **Seema Mittal**
  smittal@wc.com

- **Cynthia Margaret Monaco**
  cmonaco@cynthiamonacolaw.com,cmmonaco@gmail.com

- **Juliana Newcomb Murray**
  juliana.murray@davispolk.com,lisa.hirakawa@davispolk.com,ecf.ct.papers@davispolk.com

- **Scott D. Musoff**
  smusoff@skadden.com,aviva.nusbaum@skadden.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com

- **William H. Narwold**
  bnarwold@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph G. Petrosinelli**
  jpetrosinelli@wc.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,ptiffith@rgrdlaw.com

- **Joseph F. Rice**
  jrice@motleyrice.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Daniel Prugh Roeser**
  droeser@goodwinprocter.com

- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Stuart Michael Sarnoff**
  ssarnoff@omm.com

- **William E. Schurmann**
  wschurmann@wc.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Jennifer Lynn Spaziano**
  jen.spaziano@skadden.com

- **Meghan K. Spillane**
  mspillane@goodwinprocter.com,sewald@goodwinprocter.com,ttam@goodwinprocter.com

- **Richard Mark Strassberg**
  rstrassberg@goodwinprocter.com,nymanagingclerk@goodwinprocter.com

- **Mitchell M.Z. Twersky**
  mtwersky@aftlaw.com

- **John K. Villa**
  jvilla@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Daniel          E. Hill
Kendall Law Group, LLP
3232 McKinney Avenue
Suite 700
Dallas, TX 75204

Catherine       J. Kowalewski
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

Jamie           J. McKey
Kendall Law Group, LLP
3232 McKinney Avenue
Suite 700
Dallas, TX 75204

David           C. Walton
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101
```