UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY K. JONES, Individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>PFIZER, INC., et al.,<br><br>       Defendants. | No. 1:10-cv-03864-AKH |

**OBJECTION TO REQUEST FOR ATTORNEY'S FEES
AND NOTICE OF INTENTION TO APPEAR**

   Class member Scott W. Browne, 21 Stonebrook Court, Beaumont, TX 77706, telephone # (409) 781-3295, hereby objects to the request for attorney's fees. Mr. Browne bought 572 shares of Pfizer on January 14, 2009 at the price of $17.15/share, and sold the same number of shares on January 27, 2009 at a price of $15.83/share. Mr. Browne intends to appear and argue at the fairness hearing scheduled for July 30, 2015 through his undersigned counsel.

**I.  The 23.5% Fee Request Is Grossly Excessive.**

   Class counsel's fee request of 23.5%, or $94 million, is grossly excessive in the context of this megafund settlement, and fifteen percentage points higher than the percentage awarded by Judge Kaplan in a recent case settled for $346 million. *See In re: IndyMac Mortgage Backed Sec. Litig.*, 2015 U.S. LEXIS 37052 (SDNY, March 24, 2015). In that case, which lasted longer than this one, Judge Kaplan explained that for recoveries in excess of $175 million, the mean fee is 12% of the settlement amount, and

the median is 10%. *Id*. at *12. In particular, with regard to the risk of litigation factor, Judge Kaplan found that "securities cases like this practically always settle, meaning that the risk of total non-recovery was almost non-existent." *Id*. at *17.

Judge Kaplan also found that the claimed lodestar was inflated by excessive hours devoted to discovery, which amounted to 60% of all hours spent on the case. He therefore reduced all discovery hours by 25%, and then awarded a modest multiplier of 1.33, for an 8.2% fee award. *Id*. at *22.

Like in *IndyMac*, a vast portion of the claimed lodestar in this case was generated by the review of 23 million pages of documents by project and staff attorneys. For example, of the 120,000 hours claimed by lead counsel Robbins Geller, a full 59,234 hours were generated by Staff and Project Attorneys, or almost 50%.[1] Of the $43.3 million of lodestar claimed by that firm, document review accounts for 31% of it.

For other firms the percentages are even higher. For instance, for Motley Rice, associates, project attorneys and support staff accounted for more than 12,000 of the total 12,443 hours generated, or 96% of the total hours, and $5 million of the $5,339,236 lodestar claimed by that firm, or 93%!

In *In re Weatherford Intl. Sec. Litig.*, 2015 U.S. Dist. LEXIS 3370 (SDNY January 5, 2015), Judge Kaplan questioned the billing rates of staff and project attorneys, noting that those rates were "more than 600 percent of their direct cost to the firm, and the Court has been provided with nothing persuasive from which to conclude that this sort of markup is reasonable." *Id*. at *5. In *IndyMac*, Judge Kaplan cut class counsel's

---

[1] Objectors included only staff and project attorneys as identified on *Exhibit A* of the Rosen Declaration because these attorneys typically perform almost exclusively document review in securities cases.

discovery-related lodestar by 25% across the board to account for "surplusage." 2015 U.S. Dist. LEXIS 37052 at *22.

Here, it appears that the use of project and staff attorneys to review the more than 23 million pages of documents produced in this case was widespread across all of the firms. Robbins Geller billed its project and staff attorneys out at rates of $200 to $300, when those attorneys were paid no more than $30 to $50 per hour, a markup of 400 to 600 percent. In light of the rampant use of contract attorneys to inflate the collective lodestar in this case, this Court should likewise adjust the claimed lodestar downward to account for this padding and the built-in profit margins already reflected in the claimed $59 million lodestar. Cutting the lodestar generated by the Motley Rice and Geller Rudman document review attorneys by 50% would reduce the overall lodestar by approximately $10 million.[2] Thus, for purposes of a lodestar cross-check, this Court should use the figure of $49 million as more reflective of the true value of the services provided by Class Counsel to the class.

The Second Circuit has announced a preference for "moderation" in the awarding of common fund attorney's fees in a class action context. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 57 (2d Cir. 2000). Windfalls to class counsel are to be avoided. *Id*. at 49. Lodestar cross-checks are "encouraged." *Id.* at 50. As recoveries go up, fee percentages decline. *Id*. at 52. This Court recognized this principle in *In re Philip Servs. Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 101427 (SDNY 2007), in which it noted

---

[2] Even at this rate of markdown, the resulting rates of $100 to $150 per hour still represent a profit margin of 100 to 500 percent on all contract attorney time related to document review.

3

that for settlements in the range of $50-$75 million, courts traditionally award fees in the 11% to 19% range, citing to *Goldberger*. *Id*. at *15.

Percentage fees in securities and antitrust class actions post-*Goldberger* have tended towards the moderation exhorted by that case, ranging from 4% to 16%. *See In re: IndyMac Mortgage Backed Sec. Litig.*, 2015 U.S. LEXIS 37052 (SDNY, March 24, 2015)(awarding 8.2% fee out of $346 million settlement); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005)(awarding 4% fee out of $300 million settlement); *In re Elan Securities Litig.*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005)( 12% of $75 million settlement); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80 (E.D.N.Y. 2002)( 12% fee that resulted in multiplier of 1.3); *In re Interpublic Sec. Litig.*, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. 2004)( 12% of $77 million); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)( 16% of $245 million settlement as fees in securities action, and 15% of $78 million settlement fund in ERISA action); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (awarding fee of 6.5%); *Klein ex rel SICOR Inc. v. Salvi*, 2004 US Dist LEXIS 4844 (S.D.N.Y. 2004)(awarding a fee of 8% of the settlement, representing 1.45 times lodestar).

