UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— x
MARY K. JONES, Individually and on  :    Civil Action No. 1:10-cv-03864-AKH
Behalf of All Others Similarly Situated, :
                                     :    <u>CLASS ACTION</u>
                 Plaintiff : 
                                       :    PLAINTIFFS' REPLY MEMORANDUM IN
     vs.                           :    FURTHER SUPPORT OF MOTION FOR
                                         :    FINAL APPROVAL OF CLASS ACTION
PFIZER INC., et al.,                 :    SETTLEMENT AND PLAN OF
                                         :    ALLOCATION AND AWARD OF
                Defendants. :    ATTORNEYS' FEES AND EXPENSES AND
—————————————————————————— x    REIMBURSEMENT OF PLAINTIFFS'
                                            EXPENSES PURSUANT TO 15 U.S.C. §78u-
                                            4(a)(4)

1033773_1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................1

II. THE COURT SHOULD OVERRULE THE OBJECTION ...............................4

    A. Lead Counsel's Requested Fee Is Reasonable under *Goldberger* ..........................4

    B. The Objection's Portrayal of This Action as "Low Risk" Is Absurd ....................6

    C. Lead Counsel's Personnel, Hours and Rates Are Reasonable ................................9

III. CLASS MEMBERS' TRANSACTION INFORMATION IS NECESSARY TO PROCESS CLAIMS ...........................................................................13

IV. CONCLUSION ................................................................................14

1033773_1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Barnes v. Fleetboston Fin. Corp.*,
   No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072
   (D. Mass. Aug. 22, 2006)..................................................................................2

*Carlson v. Xerox Corp.*,
   596 F. Supp. 2d 400 (D. Conn.),
   *aff'd*, 355 F. App'x 523 (2d Cir. 2009)..............................................................4

*Gabriel Tech. Corp. v. Qualcomm Inc.*,
   No. 08cv1992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105
   (S.D. Cal. Feb. 1, 2013) ..................................................................................13

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   No. 13-3532, 2015 U.S. App. LEXIS 8424
   (7th Cir. May 21, 2015) ....................................................................................8

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)....................................................................3, 4, 5, 14

*In re Acclaim Entm't, Inc. Sec. Litig.*,
   No. 2:03-CV-1270 (JS) (ETB), 2007 U.S. Dist. LEXIS 98851
   (E.D.N.Y. Oct. 2, 2007) ..................................................................................12

*In re AOL Time Warner ERISA Litig.*,
   No. 02 Cv. 8853 (SWK), 2007 U.S. Dist. LEXIS 99769
   (S.D.N.Y. Nov. 28, 2007) ..............................................................................2, 6

*In re AOL Time Warner S'holder Derivative Litig.*,
   No. 02 Civ. 6302 (CM), 2010 U.S. Dist. LEXIS 124372
   (S.D.N.Y. Feb. 1, 2010) ..................................................................................13

*In re Bristol-Myers Squibb Sec. Litig.*,
   361 F. Supp. 2d 229 (S.D.N.Y. 2005)................................................................6

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)..............................................................12

*In re Comverse Tech., Inc.*,
   No. 06-CV-1825 (NGG) (RER), 2010 U.S. Dist. LEXIS 63342
   (E.D.N.Y. June 24, 2010) ................................................................................12

*In re DHB Indus., Inc. Class Action Litig.*,
No. 2:05-cv-04296-JS-ETB, slip op. (E.D.N.Y. July 21, 2008) ............................................12

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005) ..................................................................................6

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................................................13

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964
(E.D.N.Y. Sept. 18, 2007) ..................................................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................1, 6

*In re IndyMac Mortgage-Backed Sec. Litig.*,
No. 09-cv-4583 (LAK), 2015 U.S. Dist. LEXIS 37052
(S.D.N.Y. Mar. 24, 2015) ...............................................................................................3, 4, 5

*In re Initial Pub. Offering Sec. Litig.*,
721 F. Supp. 2d 210 (S.D.N.Y 2010) ..................................................................................2

*In re Interpublic Sec. Litig.*,
No. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429
(S.D.N.Y. Oct. 27, 2004) ......................................................................................................6

*In re OSI Pharms., Inc. Sec. Litig.*,
No. 2:04-CV-05505-JS-WDW, slip op. (E.D.N.Y. Aug. 22, 2008) .......................................12

*In re Pfizer Inc. Sec. Litig.*,
No. 4-CV-9866-LTS-HBP, 2014 U.S. Dist. LEXIS 92951
(S.D.N.Y. July 8, 2014) .........................................................................................................8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) ......................................................................................2