"The first, and most important … factor is the risk in pursuing the case." *Bristol-Myers*, 361 F. Supp. 2d at 233 (*citing Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000). As the Second Circuit held in *Goldberger*, and as Judge Kaplan recently reiterated in *IndyMac*, "securities cases like this practically always settle, meaning that the risk of total non-recovery was almost non-existent." *IndyMac* at *17.

4

As Judge Kaplan noted in *IndyMac*, courts within this Circuit look to the Eisenberg-Miller study for guidance on the market rate for percentage fees in megafund settlements of greater than $100 million. *Id*. at *13. The range found by Judge Kaplan for recoveries of $175 million or higher -- 10 to 12% -- should be applied in this case. *Id*. at *12. The settlement in this case is even larger than the one in *IndyMac*, where Judge Kaplan awarded just 8.2%. However, in this case, where Class Counsel has generated a larger lodestar relative to the recovery, an award at the higher end of the market rate would be appropriate.

A fee award of 12%, or $48 million, would fully compensate Class Counsel for 100% of their appropriately discounted lodestar. This Court found in *Philip Servs.* that the fee range for cases settled in the amount of $75 million was 11% to 19%. 2007 U.S. Dist. LEXIS 101427 at *15. Here, the settlement is more than five times as large as the one in *Philip Servs.*, yet Class Counsel have requested a fee *higher than the one* this Court awarded in that earlier case.

Class Counsel have also requested a higher multiplier than the one this Court awarded in *Philip Servs.*, despite the fact that this case was shorter in duration and did not pose the same amount of risk. In *Philip Servs.*, the case was dismissed in favor of litigation in Canada, and the plaintiffs were forced to win on appeal to salvage the case. Furthermore, the issuer went bankrupt during the proceedings. *Id*. at *14. Against this backdrop of risk, this Court awarded a multiplier of 1.37. *Id*. at *17.

Here, Class Counsel have requested a multiplier of 1.91 of their appropriately reduced lodestar. This case did not pose a fraction of the risk that *Philip Servs.* did, and,

as Judge Kaplan has observed, almost all securities cases settle. Indeed, some of the only risks faced by securities plaintiffs are the ones encountered in *Philip Servs.* – the bankruptcy of the defendant, lack of jurisdiction, and improper venue. None of those is present here.

Class Counsel should not receive a multiplier here as high as the one this Court awarded in *Philip Servs.*, not only because they faced less risk, but also because their recovery is limited by "a proper proportion in relation to the total benefit produced to the class for whose benefit the services were rendered." *Id*. at *16. While normally one might propose a modest multiplier of 1.2 or 1.1 to recognize the delay in payment, here, the size of the recovery dictates that the fee not exceed the high end of the permissible range of 10-12%. Consistent with this Court's decision in *Philip Servs.*, Class Counsel should receive a 12% fee, even though it results in no multiplier to Class Counsel's reasonable lodestar.[3]

The Second Circuit recently announced the general principle, albeit in a different context, that attorney's fees should be set at "the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 493 F.3d 110 (2d Cir. 2007). In *Arbor Hill* (a case on which retired Justice Sandra Day O'Connor sat by designation), the Second Circuit emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *id*. at 118, and that "the district court (unfortunately) bears the burden of disciplining the market,

---

[3] This is not the same as saying that the fee represents a "loss" to Class Counsel, for that would be inaccurate. As noted above, reducing document review lodestar by 50% still leaves Class Counsel with a "profit" or markup of 100 to 300% on contract attorney time, before the application of any multiplier. This in itself represents a more than adequate "reward factor" for this low risk case, especially when 1/3 of the lodestar was generated through discovery tasks.

stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id*. at 112. The proposition – that a reasonable paying client wishes to pay the least amount necessary – is true whether the fees are paid by the defendant pursuant to a fee-shifting statute, or by the plaintiff class pursuant to the common fund doctrine. Minimization of attorney's fees is the goal of every client who has not been promised a share of the attorney's fees.

When a district court is evaluating a request for attorney's fees in a common fund case, it should endeavor to determine that point at which the class is no longer being unjustly enriched, without regard to the amount that class counsel have requested. As observed recently by another district court, "after the settlement is completed … the attorneys may be inclined to ask for as much as they think the Lead Plaintiff will agree to, regardless of the initial risk, amount of work, or benefit to the class." *In re: Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). In fulfilling its duty to independently set the fee, the court must explain why an attorney's fee that is less than the one requested by class counsel is inadequate to completely disgorge the class of any unjust enrichment.

## CONCLUSION

For the foregoing reasons, the Court should award Class Counsel a reasonable attorney's fee of no more than 12% of the settlement fund, after discounting Class

Counsel's project attorney/staff attorney/support staff lodestar by 50% to account for the excessive use of contract attorneys to review the 23 million pages of documents produced in this case.

                                        Respectfully submitted,
                                        Scott W. Browne,
                                        By his attorneys,
                                        */s/ Vincent S. Verdiramo*
VINCENT S. VERDIRAMO, JR.
                        VERDIRAMO & VERDIRAMO ESQS, PA
                                        3163 Kennedy Blvd.
                                        Jersey City NJ 07306
                                        (201) 798-7082
                                        (201) 798-4627 (f)
                                        Verdiramo@aol.com

                                        John J. Pentz, Esq.
                                        19 Widow Rites Lane
                                        Sudbury, MA 01776
                                        Phone: (978) 261-5725
                                        Fax: (978) 405-5161
                                        jjpentz3@gmail.com

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on May 18, 2015, and that as a result electronic notice of the filing was served upon all attorneys of record.

                                          */s/ Vincent S. Verdiramo*
                                          Vincent S. Verdiramo