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................................12

*In re Tyco Int'l, Ltd.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................................12

1033773_1

*In re UnitedHealth Group Inc. PSLRA Litig.*,
  643 F. Supp. 2d 1107 (D. Minn. 2009)..............................................................2, 3

*In re Visa Check/MasterMoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003),
  *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)..................................................................................6

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
  No. 2:06-CV-00225-PMP-PAL, 2010 U.S. Dist. LEXIS 21466
  (D. Nev. Mar. 8, 2010).......................................................................................2

*Janus Capital Group, Inc. v. First Derivative Traders*,
  __ U.S. __, 131 S. Ct. 2296 (2011)....................................................................8

*Shelton v. Am. Motors Corp.*,
  805 F.2d 1323 (8th Cir. 1986) ...........................................................................9

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k..................................................................................................................5, 6
  §77l(a)(2) ........................................................................................................5, 6
  §77o....................................................................................................................5
  §78j(b).................................................................................................................6

17 C.F.R.
  §240.10b-5 ..........................................................................................................7

## SECONDARY AUTHORITIES

Dr. Renzo Comolli & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review*
  (NERA Jan. 20, 2015)........................................................................................6

Plaintiffs and their counsel respectfully submit this reply memorandum in further support of the motion for final approval of the proposed settlement (the "Settlement") of this class action and the proposed Plan of Allocation and award of attorneys' fees and expenses and reimbursement of Plaintiffs' expenses. Dkt. No. 482.[1]

## I. INTRODUCTION

The Class' response to all aspects of the Settlement has been overwhelmingly positive. Copies of the Court-approved Notice of Proposed Settlement of Class Action were mailed to over 3.0 million potential Class Members and nominees,[2] and the deadline to file objections was May 21, 2015. Not one Class Member has objected to the $400 million Settlement. The absence of any meaningful objection to the Settlement is powerful confirmation that the Class believes the Settlement is an outstanding result. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457, 458 (S.D.N.Y. 2004) (six objections out of a class of approximately one million was "vanishingly small" and "constitutes a ringing endorsement of the settlement by class members").

The Class' reaction to Lead Counsel's fee request has also been overwhelmingly positive and is likewise strong evidence that the Class believes that the requested fee is fair and reasonable. Indeed, no institutional Class Members objected and only one individual Class Member – constituting 0.00003% of the potential Class – filed an objection to the fee request.[3] That lone objection – that Lead Counsel should be limited to no more than a 12% fee – fails on numerous levels.

---

[1]   Unless otherwise noted, all capitalized terms used herein are defined in the Stipulation of Settlement ("Stipulation"), dated as of February 8, 2015. Dkt. No. 468.

[2]   *See* Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting (Dkt. No. 486), ¶10, and the Supplemental Declaration of Carole K. Sylvester Regarding Further Mailing of the Notice of Proposed Settlement of Class Action and Requests for Exclusion Received, ¶¶2-3, submitted herewith.

[3]   *See* Objection to Request for Attorneys' Fees and Notice of Intention to Appear (the "Objection"). Dkt. No. 494.

1033773_1

To start, counsel for the objector, John J. Pentz and Vincent S. Verdiramo, are serial objectors. In *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210 (S.D.N.Y 2010), Judge Scheindlin concluded that there was sufficient evidence to determine that Pentz was a "serial objector" and "engaged in bad faith and vexatious conduct." *Id.* at 215. The court in *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383 (D. Md. 2006), also described Pentz as "a professional and generally unsuccessful objector . . . ." *Id.* at 386. The *Royal Ahold* court found that Pentz's "objection was not well reasoned and was not helpful." *Id.* A number of other courts have similarly failed to find value in Pentz's routine, boilerplate objections. *See In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 U.S. Dist. LEXIS 21466, at *17 (D. Nev. Mar. 8, 2010) ("Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class."); *Barnes v. Fleetboston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *4 (D. Mass. Aug. 22, 2006) ("Feldman and her attorney, John Pentz (who is also her son-in-law) are professional objectors . . . ."); *In re AOL Time Warner ERISA Litig.*, No. 02 Cv. 8853 (SWK), 2007 U.S. Dist. LEXIS 99769, at *10 (S.D.N.Y. Nov. 28, 2007) ("the [o]bjection contained arguments counterproductive to the resolution of the litigation").[4]

The objecting Class Member Scott W. Browne, himself a lawyer, also has a history as counsel asserting frivolous objections. In *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107 (D. Minn. 2009), for instance, Browne's efforts on behalf of an objector were found to

---

[4]   "[O]bjectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements." *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3; *see also Initial Pub. Offering*, 721 F. Supp. 2d at 215 (Sheindlin, J.) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disputing settlements in the hopes of extorting a greater share of the settlement for themselves and their clients.").

1033773_1

"have conferred no benefit whatsoever on the class or on the Court." *Id.* at 1109. Likewise, Browne's fee request was denied as "laughable" and "outlandish." *Id.* ("Objectors' Counsel are entitled to an award equal to their contribution . . . nothing.") *Id.*

The Objection fails on a substantive level as well as it largely ignores the Second Circuit's guidance in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and Lead Counsel's extensive analysis of that guidance as it applies to this case, and erroneously likens this action to *In re IndyMac Mortgage-Backed Sec. Litig.*, No. 09-cv-4583 (LAK), 2015 U.S. Dist. LEXIS 37052 (S.D.N.Y. Mar. 24, 2015), as "low risk." In fact, the requested fee is well supported by the *Goldberger* factors as discussed at length in Lead Counsel's moving papers. Moreover, unlike the Securities Act of 1933 claims litigated in *IndyMac*, which required the plaintiffs to neither plead nor prove the elements of scienter, causation or reliance, the risks in this case were manifest at every stage, not the least of which was the risk associated with establishing loss causation and damages. *See* Memorandum of Law in Support of Motion for Award of Attorneys' Fees and Expenses and Reimbursement of the Plaintiffs' Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) (Dkt. No. 484) ("Fee Brief") at 1-2, 14-18; Declaration of Henry Rosen in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for Award of Attorneys' Fees and Expenses and Reimbursement of the Plaintiffs' Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) (Dkt. No. 485) ("Rosen Decl."), ¶¶118-131.

The Objection also ignores the ample precedent establishing the requested fee of 23.5% as well within the range of fees that courts in this District, this Circuit and around the country have found reasonable in comparably sized cases, as well as Lead Counsel's diligent efforts litigating this complex and risky action on a contingent basis for over four and a half years before culminating in a very good settlement for the Class just days before the trial.

Finally, the Objection is, in large part, based on the erroneous premise that Lead Counsel's billing rates and hours billed for its staff and project attorneys are excessive and should be reduced. Objection at 2-3. In fact, the review of over 23 million pages of documents was critical to the result achieved for the Class, and the billing rates for Lead Counsel's staff and project attorneys are consistent with, if not well below, rates approved in this Circuit. Accordingly, the Court should overrule the Objection in its entirety and approve the Settlement, Plan of Allocation, and Lead Counsel's fee request.

## II.     THE COURT SHOULD OVERRULE THE OBJECTION

### A.     Lead Counsel's Requested Fee Is Reasonable under *Goldberger*

In contending that Lead Counsel's requested fee of 23.5% is excessive, the Objection fails to address much of the case law referenced in Lead Counsel's Fee Brief (at 1-2, 5). In particular, the Objection largely ignores the Second Circuit's guidance in *Goldberger* by proffering the fee award in *IndyMac* as a benchmark to be relied upon in this case.

In *Goldberger*, the Second Circuit has expressly rejected the notion that a court should determine a fee award by applying a "benchmark" of fees awarded in supposedly "similar" cases. *See Goldberger*, 209 F.3d at 51-53. Rather, the Second Circuit has instructed courts to consider carefully a range of case-specific factors, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* at 50; *see also Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 411 (D. Conn.), *aff'd*, 355 F. App'x 523 (2d Cir. 2009) ("There was also an objection to the effect that the attorneys' fee award should be limited to a 15% benchmark. However, it is clear that under *Goldberger*, benchmarks should not be used. Each case must be given individualized consideration.").

- 4 -

Accordingly, courts in the Second Circuit do not award percentage fees in a vacuum, but on a case-by-case basis. Lead Counsel's moving papers carefully analyzed the requested fee under each of the *Goldberger* factors which strongly support the requested fee. *See* Fee Brief at 9-21. The Objection fails to address, much less rebut, this analysis.

Furthermore, the Objection primarily relies on Judge Kaplan's opinion in *IndyMac*, a recently settled securities class action which awarded a lower fee than Lead Counsel is requesting here. *See* Objection at 1-2. The *Indymac* decision is easily distinguished as that case was brought under §§11, 12(a)(2), and 15 of the Securities Act of 1933 – none of which require proof of scienter, causation or reliance, unlike the claims asserted here. In addition, there were only 15 depositions taken in *Indymac*, and the defendants produced relatively few documents which "contained much if anything that mattered to the case." *IndyMac*, 2015 U.S. Dist. LEXIS 37052, at *21. Indeed, "many of the documents consisted of duplicates produced by similarly situated defendants (especially the underwriters) as well as nearly identical offering documents and other voluminous materials . . . ." *Id.* Here, all of the documents produced by Defendants or third-parties related to the off-label promotion of Bextra, Geodon, Zyvox and Lyrica and/or the Department of Justice investigation relating to the off-label promotion. Only after reviewing over 23 million pages of documents did Plaintiffs mark nearly 1,000 exhibits during depositions, cite to approximately 600 exhibits as part of their summary judgment motion and opposition, and identify nearly 700 exhibits for use at trial.

The Objection's focus on *IndyMac* is also misplaced because in securities cases involving settlements of similar magnitude, as pointed out in the Fee Brief (at 7-9), courts regularly award fees in line with the percentage requested here. While the objector cites other cases in which courts have applied a lower percentage (Objection at 4), most of those cases involve multipliers which far exceed

- 5 -

the 1.58 multiplier endorsed by the Lead Plaintiff here.[5] Further, the most recently published annual

report from National Economic Research Associates, Inc., *Recent Trends in Securities Class Action*

*Litigation: 2014 Full-Year Review*, states that for settlements between $100 and $500 million, the

**median** percentage of the settlement awarded to attorneys' fees was 22% for the years 1996-2014

and 18% for the years 2012-2014.[6] These are median figures for all the cases, whether average or

exemplary, that settled in this range, regardless of the stage of the proceedings when the cases

settled. This case, settled on the eve of trial for a significant amount, and following over four years

of hard fought litigation, would certainly qualify as exemplary and therefore merits a fee in excess of

the median.

Based on the magnitude of the Settlement, the tremendous risks, the length and complexity of

the Litigation and the hours expended, the requested fee of 23.5% is reasonable.

### B.    The Objection's Portrayal of This Action as "Low Risk" Is Absurd

Once again ignoring the discussion in Lead Counsel's Fee Brief, the Objection falsely claims

that Lead Counsel faced little or no risk in prosecuting the Litigation, repeatedly referencing

*Indymac*. *See* Objection at 2, 4-6. Whereas the §§11 and 12(a)(2) claims in *Indymac* do not require

proof of scienter, causation or reliance, the Plaintiffs' claims under §10(b) of the Securities

---

[5]    *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005) (awarding 2.29 lodestar multiplier); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding 3.47 lodestar multiplier); *In re Interpublic Sec. Litig.*, No. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *36-*37 (S.D.N.Y. Oct. 27, 2004) (awarding 3.96 lodestar multiplier); *Global Crossing*, 225 F.R.D. at 468 (awarding 2.16 lodestar multiplier); *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (awarding 3.5 lodestar multiplier); *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005). The objector's argument that Lead Counsel's requested multiplier of 1.91 is too high fails on at least two levels. First, the multiplier is not 1.91, but rather 1.58. Second, and even more tellingly, the argument is contradicted by Pentz's own fee request that Pentz's lodestar be enhanced by a multiplier of two in the *In re AOL Time Warner* settlement. *AOL Time Warner*, 2007 U.S. Dist. LEXIS 99769, at *6.

[6]    Dr. Renzo Comolli & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review*, at 34 (NERA Jan. 20, 2015).

- 6 -

Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, could have been defeated by a failure to establish any one of those elements.

Moreover, the Objection completely ignores the significant risks, specific to this case, undertaken by Lead Counsel in aggressively litigating this case for over four years, and mistakenly limits "some of the only risks" possibly faced by plaintiffs to the bankruptcy of a defendant and issues of jurisdiction and venue. Objection at 6. Chief among the risks here was establishing loss causation and damage due to the timing of Pfizer's announcement of its 2008 earnings guidance and the Wyeth merger in tandem with the announcement of the Department of Justice ("DOJ") fine. *See* Fee Brief at 14-16. Indeed, Defendants challenged loss causation and damages at every stage of the Litigation, and this would have been their touchstone defense at trial. The risk of establishing loss causation was in addition to the significant risks Plaintiffs faced in establishing that Defendants' statements were false and misleading, material and made with the requisite scienter. Establishing scienter was particularly challenging as Defendants claimed to have relied on the advice of Pfizer's counsel and outside auditors. *Id.* at 18. Defendants vigorously contested the elements of falsity, materiality and scienter at the pleading level and at summary judgment and would have done so at trial. Simply stated, nothing in this case was "low risk," as Lead Counsel faced a host of complicated legal issues that they were not guaranteed to prevail on in Defendants' motions to dismiss, opposition to class certification, motions for summary judgment, *Daubert* motions, *in limine* motions, or at trial. *See* Stipulation at 2-3; Fee Brief at 1-2, 14-18.

In fact, at the time this case settled, seven motions for summary judgment and 23 motions *in limine* and *Daubert* challenges to Plaintiffs' experts were still pending. This Court explicitly told the parties that, with the exception of a few of these motions, they could be reasserted at trial. This case

involved extremely complicated issues regarding liability, causation and damages, any one of which, if the jury accepted Defendants' view of the case, would have resulted in zero recovery for the Class.

Risks in securities class actions are real. For example, the *Household International* securities class action was filed in 2002. It was tried to a jury in 2009 by Lead Counsel here. The Seventh Circuit recently reversed the $2.46 billion jury verdict, remanding the case for a new trial on issues relating to loss causation and whether certain defendants made statements under *Janus Capital Group, Inc. v. First Derivative Traders*, __ U.S. __, 131 S. Ct. 2296 (2011). *Glickenhaus & Co. v. Household Int'l, Inc.*, No. 13-3532, 2015 U.S. App. LEXIS 8424 (7th Cir. May 21, 2015). In another securities class action pending against Pfizer alleging §10(b) claims, Judge Swain granted defendants' motion for summary judgment and dismissed all of plaintiffs' claims shortly before trial, after the court had granted defendants' *Daubert* motion precluding the testimony of plaintiffs' damages expert. *See In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP, 2014 U.S. Dist. LEXIS 92951, at *18-*19 (S.D.N.Y. July 8, 2014) (granting summary judgment as a matter of law because "[w]ithout a loss causation expert, [p]laintiffs cannot prove either" loss causation or damages). In short, any claim that these cases are a lay-up is unfounded. Lead Counsel took on real risks and pushed this case to the limit before achieving a very good result – that even the lone serial objector is too timid to challenge.

The Objection disregards these facts, confirming how easy it is to claim in hindsight that this was a case which had no risk. In reality, the objector and his counsel chose to watch the Litigation from the sidelines for the past four and a half years, while Lead Counsel assumed all the risks and advanced expenses of over $7.6 million required to fund the Litigation. The objector's counsel has been able to find class members with whom to file objections to securities class actions since at least

2001, yet has not chosen to litigate a single one over the past 14 years – despite these cases purportedly being "low risk."

As set forth in Lead Counsel's Fee Brief and the Rosen Declaration (Dkt. Nos. 484, 485), Lead Counsel were diligent in prosecuting this action for over four and a half years with no assurance of payment or even recovery of their expenses. The risk of non-payment was undeniably extreme in this case because until Class Representative Mary K. Jones stepped forward and had Lead Counsel file the initial complaint, nearly 16 months after the January 26, 2009 revelation of the DOJ fine, no other plaintiff or law firm filed this case due to the complex loss causation issues herein. *See* Fee Brief at 15-16. For these reasons, this Court should flatly reject the notion that this was a "low risk" case.

Accordingly, when the numerous risks specific to this case that were undertaken by Lead Counsel in litigating this complex action are considered, the requested fee of 23.5% is indeed reasonable.

### C.     Lead Counsel's Personnel, Hours and Rates Are Reasonable

The Objection also attempts to reduce Plaintiffs' Counsel's lodestar through pure speculation that Plaintiffs' Counsel devoted excessive hours to document review. *See* Objection at 2-3. Specifically, the Objection claims – based on nothing more than the hours worked on the case by certain attorneys – that "[o]f the $43.3 million of lodestar claimed by [Robbins Geller], document review accounts for 31% of it," and that Lead Counsel used staff and project attorneys "to inflate the collective lodestar." *Id*. The objector's accusations are not only false, they are outrageous. As even objector's counsel concedes, Lead Counsel was charged with reviewing over 23 million pages of documents. Perhaps counsel for the lone objector (out of over 3.0 million potential claimants) makes these baseless assertions out of sheer ignorance as they have never handled a case of this magnitude or complexity. Lead Counsel has. Reviewing the documents is critical to that process. *See Shelton*

*v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) ("[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research"). The documents are the foundation on which a compelling case is built, as it is rare indeed to have a defendant's CEO or CFO get on the stand and acknowledge his or her fraudulent conduct. First, a good lawyer identifies the relevant documents. In order to separate the wheat from the chaff, one must analyze the relevant documents and slowly build a case around the most material documents. Only then can one select the documents that will be used at depositions, at summary judgment and at trial.

Equally important, only after documents are reviewed and analyzed can missing documents be identified. Following up with defendants and third parties is no easy task; in this case, Plaintiffs' Counsel filed over a dozen motions to compel. Many of these motions resulted in very important documents being produced and would not have been possible without the thorough document review and analysis completed in this case. In fact, Plaintiffs' Counsel filed a Freedom of Information Act ("FOIA") request to obtain documents relating to the government's Pfizer investigation. When the government refused to produce responsive documents, Plaintiffs' Counsel filed an action for injunctive relief in the District of Columbia seeking the expedited processing and release of documents responsive to the FOIA request. Ultimately, the DOJ was forced to produce documents relating to its negotiations with Pfizer regarding the DOJ Off-Label Investigation. The documents were critical, had never been produced by Pfizer, and were only obtained because Plaintiffs' document review showed they were missing and Plaintiffs' Counsel showed their tenacity and creativity to get them from another source.

In short, attorneys who carefully and methodically perform these tasks well distinguish themselves and achieve better results, like the Settlement at issue here with which no Class Member

takes issue. Plaintiffs' Counsel's document review and analysis was necessary and significantly contributed to this Settlement.[7]

Furthermore, this Objection makes no practical sense, since Lead Counsel bears all the financial risk, if the Litigation is unsuccessful. There is simply no incentive to spend "excessive" time on tasks that are unnecessary.

Finally, document review hardly represents the entirety of Lead Counsel's body of work litigating this case. Approximately half of the work product from the staff and project attorneys consisted of pure document review and analysis, which was needed to accomplish the other half of their projects relating to deposition preparation, expert discovery, summary judgment and trial preparation.[8]

Nor are Lead Counsel's billing rates for their project and staff attorneys excessive. *See* Objection at 2-3. First, to the extent Lead Counsel used project attorneys, their rates are limited to

---

[7] As for the objector's issue with the lodestar submitted by Motley Rice LLC ("Motley Rice"), after Robbins Geller was appointed Lead Counsel on November 4, 2010, the Court ruled on a motion for reconsideration filed by Motley Rice and Abraham, Fruchter & Twersky, LLP ("Abraham Fruchter"). On December 9, 2010, the Court denied the motion for reconsideration and suggested that Robbins Geller incorporate Motley Rice and Abraham Fruchter into the litigation group of attorneys prosecuting the case, if it could be done efficiently. Robbins Geller followed this instruction and took special care to ensure that the work performed by Motley Rice did not result in the duplication of effort or cause undue expense to the Class. To this end, Motley Rice as well as Abraham Fruchter were assigned tasks related to document review and analysis, assisting in discovery-related motion practice, deposition preparation and expert discovery that were essential to the successful prosecution of this Litigation. Lead Counsel believe that the hours expended by these firms were necessary to the case and should be incorporated into the total lodestar.

[8] Prior to January 11, 2013, the staff and project attorneys were primarily tasked with document review and analysis. Beginning on January 12, 2013 and until the case settled, the staff and project attorneys engaged in many other tasks beyond pure document review and analysis, including assisting in deposition preparation, drafting numerous motions to compel, preparing expert and trial witness files, working with Lead Counsel's partners and associates to take and defend depositions, preparing Plaintiffs' oppositions to summary judgment and related evidentiary motions, and preparing for trial.

- 11 -

$200,[9] consistent with *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 398-99 (S.D.N.Y. 2013).

Second, these hourly rates are plainly reasonable when compared to rates charged by similar New York, or other securities litigation specialist firms, and have been routinely approved as reasonable by courts in the Second Circuit. *See, e.g., In re Acclaim Entm't, Inc. Sec. Litig.*, No. 2:03-CV-1270 (JS) (ETB), 2007 U.S. Dist. LEXIS 98851 (E.D.N.Y. Oct. 2, 2007); *In re OSI Pharms., Inc. Sec. Litig.*, No. 2:04-CV-05505-JS-WDW, slip op. (E.D.N.Y. Aug. 22, 2008); *In re DHB Indus., Inc. Class Action Litig.*, No. 2:05-cv-04296-JS-ETB, slip op. (E.D.N.Y. July 21, 2008). Indeed, such rates have been routinely accepted in performing a lodestar cross-check in this Circuit. *See, e.g., In re Comverse Tech., Inc.*, No. 06-CV-1825 (NGG) (RER), 2010 U.S. Dist. LEXIS 63342, at *13 (E.D.N.Y. June 24, 2010) (hourly rates from $125 to $880 for attorneys and support staff were "not extraordinary for top New York law firms"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589-90 (S.D.N.Y. 2008) (noting that seven years ago in 2008, hourly rates of $700-$750 for partners and $300-$550 for associates in 2008 were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *54 (E.D.N.Y. Sept. 18, 2007) (attorney rates from $325 to $725 in 2007 were "not out of line with the rates of major law firms engaging in [securities class action] litigation"). Lead Counsel's billing rates for its staff and project attorneys are thus reasonable, and the Objection on this ground should be overruled.[10]

---

[9] Declaration of Henry Rosen Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses (Dkt. No. 489), Exhibit A.

[10] In granting attorneys' fees for document review and analysis, courts have explicitly recognized that document review by contract attorneys constitutes legal work. *See, e.g., In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 272 (D.N.H. 2007) (awarding attorneys' fees over objection because "[a]n attorney, regardless of whether she is an associate with steady employment or a contract attorney whose job ends upon completion of a particular document review project, is still an attorney");

Notably, nothing in the record indicates that either the objector or his counsel has any experience whatsoever in litigating complex, securities class action cases. Accordingly, neither the objector nor his counsel have any basis to opine on Lead Counsel's decisions relating to its litigation strategy, use of personnel or hourly rates.

## III. CLASS MEMBERS' TRANSACTION INFORMATION IS NECESSARY TO PROCESS CLAIMS

Lead Counsel is in receipt of two letters addressed to the Court, an undated letter from Robert R. Hendricks and an April 22, 2015 letter from Peter Stekr, both of which complain about having to provide the details of their transactions in Pfizer common stock. While it may be inconvenient for Class Members to retrieve this information, it is necessary to the processing of their claims. This is because the transfer records provided by the Company to the Claims Administrator identify the individuals and entities that own their stock and have registered the shares in their own name, but they do not identify the individuals or entities who hold their Pfizer shares in the name of their broker or other nominee. Nor do the transfer records identify when or at what price those shares were purchased and/or sold. Likewise, nominees identify beneficial owners; they do not provide the Claims Administrator with transactional information. Individualized information regarding the date and price of Class Members' stock transactions is necessary to calculate Class Members' damages and to properly allocate the Settlement funds. This claims process is consistent with the claims process utilized in hundreds of other securities class action settlements and is

---

*Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08cv1992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105, at *32-*34 (S.D. Cal. Feb. 1, 2013) (awarding over $391,000 in attorneys' fees for document review performed by contract attorneys); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 785 (S.D. Tex. 2008) (prevailing party can recover fees for contract attorneys' services at market rates); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2010 U.S. Dist. LEXIS 124372, at *75-*78 (S.D.N.Y. Feb. 1, 2010) (awarding and multiplying, per a lodestar formula, the fees' charged for temporary contract attorneys' document review).

certainly not designed to discourage or prohibit any shareholders from participating in the Settlement.[11]

## IV.     CONCLUSION

Because the Objection mischaracterizes the facts of this case, fails to properly apply the *Goldberger* factors in light of the relevant facts, and disregards essentially all of the facts and case law authorities cited in Lead Counsel's Fee Brief, the Court should overrule the Objection in its entirety. For the reasons set forth herein and in Lead Counsel's opening memoranda, the Court should approve the Settlement, Plan of Allocation and fee request as fair, reasonable and adequate.

DATED:  June 5, 2015                       Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
MICHAEL J. DOWD
HENRY ROSEN
TRIG R. SMITH
JASON A. FORGE
RYAN A. LLORENS
IVY T. NGO

                s/ Michael J. Dowd
                  MICHAEL J. DOWD

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
miked@rgrdlaw.com
henryr@rgrdlaw.com
trigs@rgrdlaw.com
jforge@rgrdlaw.com
ryanl@rgrdlaw.com
ingo@rgrdlaw.com

---

[11]   If Robert Hendricks' interest in Pfizer stock is only indirect, *i.e.*, limited to his ownership of certain mutual funds which hold Pfizer stock, as he claims, then he is not a Class Member in any event. The mutual fund which holds the Pfizer stock is the Class Member.

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
WILLOW E. RADCLIFFE
DANIEL J. PFEFFERBAUM
MATTHEW S. MELAMED
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
mmelamed@rgrdlaw.com

Lead Counsel for Plaintiffs

1033773_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 5, 2015.

s/ MICHAEL J. DOWD
MICHAEL J. DOWD

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: MikeD@rgrdlaw.com

# Mailing Information for a Case 1:10-cv-03864-AKH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Scott Bailey**
  michael.bailey@skadden.com

- **Sidney Bashago**
  sidney.bashago@dpw.com,jennifer.kan@davispolk.com,ecf.ct.papers@davispolk.com

- **Sheila L. Birnbaum**
  sheilabirnbaum@quinnemanuel.com

- **George Anthony Borden**
  gborden@wc.com

- **Kevin Anthony Burke**
  kaburke@sidley.com,nyefiling@sidley.com,efilingnotice@sidley.com

- **Michael Barry Carlinsky**
  michaelcarlinsky@quinnemanuel.com,brantkuehn@quinnemanuel.com,jomairecrawford@quinnemanuel.com

- **Lauren Kristina Collogan**
  lcollogan@wc.com

- **Patrick Daniel Curran**
  patrickcurran@quinnemanuel.com,justinemanzano@quinnemanuel.com

- **Keir Nicholas Dougall**
  kdougall@dougallpc.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com

- **Alexander C Drylewski**
  alexander.drylewski@skadden.com

- **Charles S. Duggan**
  charles.duggan@dpw.com,ecf.ct.papers@davispolk.com

- **Steven M.. Farina**
  sfarina@wc.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Ross Bradley Galin**
  rgalin@omm.com,mochoa@omm.com,neverhart@omm.com,lisachen@omm.com

- **Gary John Hacker**
  ghacker@skadden.com

- **James R. Harper**
  coljamesrharper@me.com

- **Howard E. Heiss**
  hheiss@omm.com,#nymanagingattorney@omm.com

- **Paul T. Hourihan**
  phourihan@wc.com

- **James M. Hughes**
  jhughes@motleyrice.com,kweil@pacernotice.com,mgruetzmacher@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Jay B. Kasner**
  jkasner@skadden.com

- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com,hlindley@kendalllawgroup.com

- **Brant Duncan Kuehn**
  brantkuehn@quinnemanuel.com

- **Leigh R. Lasky**
  lasky@laskyrifkind.com

- **Hamilton Philip Lindley**
  hlindley@deanslyons.com

- **Ryan A. Llorens**
  ryanl@rgrdlaw.com,nbear@rgrdlaw.com,kirstenb@rgrdlaw.com

- **Amanda M. MacDonald**
  amacdonald@wc.com

- **Lori McGill**
  lorialvinomcgill@quinnemanuel.com

- **Matthew Melamed**
  mmelamed@rgrdlaw.com

- **Donald Alan Migliori**
  dmigliori@motleyrice.com

- **Eugene Mikolajczyk**
  genem@rgrdlaw.com

- **Seema Mittal**
  smittal@wc.com

- **Cynthia Margaret Monaco**
  cmonaco@cynthiamonacolaw.com,cmmonaco@gmail.com

- **Juliana Newcomb Murray**
  juliana.murray@davispolk.com,lisa.hirakawa@davispolk.com,ecf.ct.papers@davispolk.com

- **Scott D. Musoff**
  smusoff@skadden.com,aviva.nusbaum@skadden.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com

- **William H. Narwold**
  bnarwold@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph G. Petrosinelli**
  jpetrosinelli@wc.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,ptiffith@rgrdlaw.com

- **Joseph F. Rice**
  jrice@motleyrice.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Daniel Prugh Roeser**
  droeser@goodwinprocter.com

- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Stuart Michael Sarnoff**
  ssarnoff@omm.com

- **William E. Schurmann**
  wschurmann@wc.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Jennifer Lynn Spaziano**
  jen.spaziano@skadden.com

- **Meghan K. Spillane**
  mspillane@goodwinprocter.com,sewald@goodwinprocter.com,ttam@goodwinprocter.com

- **Richard Mark Strassberg**
  rstrassberg@goodwinprocter.com,nymanagingclerk@goodwinprocter.com

- **Mitchell M.Z. Twersky**
  mtwersky@aftlaw.com

- **John K. Villa**
  jvilla@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Daniel          E. Hill
Kendall Law Group, LLP
3232 McKinney Avenue
Suite 700
Dallas, TX 75204

Catherine       J. Kowalewski
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

Jamie           J. McKey
Kendall Law Group, LLP
3232 McKinney Avenue
Suite 700
Dallas, TX 75204

David           C. Walton
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101
```